Cary D. Sullivan (*PHV app. pending*)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA  92612
Telephone: (949) 851-3939
Facsimile:  (949) 553-7539
E-mail:  carysullivan@jonesday.com

Brian R. Talcott, OSB No. 965371
DUNN CARNEY LLP
851 SW Sixth Avenue, Suite 1500
Portland, OR 97204
Telephone: (503) 224-6440
Facsimile: (503) 224-7324
E-mail:  btalcott@dunncarney.com

*Attorneys for Plaintiff*
Trustwell

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON – PORTLAND DIVISION

| | |
|---|---|
| ESHA RESEARCH, INC., now known as TRUSTWELL,<br><br>    Plaintiff,<br><br>  v.<br><br>CRONOMETER SOFTWARE, INC., formerly known as BIGCRUNCH CONSULTING, LTD., and DOES 1-20.<br><br>    Defendants. | Civil No. 3:24-cv-01586<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

  1. Plaintiff ESHA Research, Inc., now known as Trustwell ("Trustwell"), brings this complaint against Defendant Cronometer Software, Inc., formerly known as BigCrunch Consulting, Ltd. ("Cronometer," and collectively with Trustwell, the "Parties"), for injunctive relief and monetary damages as well as such other relief as specified herein, as follows:

**INTRODUCTION**

2. This case is about the calculated theft of some of Trustwell's crown jewels—confidential, proprietary, and trade secret nutritional data and related information—that Cronometer secretly used to help build competing products and services in an effort to divert valuable customers and business away from Trustwell and to Cronometer.

3. Trustwell's suite of confidential, proprietary, and trade secret nutritional data and related information and services, developed through decades of investment in research and development, are widely recognized as the industry's top choice for food and supplement formulation, recipe development, labeling, nutritional analysis, and regulatory compliance. Indeed, Trustwell's nutrition and activity tracking products remain the nutritional analysis product of choice for dieticians in hospitals, schools, and other institutions as well as in private practice.

4. In 2015, Cronometer approached Trustwell to request a license to access and use its "Database," which contains an extensive, confidential, proprietary, and trade secret compilation of nutritional values and other information used for nutritional analysis. This includes, among other things, comprehensive nutritional breakdowns for up to 172 separate data fields, including proximates, vitamins, minerals, amino acids, and other nutrient components, for more than 90,000 brand name and generic foods and ingredients. The Database includes a substantial volume of confidential and proprietary ingredient components and related data and other features that are not publicly available. Cronometer represented to Trustwell that, "[i]n connection with its own internal nutritional analyses, [Cronometer] wishe[d] to acquire a license to access and use [Trustwell's] Database." In reliance on Cronometer's representation, Trustwell entered into a limited-use Database Access License with Cronometer, which authorized Cronometer "to obtain and use a copy of [Trustwell's] Database for [Cronometer's] own internal nutritional analysis needs" (the "License Agreement"). The License Agreement does not authorize Cronometer to commercialize Trustwell's

Database or other information or otherwise leverage those materials to help build competing products and services.

5. Cronometer thereafter embarked on a scheme to secretly use Trustwell's Database and other nutritional data and related information to help build, market, and sell competing products and services, even targeting many of the same customers with which Trustwell does business, thereby avoiding decades of research and development and gaining entrance to a new and valuable market without commensurate investment, in a concerted effort to divert business and customers away from Trustwell and to Cronometer.

6. Trustwell learned of this scheme in mid-2024. Trustwell promptly sent Cronometer a cease-and-desist letter, demanding, among other things, that Cronometer immediately "[t]erminate all marketing and sales by Cronometer of nutritional data and related information and products to all health professionals and consultants, universities, and healthcare institutions," a valuable customer segment where Cronometer is now competing directly with Trustwell, and to "[p]rovide a complete accounting of all marketing and sales conducted by Cronometer utilizing or relying on Trustwell's nutritional data and related information and products, including its database."

7. Cronometer, including through its CEO and founder, Aaron Davidson, flatly refused Trustwell's demands. This action follows.

## PARTIES

8. ESHA Research, Inc. was founded in Oregon in 1981. After merging with another business in 2022, the company rebranded as Trustwell. Plaintiff Trustwell is a privately held limited liability company based in, and with its principal place of business located in, Beaverton, Oregon.

9. On information and belief, Defendant Cronometer is a privately held corporation based in, and with its principal place of business located in, Revelstoke, British Columbia, Canada. It proclaims on its website that "Cronometer is the most accurate, comprehensive nutrition tracking app on earth."

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over Trustwell's claims pursuant to 28 U.S.C. §§ 1331 and 1367(a). Alternatively, this Court has supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy and derive from a common nucleus of operative facts as Trustwell's federal claims. Additionally, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as complete diversity exists between Trustwell and Cronometer, and the amount in controversy exceeds $75,000.

11. The Parties expressly consented to this Court's personal jurisdiction over them pursuant to section 25 of the Parties' License Agreement, which states as follows:

> The parties agree that any suit, action or arbitration proceeding arising out of or relating to this [License] Agreement shall be brought in Multnomah County, Oregon, and the parties expressly consent to the personal jurisdiction over them of any state or federal court in Multnomah County, Oregon.

In addition, a substantial part of the acts complained of herein occurred in this judicial district. Moreover, as set forth below, Cronometer possesses the requisite "minimum contacts" with Oregon—contacts that allowed Cronometer to perpetuate and fulfill the very scheme at the center of this lawsuit.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) & (c) because a substantial part of the acts complained of herein occurred in this judicial district, and Cronometer is not resident in the United States. Venue is also proper in this judicial district pursuant to the Parties' express agreement in section 25 of the License Agreement.

## FACTS

13. In February 2015, Cronometer approached Trustwell to request a license to access and use its Database. Cronometer represented to Trustwell that, "[i]n connection with its own internal nutritional analyses, [Cronometer] wishe[d] to acquire a license to access and use

[Trustwell's] Database." Cronometer never revealed its true intentions to Trustwell. In reliance on Cronometer's express representation—that it would use the Database solely for its own internal analyses—Trustwell entered into the limited-use License Agreement with Cronometer. Cronometer thereafter downloaded a copy of the Database and received periodic updates from Trustwell.

14. According to Cronometer, the License Agreement remains in effect and will expire by its terms in February 2025. Consistent with Cronometer's representation of intent, the scope of the license is defined in section 2 of the License Agreement (Scope of Access License):

> Licensee is licensed to possess and use a single copy of the Database for Licensee's own internal nutritional analysis business or research purposes. Licensee is *not* licensed to do any of the following: (a) sublicense, rent, lease, lend or otherwise transfer all or any portion of Database, or Licensee's access or use rights under this Agreement, without the prior written consent of [Trustwell]; (b) remove or obscure the [Trustwell] copyright or trademark notices; (c) compile or extract, directly or indirectly, the data from the Database in whole or in part for the purpose of redistribution. (Emphasis in original.)

15. Section 6 of the License Agreement (Ownership/Copyrights) provides, in pertinent part, as follows:

> [Trustwell] is the sole owner of the Database (including all customized and derivative works), and shall remain the owner of the Database copy provided to Licensee under this Agreement. All rights not specifically granted in this license are reserved by [Trustwell] … [Trustwell] shall remain the sole and exclusive owner of all interests in the Database, and of all derivative works thereof.

16. Section 8 of the License Agreement (Licensee's Obligations to Protect Database) provides as follows:

> Licensee covenants to use the Database only for the purposes set forth in this Agreement and for no other purpose. As a continuing condition of this license, Licensee covenants that it shall use its best efforts to protect the Database from unauthorized use, reproduction, publication or distribution.

17. Section 11 of the License Agreement (Covenant Not to Compete) provides as follows:

> Licensee shall not, during the term of this Agreement, develop, market, license or sell any product or service that is competitive with the products or services [Trustwell] provides to Licensee.

18. Section 12 of the License Agreement (Proprietary Information) provides, in pertinent part, as follows:

> a. <u>Nature of Proprietary Information</u>.  During the performance of this Agreement either party may acquire access to, or knowledge of, confidential, proprietary or trade secret information belonging to the other party, including, without limitation, information about publication plans, software features under development, software code, algorithms, database structures and content, the content of the Database, report formats, interface designs, business plans and marketing plans ("Proprietary Information").
>
> b. <u>Covenants Regarding Proprietary Information</u>.  Each party agrees that it and its employees, agents and representatives shall: (i) keep the other party's Proprietary Information strictly confidential, and shall not disclose such information to any other person or entity without the express written consent of the other party except as specifically required to perform their respective obligations under this Agreement; (ii) limit internal disclosure of the Proprietary Information solely to their employees, agents and representatives who must be apprised of the Proprietary Information to advance the purposes of this Agreement (and only to the extent that they must be apprised for those purposes); (iii) require all such persons to honor the confidentiality restrictions imposed upon the parties; (iv) use the Proprietary Information solely for the purpose of performing their duties or exercising their rights under this Agreement; and (v) upon demand, immediately surrender to the owner of the Proprietary Information all notes, records, documentation, models, software, databases and other items or materials containing such Proprietary Information.

19. Section 24 of the License Agreement (Governing Law) provides that the agreement "shall be governed by and construed in accordance with the laws of the state of Oregon without regard to, or application of, any conflict of law provisions."

20. Pursuant to the terms, conditions, and protections of the License Agreement, Trustwell provided Cronometer access to the Database. Pursuant to those same terms, conditions, and protections, Trustwell also provided Cronometer access to other nutritional data and related information. Trustwell's Database and other nutritional data and related information contain and embody confidential, proprietary, and trade secret information (collectively, the "Trade Secrets") that Trustwell developed at considerable effort and expense, through decades of investment in research and development.

21. Trustwell takes reasonable steps to protect the secrecy of its Trade Secrets. For example, Trustwell provides its customers access to such information solely pursuant to agreements that contain confidentiality provisions and other protections substantially similar to those contained in the License Agreement. Moreover, Trustwell uses electronic, physical, and other security measures to maintain the secrecy of such information maintained in its secure facilities, such as password protections, firewalls, and other technical mechanisms. Trustwell also executes confidentiality agreements with employees, and tracks and limits employee access to such information, providing it only to the extent necessary to perform their job functions. Trustwell also regularly instructs and repeatedly reminds its employees of the highly sensitive and confidential nature of its Trade Secrets, which must be protected at all times from disclosure to third parties.

22. Trustwell derives independent economic value from the fact that its Trade Secrets are not generally known or readily ascertainable through proper means. Indeed, Trustwell is widely recognized as the industry's top choice for food and supplement formulation, recipe development, labeling, nutritional analysis, and regulatory compliance. By licensing access to and use of its Trade Secrets, subject to strict terms and conditions, Trustwell generates revenue and income through licensing fees. Such licensing represents a substantial portion of Trustwell's business.

23. Unbeknownst to Trustwell, once Cronometer obtained access to the Trade Secrets, it covertly used those materials to help build competing nutrition tracking products and services,

including a nutrition tracking app, which Cronometer touts on its website (www.cronometer.com) as "the most accurate, comprehensive nutrition tracking app on earth," and which Cronometer claims has "over 10 million users." Cronometer makes numerous other representations on its website, including but not limited to the following:

- "We have the highest data quality standards of any food tracking app. We put in a lot of work to make sure the data you're tracking is accurate."

- "Cronometer is known for being the most accurate and comprehensive nutrition tracker on the market."

- "Our CEO, Aaron Davidson, built Cronometer as a side project … being the nutrition nerd/software developer that he is, decided to build an app to track his diet. Thus, Cronometer was born."

- "Cronometer's success has hinged entirely on positive word-of-mouth from its users."

- "We are an eclectic mix of web developers, designers, nutrition scientists, business majors and personal trainers brought together by a love of nutrition."

- "Our goal is to build the best software for people and professionals to manage their nutrition. And we have the passion to make that happen; amazing data paired with awesome customer support truly are the Cronometer difference."

- "We also believe in empowering everyone by ensuring they have access to accurate and comprehensive data to make informed decisions."

24.     At least part of the nutritional data that Cronometer advertises and repeatedly touts on its website as, among other things, "verified," "accurate," "comprehensive," and "amazing" is, in fact, Trustwell's Trade Secret data, access to which was provided to Cronometer solely pursuant to the limited-use License Agreement. Cronometer omits that it secretly leveraged Trustwell's Trade Secrets to help build its app and other products and services. Cronometer also omits that, by doing so, it avoided decades of investment in research and development and thereby gained access to

valuable and competitive markets without commensurate investment.  On information and belief, Cronometer knew it could not afford the investment—in time or money—necessary to develop legitimately the scope and depth of nutritional data that Trustwell had already developed.  Cronometer therefore resorted to misappropriation to quickly and cheaply gain access to the type of nutritional data necessary to effectively enter the valuable healthcare market.

25. At no point did Trustwell ever authorize Cronometer to access, use, or disclose its Trade Secrets in any way beyond the terms and conditions of the License Agreement.  Trustwell has never and would never knowingly provide access to its Trade Secrets to enable a company to commercialize or otherwise leverage those materials to help build competing products and services and enter valuable and competitive markets with virtually no investment.  Cronometer failed even to provide proper attribution, as required by section 7 of the License Agreement.  In other words, through the above representations and omissions, as well as numerous others on its website and elsewhere, Cronometer falsely and deceptively marketed and sold, and continues to falsely and deceptively market and sell, Trustwell's crown jewel Trade Secrets as Cronometer's own creation, the result of Cronometer's own honest, hard work.

26. Health professionals and consultants, universities, and healthcare institutions comprise an important and valuable segment of Trustwell's customer base.  Trustwell has invested significant resources, over an extended period of time, in targeting, gaining entrance to, and eventually doing meaningful business in that market.  That investment paid off.  Trustwell's nutrition and activity tracking products are now widely recognized as the nutritional analysis product of choice for dieticians in hospitals, schools, and other institutions as well as in private practice.

27. Cronometer was and is marketing and selling its app and other nutritional tracking products and services to that same market – a valuable B2B rather than consumer-focused market – in a concerted effort to divert important customers and business away from Trustwell and to Cronometer.  Trustwell has experienced a decline in business generation in this market that, on

information and belief, is the result of Cronometer's marketing and sales efforts. In fact, on its website, Cronometer advertises two products specifically designed for that market: (1) Cronometer Pro, which is advertised as "a product for healthcare professionals, nutritionists, dieticians, universities and research terms;" and (2) Cronometer Pro Plus, which is advertised as being designed "for larger institutions like hospitals or healthcare professionals that require HIPAA compliance." Cronometer also advertises institutional healthcare clients like Stanford University and Boston Children's Hospital. Both clients have closed accounts with Trustwell.

28. In a 2022 interview with Medium.com, Mr. Davidson said Cronometer Pro "has been a growing success, and has helped health professionals grow their practices and better support their clients." He added, "[t]he accurate and trusted data focus has led us to being the nutrition tracker of choice for many major North American hospitals, universities for nutrition studies and courses, and even Space programs." Mr. Davidson confirmed that Cronometer's nutrition tracking products and services compete directly, and are intended to compete directly, with Trustwell in that market, and are having substantial success in that market. Of course, Cronometer's nutrition tracking products were secretly built using Trustwell's stolen Trade Secrets.

29. Trustwell did not learn of Cronometer's scheme until mid-2024. Trustwell promptly sent a cease-and-desist letter to Cronometer. That letter, dated July 9, 2024, notified Cronometer that it had breached the License Agreement and violated federal and state law in numerous ways. It also demanded, among other things, that Cronometer immediately terminate all use of Trustwell's nutritional data and related information and products, including its Database, to develop, launch, or support any products or services that compete, directly or indirectly, with Trustwell; and to provide a complete accounting of all marketing and sales conducted by Cronometer utilizing or relying on such materials and information. To date, Cronometer has refused to comply with Trustwell's demands.

30. Cronometer, including through Mr. Davidson, has admitted that it has accessed, used, and disclosed the Trade Secrets in violation of the terms, conditions, and protections of the License Agreement, including the scope of the license itself, and is continuing to do so. Cronometer, including through Mr. Davidson, further admitted that it has knowingly and intentionally used those materials in direct competition with Trustwell, including with health professionals and consultants, universities, and healthcare institutions, and is continuing to do so. Nevertheless, Cronometer, including through Mr. Davidson, continues to deny that it has violated the law in any way.

31. When Cronometer refused to agree to stop its ongoing misappropriation, and refused to comply with Trustwell's other demands, Trustwell's only available recourse was to file suit.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT

32. Trustwell hereby incorporates by reference paragraphs 1 through 31, inclusive, as if set forth fully herein.

33. As set forth above, Trustwell entered into the License Agreement with Cronometer in 2015, and provided Cronometer access to and use of Trustwell's Database and other nutritional data and related information pursuant to the terms, conditions, and protections of the License Agreement.

34. By using Trustwell's Database and other nutritional data and related information as described above, Cronometer has breached and continues to breach at least sections 2, 7, 8, 11, and 12 of the License Agreement.

35. As a direct and proximate result of Cronometer's breaches, Trustwell has suffered and will continue to suffer irreparable injury and substantial damage. Trustwell is also entitled to an award of attorneys' fees pursuant to section 26 of the License Agreement, which provides, in pertinent part, that, "[i]f any party to this Agreement breaches any term of this Agreement, then any

other party shall be entitled to recover all expenses of whatever form or nature, costs and attorneys' fees reasonably incurred to enforce the terms of the Agreement, whether or not suit is filed."

## SECOND CLAIM FOR RELIEF

## MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836, *et seq*.)

36. Trustwell hereby incorporates by reference paragraphs 1 through 31, inclusive, as if set forth fully herein.

37. Trustwell owns and possesses its Trade Secrets. As set forth above, Trustwell granted Cronometer access to and use of the Trade Secrets pursuant to the terms, conditions, and protections of the License Agreement.

38. As set forth above, Cronometer secretly used and continues to use the Trade Secrets in violation of the terms, conditions, and protections of the License Agreement, including to help build, market, and sell competing nutritional tracking products and services.

39. As set forth above, Cronometer secretly used and continues to use and disclose the Trade Secrets to market and sell – and has sold – competing nutritional tracking products and services to health professionals and consultants, universities, and healthcare institutions across the country, among other customers, in a concerted effort to divert such customers and business away from Trustwell and to Cronometer.

40. As set forth above, Trustwell takes reasonable steps to protect the secrecy of its Trade Secrets.

41. As set forth above, Trustwell's Trade Secrets, developed through decades of investment in research and development, provide it with a competitive advantage, and Trustwell derives independent economic value from the fact that its Trade Secrets are not generally known or readily ascertainable through proper means. Trustwell's Trade Secrets are of great value to Trustwell and would give any competitor an unfair advantage, as they have to Cronometer.

42.     As set forth above, Cronometer willfully misappropriated Trustwell's Trade Secrets, accessing, using, and disclosing them for their own competitive use and for their own financial benefit.

43.     On information and belief, and as set forth above, Cronometer, including through its CEO and founder, Mr. Davidson, intentionally, knowing, and willfully misappropriated Trustwell's Trade Secrets, and such misappropriation has been malicious, fraudulent, and oppressive.

44.     As set forth above, Cronometer is still in possession of, and continues to use and disclose, Trustwell's Trade Secrets.  If Cronometer's misconduct is not remedied, it will continue to misappropriate Trustwell's Trade Secrets for its own benefit and to Trustwell's substantial detriment.

45.     Because Trustwell's remedy at law is inadequate, Trustwell seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its Trade Secrets and other legitimate business interests.  Moreover, Cronometer's intentional, willful, and malicious conduct indicates that injunctive or other equitable relief will be inadequate to prevent such future misconduct.  Therefore, Trustwell also seeks an order under 18 U.S.C. § 1836(b)(2) for the seizure of any and all of Trustwell's Trade Secrets and confidential or proprietary information in the possession, custody, or control of Cronometer.

46.     As a direct and proximate result of Cronometer's misconduct, Trustwell has suffered and will continue to suffer irreparable injury and substantial damage.  Trustwell is also entitled to an award of lost profits, restitution, exemplary damages, reasonable royalties, and attorneys' fees.

## THIRD CLAIM FOR RELIEF

## FALSE ADVERTISING AND FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT (15 U.S.C. § 1125(a))

47.     Trustwell hereby incorporates by reference paragraphs 1 through 31, inclusive, as if set forth fully herein.

48. As set forth above, Cronometer misappropriated Trustwell's confidential, proprietary, and trade secret Database and other nutritional data and related information to build, market, and sell – and has sold – competing nutritional tracking products and services to customers across the country, including but not limited to health professionals and consultants, universities, and healthcare institutions.  In the process, and as set forth above, Cronometer has made and continues to make false and misleading statements, and deceptively failed to disclose material information, about the origin, development, and purportedly unique nature of its nutritional tracking products and services, including their source data, which were built using Trustwell's stolen materials.

49. On information and belief, and as set forth above, Cronometer's false and misleading representations and omissions had the tendency to confuse and deceive, and did confuse and deceive, consumers across the country (i.e., the intended audience), including but not limited to health professionals and consultants, universities, and healthcare institutions, which would not have purchased Cronometer's products and services had they known the truth, and instead likely would have done business with Trustwell.

50. As set forth above, Cronometer's falsely-represented nutritional tracking products and services are sold across the country and travel in, and have a substantial effect on, interstate commerce.

51. As a direct and proximate result of Cronometer's misconduct, Trustwell has suffered and will continue to suffer irreparable injury and substantial damage.  Trustwell is also entitled to an award of treble damages and attorneys' fees.

**FOURTH CLAIM FOR RELIEF**

**MISAPPROPRIATION OF TRADE SECRETS UNDER THE OREGON UNIFORM TRADE SECRETS ACT (OR. REV. STAT. § 646.461, *et seq.*)**

52. Trustwell hereby incorporates by reference paragraphs 1 through 31, inclusive, as if set forth fully herein.

53. As set forth above, Trustwell owns and possesses its Trade Secrets. Trustwell granted Cronometer access to and use of the Trade Secrets pursuant to the terms, conditions, and protections of the License Agreement.

54. As set forth above, Cronometer secretly used and continues to use the Trade Secrets in violation of the terms, conditions, and protections of the License Agreement, including to help build, market, and sell competing nutritional tracking products and services.

55. As set forth above, Cronometer secretly used and continues to use and disclose the Trade Secrets to market and sell – and has sold – competing nutritional tracking products and services to health professionals and consultants, universities, and healthcare institutions across the country, among other customers, in a concerted effort to divert such customers and business away from Trustwell and to Cronometer.

56. As set forth above, Trustwell takes reasonable steps to protect the secrecy of its Trade Secrets.

57. As set forth above, Trustwell's Trade Secrets, developed through decades of investment in research and development, provide it with a competitive advantage, and Trustwell derives independent economic value from the fact that its Trade Secrets are not generally known or readily ascertainable through proper means. Trustwell's Trade Secrets are of great value to Trustwell and would give any competitor an unfair advantage, and they have to Cronometer.

58. As set forth above, Cronometer willfully misappropriated Trustwell's Trade Secrets, accessing, using, and disclosing them for its own competitive use and for its own financial benefit.

59. On information and belief, and as set forth above, Cronometer, including through its CEO and founder, Mr. Davidson, intentionally, knowing, and willfully misappropriated Trustwell's Trade Secrets, and such misappropriation has been malicious, fraudulent, and oppressive.

60. As set forth above, Cronometer is still in possession of, and continues to use and disclose, Trustwell's Trade Secrets. If Cronometer's misconduct is not remedied, it will continue to

misappropriate Trustwell's Trade Secrets for its own benefit and to Trustwell's substantial detriment.

61. Because Trustwell's remedy at law is inadequate, Trustwell seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its trade secrets and other legitimate business interests. Moreover, Cronometer's intentional, willful, and malicious conduct indicates that injunctive or other equitable relief will be inadequate to prevent such future misconduct. Therefore, Trustwell also seeks an order under Or. Rev. Stat. § 646.463(3) for the seizure of any and all of Trustwell's Trade Secrets in the possession, custody, or control of Cronometer.

62. As a direct and proximate result of Cronometer's misconduct, Trustwell has suffered and will continue to suffer irreparable injury and substantial damage. Trustwell is also entitled to an award of lost profits, restitution, exemplary damages, reasonable royalties, and attorneys' fees.

## FIFTH CLAIM FOR RELIEF

## UNLAWFUL TRADE PRACTICES UNDER THE OREGON UNLAWFUL TRADE PRACTICES ACT (OR. REV. STAT. § 646.605, *et seq*.)

63. Trustwell hereby incorporates by reference paragraphs 1 through 31, inclusive, as if set forth fully herein.

64. As set forth above, Cronometer misappropriated Trustwell's confidential, proprietary, and trade secret Database and other nutritional data and related information to help build, market, and sell – and has sold – competing nutritional tracking products and services to customers across the country, including but not limited to health professionals and consultants, universities, and healthcare institutions. In the process, as set forth above, Cronometer has made and continues to make false and misleading statements, and deceptively failed to disclose material information, about the origin, development, and purportedly unique nature of its nutritional tracking products and

services, including their source data, which were built using Trustwell's stolen materials, in violation of at least sections 646.608(1)(a), (b), and (u) of the Oregon Revised Statutes.

65. On information and belief, and as set forth above, Cronometer's false and misleading representations and omissions had the tendency to confuse and deceive, and did confuse and deceive, consumers across the country (i.e., the intended audience), including but not limited to health professionals and consultants, universities, and healthcare institutions, which would not have purchased Cronometer's products and services had they known the truth, and instead likely would have done business with Trustwell.

66. As set forth above, Cronometer's falsely-represented nutritional tracking products and services are sold across the country and travel in, and have a substantial effect on, interstate commerce.

67. As a direct and proximate result of Cronometer's misconduct, Trustwell has suffered and will continue to suffer irreparable injury and substantial damage.  Trustwell is also entitled to an award of punitive damages and attorneys' fees.

## JURY TRIAL DEMAND

68. Trustwell respectfully requests a jury trial in this action on all issue so triable.

## PRAYER FOR RELIEF

Based on the foregoing, Trustwell prays for the following relief against Cronometer:

1. Judgment in Trustwell's favor and against Cronometer on all causes of action alleged herein;

2. A preliminary and permanent injunction to enjoin Cronometer, its agents, representatives, employees, attorneys, successors, and assigns, and all persons and entities acting in concert with them, from further misappropriation or unauthorized use of Trustwell's confidential, proprietary, and trade secret information and materials;

3. An order for Cronometer to pay Trustwell compensatory damages based on competent and admissible evidence at trial, which damages exceed the jurisdictional minimum of this Court, with interest at the highest rate allowable by law;

4. An order for Cronometer to pay Trustwell consequential and actual damages or disgorgement of Cronometer's profits unjustly obtained, restitution, and/or reasonable royalties, based on competent and admissible evidence at trial, which damages exceed the jurisdictional minimum of this Court, with interest at the highest rate allowable by law;

5. An order for Cronometer to pay Trustwell exemplary, treble, and/or punitive damages for Cronometer's intentional, knowing, willful, malicious, fraudulent, and oppressive conduct;

6. An order for Cronometer to pay Trustwell its reasonable attorneys' fees and allowable costs and expenses; and

7. All other such relief to Trustwell under law and equity as the Court deems just and proper.

Dated: September 18, 2024

Respectfully submitted,

DUNN CARNEY LLP

By: _____
Brian R. Talcott, OSB No. 965371

JONES DAY
Cary D. Sullivan (*PHV app. pending*)

Attorneys for Plaintiff
Trustwell