**Nika Aldrich**, OSB #160306
Email: naldrich@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Facsimile: 206-292-0460

*Attorney for Defendant*
*Cronometer Software, Inc.*


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ESHA RESEARCH, INC.**, now known as **TRUSTWELL**,<br><br>          Plaintiff,<br><br>vs.<br><br>**CRONOMETER SOFTWARE, INC.**, formerly known as **BIGCRUNCH CONSULTING, LTD.**, and **DOES 1-20**,<br><br>          Defendants. | No. 3:24-cv-01586-AB<br><br>**ANSWER TO COMPLAINT AND COUNTERCLAIMS FOR DECLARATORY JUDGMENT AND VIOLATIONS OF FEDERAL ANTITRUST LAWS**<br><br><br>**DEMAND FOR JURY TRIAL** |

Defendant Cronometer Software, Inc., formerly known as BigCrunch Consulting, Ltd. ("Cronometer"), by and through its counsel of record, hereby answers Plaintiff's Complaint for Injunctive Relief and Damages, and includes its affirmative defenses and counterclaims.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

## PRELIMINARY STATEMENT

Plaintiff's case is a sham.  Plaintiff filed this lawsuit predicated on the notion that Cronometer breached a data licensing agreement and misappropriated trade secrets when it made data in two of Trustwell's food/nutrition databases available to its users rather than keeping the databases internal within Cronometer.  But that is exactly how the databases were intended to be used when Trustwell's predecessor, ESHA Research, Inc. ("ESHA"), sent the databases to Cronometer in 2015 following months of discussions about how Cronometer was going to use them.  In the weeks following the alleged execution of a license agreement and ESHA's transmission of the databases to Cronometer:

- ESHA's Sales Team helped Cronometer implement the databases into Cronometer's publicly-available software;

- Cronometer sent screen shots of the databases within Cronometer's publicly-available software to ESHA, and notified ESHA that "we have released this live on our site now";

- Cronometer reported to ESHA about which items in the databases were being seen by the most customers;

- ESHA's Product Consultant (later Sales Director) said he "look[ed] forward to checking out the app";

- ESHA's CEO was "on board" with some of Cronometer's suggestions concerning the information in the databases used for public display;

- Cronometer noted that its software using the ESHA database was often used by "nutritionists & physician managing clients, educators, and researchers conducting studies"; and

- Aware of how the databases were being used in Cronometer's public-facing software, providing exposure to ESHA, ESHA told Cronometer that it wanted "to write a press release about our partnership" and asked Cronometer to contribute to an "'About Cronometer' section".

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

ESHA's co-founder later downloaded a publicly-available copy of Cronometer's software and praised Cronometer for its use of the ESHA database within that software, thanking Cronometer for "playing by the rules."

For the last nine years, Cronometer has used the databases exactly as the parties intended, with full visibility, awareness, consent, and acquiescence by ESHA. The notion that the data—which ESHA not only *allowed* to be used in publicly-available software, but for which it *praised and promoted* Cronometer on how it was implemented—constitutes a legally-protectible trade secret is a farse. Plaintiff's assertion that Cronometer breached a license agreement by using the data *exactly as intended*, and *with ESHA's full blessing*, is baseless. No reasonable person could believe these frivolous allegations would fly.

What actually underlies this lawsuit is not any "secret" "scheme" by Cronometer, whose use of the databases has always been wide open and publicly recognized by ESHA. Instead, this lawsuit is part of a scheme devised by Trustwell and its investors to create a monopoly for one of its other products: Food Processor®, a dietary tracking app that competes with Cronometer's products. This lawsuit is fueled by an infusion of private equity money that purchased ESHA and formed Trustwell. Those private equity investors are seeking to monetize their investment by illegally propping up Food Processor®'s market through the pursuit of baseless litigations against smaller companies like Cronometer to scare them out of the market with the threat of substantial legal expenditures.

That is illegal. The filing of frivolous lawsuits for anticompetitive purposes violates the Sherman Antitrust Act, among a variety of other state and federal statutes, in addition to the Rules of this Court. Through the counterclaims asserted in this Answer, Cronometer seeks the full panoply of remedies available for Trustwell's unlawful conduct, including treble damages and attorneys' fees. Cronometer otherwise denies the allegations in the

Page 3 -     ANSWER TO COMPLAINT AND COUNTERCLAIMS
            FOR DECLARATORY JUDGMENT AND VIOLATIONS
            OF FEDERAL ANTITRUST LAWS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

Complaint as articulated below, and further seeks declaratory judgment that it bears no liability for any of the asserted causes of action.

## ANSWER TO THE COMPLAINT

1.    Cronometer admits that ESHA/Trustwell has filed a frivolous complaint against Cronometer (formerly known as BigCrunch Consulting) baselessly alleging claims for injunctive relief, monetary damages, and other specified relief..

## INTRODUCTION

2.    Denied.

3.    Cronometer lacks knowledge or information sufficient to form a belief about the truth of the vague and compound allegations set forth in paragraph 4 of the Complaint, and on that basis denies those allegations.

4.    Cronometer admits that it approached Trustwell in either late 2014 or early 2015 to request access to and the right to use two of Trustwell's databases: the "Branded Foods" and "Restaurants" databases.  Otherwise denied.

5.    Denied.

6.    Cronometer admits that it received a cease-and-desist letter from Trustwell in 2024, and that incomplete portions of that letter are accurately restated in paragraph 6 of the Complaint. Cronometer further admits that both Trustwell and Cronometer have long sold products to health professionals and consultants, universities, and healthcare institutions, which is a valuable customer segment.  Otherwise denied.

7.    Denied.

## PARTIES

8.    Cronometer lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 8 of the Complaint, and on that basis denies those allegations.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

9.      Cronometer admits that it is a privately held corporation based in, and with its principal place of business located in, Revelstoke, British Columbia, Canada. Cronometer admits that its current website states, "Cronometer is the most accurate, comprehensive nutrition tracking app on earth."

## JURISDICTION AND VENUE

10.     Paragraph 10 of the Complaint contains legal conclusions to which no response is required.

11.     Denied.

12.     Cronometer admits that it is not resident in the United States. Cronometer denies all other allegations set forth in paragraph 12 of the Complaint.

## FACTS

13.     Denied.

14.     Cronometer admits that it received a draft license agreement from Trustwell on or about February 16, 2015 ("Draft License Agreement").  Cronometer further admits that it sent an annual payment to ESHA each year since 2015.  Cronometer further states that it sent payment to ESHA for use of the databases in 2024.  Trustwell responded in part as follows:  "Trustwell did not offer and does not agree to renew Cronometer's license agreement.  Our records show that your license expired February 2024.  We reject the payment you have sent."  Trustwell accepted the payment in any event.  Cronometer denies all other allegations set forth in paragraph 14 of the Complaint.

15.     Denied.

16.     Denied.

17.     Denied.

18.     Denied.

19.     Denied.

20.     Denied.

Page 5 -    ANSWER TO COMPLAINT AND COUNTERCLAIMS
            FOR DECLARATORY JUDGMENT AND VIOLATIONS
            OF FEDERAL ANTITRUST LAWS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

21.    Denied that the information referenced in the Complaint constitutes a Trade Secret, and therefore denies all facts concerning such alleged "Trade Secrets." Cronometer lacks knowledge or information sufficient to form a belief about the allegations set forth in paragraph 21 of the Complaint, and on that basis denies those allegations.

22.    Denied that the information referenced in the Complaint constitutes a Trade Secret, and therefore denies all facts concerning such alleged "Trade Secrets." Cronometer lacks knowledge or information sufficient to form a belief about the allegations set forth in paragraph 22 of the Complaint, and on that basis denies those allegations.

23.    Denied that the information referenced in the Complaint constitutes a Trade Secret, and therefore denies all facts concerning such alleged "Trade Secrets." Cronometer admits that its current website contains the following statements: "Cronometer is the most accurate, comprehensive nutrition tracking app on earth," and has "over 10 million users"; "Cronometer is known for being the most accurate and comprehensive nutrition tracker on the market."; "Our CEO, Aaron Davidson, built Cronometer as a side project…being the nutrition nerd/software developer that he is, decided to build an app to track his diet. Thus, Cronometer was born."; "Cronometer's success has hinged entirely on positive word-of-mouth from its users."; "We are an eclectic mix of web developers, designers, nutrition scientists, business majors and personal trainers brought together by a love of nutrition."; "Our goal is to build the best software for people and professionals to manage their nutrition. And we have the passion to make that happen; amazing data paired with awesome customer support truly are the Cronometer difference."; "We also believe in empowering everyone by ensuring they have access to accurate and comprehensive data to make informed decisions." Cronometer denies all other allegations set forth in paragraph 23 of the Complaint.

24.    Denied.

25.    Denied.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

26.    Cronometer admits that Health professionals and consultants, universities, and healthcare institutions currently comprise an important segment of Trustwell's customer base. Cronometer admits that Trustwell is entrenched in the market for dietary tracking apps within this market, and that it continues to have market power in this market.  Cronometer lacks knowledge or information sufficient to form a belief about the allegations set forth in paragraph 26 of the Complaint, and on that basis denies those allegations.

27.    Cronometer admits that it offers the product "Cronometer Pro" on its website and describes it as "a product for healthcare professionals, nutritionists, dieticians, universities and research teams."  Cronometer further admits that it previously had a product called Cronometer Pro Plus, which it advertised as being designed "for larger institutions like hospitals or healthcare professionals that require HIPAA compliance."  Cronometer further admits that Stanford University and Boston Children's Hospital are its clients.  Cronometer further admits that there is a "market" constituting "nutrition tracking products and services" for professional users. Cronometer lacks knowledge or information sufficient to form a belief about the remaining allegations set forth in paragraph 27 of the Complaint, and on that basis denies those allegations.

28.    Cronometer admits that Medium.com published an interview with Mr. Davidson in 2022, and that the quotations from that interview contained in paragraph 28 of the Complaint are restated accurately. Cronometer denies all other allegations set forth in paragraph 28 of the Complaint.

29.    Cronometer admits that it received a cease-and-desist letter from Trustwell dated July 9, 2024.  Otherwise denied.

30.    Denied.

31.    Denied.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT

32.    Cronometer incorporates by reference its responses to paragraphs 1 through 31 as if incorporated herein.

33.    Denied.

34.    Denied.

35.    Denied.

### SECOND CLAIM FOR RELIEF

### MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT  (18 U.S.C. § 1836,  *et seq.)*

36.    Cronometer incorporates by reference its responses to paragraphs 1 through 35 as if incorporated herein

37.    Denied.

38.    Denied.

39.    Denied.

40.    Denied.

41.    Denied.

42.    Denied.

43.    Denied.

44.    Denied.

45.    Denied.

46.    Denied.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

### THIRD CLAIM FOR RELIEF

### FALSE ADVERTISING AND FALSE DESIGNATION OF ORIGIN

### UNDER THE LANHAM ACT

### (15 U.S.C. § 1125(a))

47.     Cronometer incorporates by reference its responses to paragraphs 1 through 46 as if incorporated herein

48.     Denied.

49.     Denied.

50.     Denied.

51.     Denied.

### FOURTH CLAIM FOR RELIEF

### MISAPPROPRIATION OF TRADE SECRETS UNDER THE OREGON

### UNIFORM TRADE SECRETS ACT (OR. REV. STAT. § 646.461, et seq.)

52.     Cronometer incorporates by reference its responses to paragraphs 1 through 51 as if incorporated herein

53.     Denied.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Denied.

58.     Denied.

59.     Denied.

60.     Denied.

61.     To the extent the statements in paragraph 61 of the Complaint characterize the Plaintiff's claims or state conclusions of law, no response is required. Cronometer denies all other allegations set forth in paragraph 61 of the Complaint.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

62. Denied.

### FIFTH CLAIM FOR RELIEF

### UNLAWFUL TRADE PRACTICES UNDER THE OREGON UNLAWFUL TRADE PRACTICES ACT (OR. REV. STAT. § 646.605, et seq.)

63. Cronometer incorporates by reference its responses to paragraphs 1 through 62 as if incorporated herein

64. Denied.

65. Denied.

66. Denied.

67. Denied.

### JURY TRIAL

68. Cronometer denies that any allegations or issues set forth in the Complaint are triable.

### PRAYER FOR RELIEF

Cronometer denies that Plaintiff is entitled to any relief whatsoever, including damages—either actual, with disgorgement, or statutory, including any injunctive or other equitable relief, attorneys' fees and costs, and all other forms of relief sought in the "Prayer for Relief" clause of the Complaint.

### AFFIRMATIVE DEFENSES

Without assuming the burden of proof on any matters where that burden rests on the Plaintiff, Cronometer asserts the following separate defenses to the Complaint:

### FIRST AFFIRMATIVE DEFENSE
### (Waiver and Estoppel)

69. Plaintiff's causes of action are barred, in whole or in part, by the doctrines of waiver and estoppel.

Page 10 -    ANSWER TO COMPLAINT AND COUNTERCLAIMS
FOR DECLARATORY JUDGMENT AND VIOLATIONS
OF FEDERAL ANTITRUST LAWS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

## SECOND AFFIRMATIVE DEFENSE
### (Acquiescence)

70.     Plaintiff's causes of action are barred, in whole or in part, by the doctrine of acquiescence.

## THIRD AFFIRMATIVE DEFENSE
### (Consent)

71.     Plaintiff's causes of action are barred, in whole or in part, by the doctrine of consent.

## FOURTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

72.     Plaintiff's causes of action are barred, in whole or in part, by the relevant statutes of limitations.

## FIFTH AFFIRMATIVE DEFENSE
### (Statute of Frauds)

73.     Plaintiff's causes of action are barred, in whole or in part, by the Statute of Frauds.

## SIXTH AFFIRMATIVE DEFENSE
### (*In pari delicto*)

74.     Plaintiff's causes of action are barred, in whole or in part, by the doctrine of *in pari delicto.*

## SEVENTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

75.     Plaintiff's causes of action are barred, in whole or in part, for failure to mitigate.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

**EIGHT AFFIRMATIVE DEFENSE**
**(Readily Ascertainable)**

76.    Plaintiff's causes of action are barred, in whole or in part, by the fact that some or all of its alleged Trade Secrets were readily ascertainable.

**NINTH AFFIRMATIVE DEFENSE**
**(Independent Creation)**

77.    Plaintiff's causes of action are barred, in whole or in part, by the doctrine of independent creation.

**TENTH AFFIRMATIVE DEFENSE**
**(Laches)**

78.    Plaintiff's causes of action are barred, in whole or in part, by laches.

**ELEVENTH AFFIRMATIVE DEFENSE**
**(Good Faith)**

79.    Plaintiff's causes of action are barred, in whole or in part, by the doctrine of good faith.

**TWELTH AFFIRMATIVE DEFENSE**
**(Personal Jurisdiction)**

80.    Plaintiff's causes of actions are barred, in whole or in part, by lack of personal jurisdiction.

**THIRTEENTH AFFIRMATIVE DEFENSE**
**(Doctrine Against Extraterritoriality)**

81.    Plaintiff's causes of actions are barred, in whole or in part, by the doctrine against extraterritoriality.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

82.     Plaintiff's causes of actions are barred, in whole or in part, because Plaintiff has failed to state a claim upon which relief can be granted.


Cronometer reserves the right to add, alter, and/or amend its Answer and its defenses as may later become available and apparent to it, and to withdraw any defenses that it determines to be inapplicable.


## STATEMENT OF FACTS CONCERNING COUNTERCLAIMS

### A.     The Market for Professional Food Tracking Software

1.     Defendant's counterclaims concern the market for food tracking apps for professional users.

2.     Food tracking software, generally, is used to track food intake of individuals. These tools can be valuable for a number of reasons, for a number of different types of users. For example, individuals may be interested in tracking their dietary intake to ensure they are getting sufficient nutrition, or to help manage a diet.  Individuals with certain diseases or conditions may be interested in tracking whether they are ingesting either too much or not enough of certain minerals or vitamins relevant to their disease or condition.

3.     Separate and apart from individual users, fitness coaches, nutritionists, dietitians, and other health care professionals have an interest in tracking the dietary intake of their clients.

4.     There is a distinct need for such food tracking software among such professional users, and there is a limited, discrete set of products available in the market available for these users.  For example, on information and belief, North America has only four participants in this market, including Trustwell and Cronometer.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

5.      Plaintiff's Complaint in fact alleges that "Health professionals and consultants, universities, and health care institutions comprise an important and valuable segment of Trustwell's customer base.  Trustwell has invested significant resources, over an extended period of time, in targeting, gaining entrance to, and eventually doing meaningful business in that market.  That investment paid off. Trustwell's nutrition and activity tracking products are now widely recognized as the nutritional analysis product of choice for dieticians in hospitals, schools, and other institutions as well as in private practice."  (ECF 1 ¶ 26.)

6.      Plaintiff recognizes that such professional users constitute a "market" for "nutrition tracking products and services."  (ECF 1 ¶ 27.)

7.      The market for professional food tracking software drives the related market for individual food tracking software.  That is because some professional food tracking apps communicate with individual food tracking apps used by said professionals' clientele.  Thus, users who work closely with a fitness or healthcare professional often acquire food tracking apps to be compatible with the apps used by their healthcare professionals.  Accordingly, if a nutritionist uses a particular dietary tracking app, that may dictate the dietary tracking app used by that nutritionist's clients.  For this reason, each sale of a professional food tracking software can result in substantial sales of the related individual software.

8.      Food tracking software products are supported by large databases of food products, replete with the nutritional information for various food items.  The market for food product databases is different than the markets for dietary tracking software, as discussed further below.

**B.      Background Concerning ESHA**

9.      ESHA was founded in 1981 by Elizabeth Hands and Robert Geltz.  Over the years, ESHA has had a number of divisions and produced a number of products.  For example, ESHA's current website has a section titled "What We Offer," which lists the following six families of products and services:

Page 14 -    ANSWER TO COMPLAINT AND COUNTERCLAIMS
             FOR DECLARATORY JUDGMENT AND VIOLATIONS
             OF FEDERAL ANTITRUST LAWS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460



10.    Particularly relevant to this case are the "Meal Planning & Client Dietary Analysis" (upper right), "Diet & Activity Tracking" (lower left) and "Nutrition Database and API Solutions" (lower right) products or services.

11.    With respect to its Meal Planning & Client Dietary Analysis product line, ESHA developed and provides software known as Food Processor®, a dietary tracking software for nutritionists and dietitians.  ESHA launched this product in 1984, thus making it one of the oldest and most entrenched pieces of software in the market for professional dietary tracking software.  Food Processor® is used in a number of schools, jails, food service establishments, retirement homes, food kitchens, and by consultants who guide people on their dietary intake.

12.    Because of its ownership of Food Processor®, ESHA has market power in the market for professional dietary tracking software.

Page 15 -    ANSWER TO COMPLAINT AND COUNTERCLAIMS
FOR DECLARATORY JUDGMENT AND VIOLATIONS
OF FEDERAL ANTITRUST LAWS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

13.    For example, upon information and belief, ESHA's successor, Trustwell is the largest of the companies in this market, with more than 130 employees.  Recently, Trustwell, raised the price of Food Processor® as much as 1000%.  It also has the most dominant reach and largest share of the voice in the market, measured by online traffic and commentary.

14.    ESHA (and its successor, Trustwell) also have market power in a variety of related markets, including markets related to food labeling.  The markets in which Trustwell has market power are related insofar as they rely on the use of food/nutrition databases.

15.    ESHA also distributes a product called ESHATrack®, a product that allows individuals to track their food intake.

16.    Separate and apart from its "Meal Planning & Client Dietary Analysis" and "Diet & Activity Tracking" product lines, ESHA also has a "Nutrition Database and API Solutions" product line.  With respect to that product line, ESHA has created three different food databases that it uses for its own products and licenses to third-party companies.

17.    ESHA's "Branded Foods" database is a collection of nutrition information aggregated primarily from packaged food labels.  For example, it has nutrition information for various branded granola bars, canned soups, packages of pasta, and the like.  The list of nutrients in these foods is public information, available from public sources, such as the packaging for said granola bars, canned soups, and packages of pasta or from those manufacturers' websites.  ESHA also obtained some of the information from the U.S. Department of Agriculture, a free, publicly-available resource.  The information in ESHA's Branded Foods database includes up to 38 nutrient values for each food item (most branded food items are lacking data for many of these nutrients, as labeling laws do not require them on packaging, so most fields are blank for the majority of food items).

18.    ESHA's "Restaurants" database contains menu items from popular chain restaurants and food service companies, with similar nutrient information for those menu items.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

This information is typically information published by chain restaurants on their corporate websites.

19.    The Branded Foods and Restaurants databases have approximately 60,000 food items combined, with the up-to-38 fields for their respective nutrients.

20.    A third database, called the "Common Foods" database, includes nutrition information for raw foods, spices, and everyday recipes.  For example, upon information and belief, it contains the nutritional information for common food items like almond flour, baking powder, various additives and preservatives, and the like.  Far exceeding the breadth of the Branded Foods and Restaurants databases, the Common Foods database has 172 fields for each raw food item.

C.    **Background Concerning Cronometer and its Relationship with ESHA**

21.    Cronometer was started by Aaron Davidson in 2011 as a project to develop dietary tracking software.  Cronometer ultimately developed a subscription-based dietary tracking app known as "Cronometer," which is designed for use by individuals.  It is available at the website cronometer.com.

22.    The Cronometer app allows individuals to log their meals, exercise, and health metrics through an app on their smart devices.  The Cronometer app also allows users to set targets to meet their health goals.  It then provides reports and analyses to those users, including specific nutritional content for 84 different nutrients and compounds.  There are over 10 million users of the Cronometer app.

23.    In support of the Cronometer app, Cronometer licensed food/nutrition databases from a number of third parties, including a database provided by the United States Department of Agriculture, a database provided by the Canadian government, and a database of Irish Foods.  Cronometer also creates its own database based on requests from users.  In total, the cumulative database underlying Cronometer's software has approximately 2 million items.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

24.     When a user logs that they ate a particular food item, they can search for the food item within Cronometer's software.  The Cronometer software identifies which database the food item is found in, and then provides the nutritional content for that food item from that database.

25.     Along these lines, in late 2014 or early 2015, Cronometer contacted ESHA about licensing its Branded Foods and Restaurant databases for use within the Cronometer software. Cronometer had no interest in the Common Foods database, which it determined would be redundant to its existing database, which already contained a common foods dataset, which it licensed from another source.

26.     Mr. Davidson spoke at length with an ESHA product specialist who was authorized by ESHA to transact data licenses on behalf of ESHA.  Mr. Davidson and that sales representative spoke numerous times about how those databases were going to be used in support of the Cronometer software.  Mr. Davidson explained to ESHA that the database would be a supplement to its existing databases, including its own database.  ESHA provided Mr. Davidson with access to its Food Processor® software, so Cronometer could access the ESHA database underlying that software and determine whether it would work for Cronometer's needs.  ESHA was aware what Cronometer intended to use the database for, and that the database was going to be publicly available to log food items and display the corresponding nutritional content to those who subscribed to use Cronometer's software.

27.     On or about February 16, 2015, ESHA sent Cronometer a draft license agreement titled Database Access License Agreement – Internal Use Only License.  The draft license agreement contained certain terms relevant here.

28.     Section 2 states as follows:

> Scope of Access License.  Licensee is licensed to possess and use a single copy of the Database for Licensee's own internal nutritional analysis business or research purposes.  Licensee is *not* licensed to do any of the following: (a) sublicense, rent, lease, lend or otherwise transfer all or any portion of Database, or Licensee's access or use rights under this Agreement, without the prior written

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

consent of ESHA; (b) remove or obscure the ESHA copyright or trademark notices; (c) compile or extract, directly or indirectly, the data from the Database in whole or in part for the purpose of redistribution.

29.    Section 7 states as follows:

<u>Branding and Attribution.</u>  (a) If the nutrition analysis or reports generated by the application are for public or published commercial purposes (e.g., books, brochures or web pages summarizing the nutritional content) the Licensee will include ESHA's Copyright and Trademark notification (e.g., "Powered by the ESHA Research Nutrient Database©" in the "About" section of the web site or other similar acknowledgment section of the published material.  Licensee shall not otherwise use ESHA's name or trademarks without ESHA's prior written consent. (b) Licensee agrees to allow its name and/or logo to be included in materials listing ESHA customers.

30.    The draft license agreement sent by ESHA did not reflect the contemplated use of the database, and ESHA knew it.  ESHA's product specialist had in fact discussed Cronometer and its intended use of the software at meetings of executives within ESHA.  Thus, it was well-known by ESHA that Cronometer did not plan to use the database for "Internal Use Only," as the title to the license agreement suggested.  The "Scope of Access License" in Section 2 also did not reflect the understood use of the software, because both parties understood that Cronometer did not intend to use the software for its "own internal nutritional analysis business or research purposes."  Rather, ESHA was aware that Cronometer intended to make the information available to its subscribers.

31.    Section 7 of the draft agreement, concerning Branding and Attribution, also did not reflect the intended use of the database.

32.    Upon information and belief, Mr. Davidson spoke to ESHA about the inconsistency.  ESHA advised Mr. Davidson that it couldn't be changed for a contract this small and not to worry about it.  Mr. Davidson, then a novice owner of a start-up, took ESHA at its word.

Page 19 -    ANSWER TO COMPLAINT AND COUNTERCLAIMS
FOR DECLARATORY JUDGMENT AND VIOLATIONS
OF FEDERAL ANTITRUST LAWS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

33.     Ultimately, ESHA provided Cronometer with the Branded Foods and Restaurant databases for use with the Cronometer software.  The databases were provided in the form of a large spreadsheet.  ESHA did not provide its Common Foods database.

34.     According to ESHA's products specialist, later its Director of Sales and Trustwell's Sales Director, ESHA's draft license agreement, which ESHA used with its licensees, was poorly drafted, and the language was incongruent with how ESHA knew its databases were being used.

35.     Indeed, in follow-up emails and actions, ESHA clearly and unequivocally (i) acknowledged and recognized how its database was being used in Cronometer products, (ii) acquiesced to use of its databases in support of the public-facing Cronometer software, and (iii) thanked Cronometer for "playing by the rules" in its use of the databases.

36.     For example, on February 16, 2015, ESHA wrote to check in with Mr. Davidson to confirm that the data had been received and that "everything is going well so far." Mr. Davidson responded that he had the data and was "in the process of importing / testing."

37.     In subsequent emails, Mr. Davidson provided screen shots to ESHA showing exactly how the database was appearing in the public-facing software app.  Specifically, later on February 16, 2015, Mr. Davidson asked a question concerning one of the nutrient columns on the spreadsheet, titled "O_Carb."  Mr. Davidson additionally wrote that he was attaching screenshots of the various places in the program where ESHA is mentioned, including its "user manual."

38.     Mr. Davidson also noted that he was adding some limitations to the database in Cronometer's software "to protect ESHA data from unnecessary exposure from data export, web crawlers, etc."

39.     Among the screenshots that Mr. Davidson provided to ESHA were public-facing pages on Cronometer's software such as the following:

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

## Data Sources

The foods in our database come from several sources.

- **Nutrition Coordinating Center Food & Nutrient Database** (NCCDB)

  Curated by the The University of Minnesota, this is the most comprehensive set of food data we use, and makes up the bulk of foods in our database. This data set contains over 16000 food entries with comprehensive data on 70 nutrients.

- **United States Department of Agriculture National Nutrient Database for Standard Reference** (USDA SR27)

  Curated by the USDA, this is the a very comprehensive set of food data available. This data set contains nearly 8000 food entries with data on over 70 nutrients.

- **ESHA Research, Inc.** (ESHA)

  The ESHA database provides data for over 35000 brand name products and restaurant menu items. These items don't typically have as full of a nutrient profile as the USDA and NCCDB items, but contain all the published information from the product nutrition labels.



Powered by ESHA Nutrient Database. ©2013 ESHA Research, Inc. All Rights Reserved.

- **The Canadian Nutrient File** (CNF 2010)

  This data has a lot of overlap with the USDA data (many entries are derived it), but adds a lot of additional foods, as well as reflecting differences found in Canadian foods. It has french and english names for all items, as well as standard measures in metric units.

- **Irish Food Composition Database** (IFCDB)

  This data set contains nearly 1000 irish food and supplement products.

- CRON-O-Meter Community Database (CRDB)

  This is our own set of user-submitted food entries. They show up in green text in the food search dialog. These are typically created by users from nutrition labels of products they use. Because nutriton labels are limited, they may not have as complete a nutrient-profile as the more generic

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460



40.    These screen shots show how users would see the ESHA database displayed to Cronometer's users when they logged a food item.

41.    The following day, ESHA responded to Mr. Davidson's email.  It did not complain of the use of the ESHA databases on Cronometer's public-facing software, because that is exactly how ESHA understood the databases were going to be used.

42.    The next day, February 18, 2015, Mr. Davidson wrote to ESHA asking further questions about the database and stating, "we have released this live on our site now, so you can see it in the wild if you want."  Mr. Davidson also provided some comments for improvement for ESHA to consider.

43.    On February 19, 2015, ESHA's salesperson responded, answering Mr. Davidson's questions, and writing, "I look forward to checking out the app."

44.    A few days later, on February 24, 2015, ESHA wrote to Cronometer, "We would like to write a press release about our partnership.  Please let me know if you have any concern with this.  You can provide us a blurb and possibly an image you might like included."

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

45.     Upon information and belief, ESHA believed that it was engaging in a symbiotic, mutually beneficial relationship with Cronometer by allowing Cronometer to use its database, and receiving publicity and benefit from Cronometer's attribution to ESHA as a result.

46.     Mr. Davidson responded later that same day, "That sounds great, no problems at all." Mr. Davidson noted a comment on its blog from a user who was impressed that the Cronometer software had one of the ESHA food items, and he provided a blurb for a marketing statement, along with some graphics for ESHA to use. The blurb specifically identified the location of Cronometer's software: Cronometer.com

47.     Mr. Davidson also provided ESHA with "a database query from cronometer.com with the top 500 ESHA food items (sorted by descending popularity)." Mr. Davidson explained that "This reveals the ESHA food products our customers are finding when searching." Again, the email specifically identified the location of Cronometer's software as cronometer.com.

48.     On February 25, 2015, ESHA wrote back responding to some of the comments provided by Cronometer. The Director of Sales noted that it had "called a meeting yesterday" and that "the CEO is on board" with some of the suggestions provided by Cronometer, noting that "we are moving fast on your feedback." ESHA had "One question" in follow up. Specifically, it wanted to know "why our data license customers, such as yourself, want so many nutrients. Generally the public isn't knowledgeable enough to concern themselves."

49.     Mr. Davidson responded why companies like Cronometer were interested in providing databases with so many nutrients to their customers. Specifically, Mr. Davidson explained that "there is a substantial niche market . . . for people that do need the detailed information. This subset includes : nutrition nerds, nutritionists & physician managing clients, educators, and researchers conducting studies. For these people, there's a real need for the data, and few places to find it." The email also identified again where Cronometer's software could be found: cronometer.com.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

50.    On March 9, Mr. Davidson wrote about an additional nutrient that "A few customers have complained" is not listed in the nutrients database.  ESHA responded.

51.    On March 19, ESHA wrote an email with the subject line, "ESHA / BigCrunch Marketing PR," stating that its "marketing department" needs additional information "for quotes concerning an 'About Cronometer' section."  Mr. Davidson responded, again identifying where the software could be found:  cronometer.com.

52.    At no time did ESHA complain of the use of the databases within Cronometer's public-facing software, because that is exactly how ESHA understood the databases were going to be used.  At no time did ESHA complain that Cronometer's use of the software did not comply with Section 2 of the alleged license agreement.  At no time did ESHA complain that Cronometer's use of the software failed to provide proper branding or attribution.

53.    Section 11 of the draft license agreement also stated:

> Covenant Not to Compete.  Licensee shall not, during the term of this Agreement, develop, market, license or sell any product or service that is competitive with the products or services ESHA provides to Licensee.

54.    Cronometer has never been in the business of licensing or selling food databases. As noted, Cronometer has its own database of nutrition information for food products, and Cronometer sent ESHA a screenshot showing that this database was available for its customers on its website in 2015.  Cronometer has also listed numerous other data sources on its website, and provided a screen shot to ESHA showing its use of these databases in 2015, as discussed and shown in paragraphs 37-39, above.  Notwithstanding, ESHA never complained that Cronometer violated Section 11 of the draft agreement.

55.    Notably, Section 11 would only have restricted Licensee from developing, marketing, licensing, or selling products or services that are competitive with *the products or services ESHA provides to Licensee*—i.e., food databases.  By its plain language, it would not have restricted the development, marketing, licensing, or selling *of dietary tracking software or*

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

*apps*, because those are not *the products or services ESHA provides to Licensee* pursuant to the alleged license agreement.

56.    In any event, ESHA also knew that Cronometer's software was used by "nutritionists & physician managing clients, educators, and researchers conducting studies," because Mr. Davidson told ESHA as much in an email.

57.    ESHA in fact had an internal policy that it would license its databases to companies that were arguably competitors in certain spaces, provided they were not competing with ESHA in relation to its flagship software, a software called Genesis R&D.  Genesis R&D is software designed for food manufacturers, a different industry, in which Trustwell also has market power.  More than 80% of food manufacturers used Genesis R&D.  Cronometer does not compete with Genesis R&D.  ESHA in fact frequently licensed its databases to companies, like Cronometer, that made software for consumers or mobile apps, knowing that the data would be made accessible to the public.

58.    In 2016, Cronometer launched a product called Cronometer Pro.  It is specifically designed for healthcare professionals, such as nutritionists.  It allows healthcare professionals to view the food/nutrition data of their clients who are using the Cronometer app, and then to communicate with those clients through the app.

59.    The relationship between Cronometer and ESHA continued uninterrupted for the next nine years.  Mr. Davidson occasionally wrote to ESHA with questions.  ESHA's product specialist became Director of Sales (or Sales Director) in October 2015.  He continued to be copied on emails between ESHA and Cronometer when issues arose.  Every six months or so, ESHA would send an updated spreadsheet comprising updates to its Branded Foods and Restaurant databases.

60.    Cronometer never sought the Common Foods database, with its alleged 192 categories of nutrients and ingredients for raw food items like baking soda.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

61.    Contrary to the allegations in the Complaint, Cronometer never entered into a license agreement for the Common Foods database.

62.    Cronometer never paid for the Common Foods database.

63.    Contrary to the allegations in the Complaint, Cronometer never received the Common Foods database.

64.    Cronometer never used the Common Foods database.

65.    In 2019, Cronometer received an email from Mr. Geltz, the co-founder of ESHA. Mr. Geltz had recently acquired the Cronometer software, and wrote to Cronometer to report that he found the software "fun, easy, and informative."  In his email, Mr. Geltz indicated that he was aware that the Cronometer software used ESHA's databases, and thanked Cronometer for "playing by the rules."

66.    Specifically, Mr. Geltz wrote:

> As you probably know, our database is over 60K items, we track over 140 data points and have the same issues with manufacturers providing only about 14 nutrients.  It does create a dilemma for users.  Your explanation for using generic foods was clean, short and very informative.  Nice job.
>
> Of course I confirmed you are one of our customers (Big Crunch Consulting) when I saw ESHA listed as the source for several food items.  Thanks for playing by the rules.
>
> I was looking for a simple, clean diet tracking software package. Sure, I could use ours (Genesis R&D, Food Processor, ESHATrac, etc.) but they are industrial strength and a bit over kill for what I wanted.  So I went exploring.  Found yours and really liked it.
>
> Just wanted to drop a note and say Thanks for a nice piece of software, good looking interface, and great follow ups to keep users focused.

67.    The fact that ESHA supported Cronometer's use of the database in its public-facing software, notwithstanding some nominal potential overlap in terms of clients, is not surprising.  At the time, ESHA's primary business was its Genesis R&D product, used by

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

Fortune 500 companies in the food manufacturing space to create labels for their products. That industry and market also uses and relies on extensive food nutrient databases. Genesis R&D was ESHA's main revenue generator, and ESHA continues to this day to be a market leader with substantial market power in that separate space.

68.     However, pursuit of individual dietary tracking clients was not a business strategy at the time, and dietary tracking was deemed not to be a competitive interest within ESHA, notwithstanding the entrenchment of its Food Processor® software.

**D.     Facts Concerning the Rise of Trustwell and its Anticompetitive Conduct**

69.     In February 2023, ESHA merged with FoodLogiQ to form Trustwell. The merger was brought about by a large investment from a private equity company, which currently has over 140 companies in its global portfolio.

70.     The relationship with Cronometer continued initially. For example, in March 2023, Trustwell provided its database update, as normal, in the form of a spreadsheet. In the same email, it notified Cronometer that ESHA was now Trustwell.

71.     Given the change, Mr. Davidson responded and asked if there should be any change with respect to the attribution / source name for ESHA on Cronometer's web pages listing its databases and food items. Trustwell asked that attribution be changed to Trustwell rather than ESHA. Cronometer complied with this request.

72.     In October 2023, Trustwell sent an additional database update in the ordinary course.

73.     However, now driven by demands by its private equity investors, ESHA/Trustwell came to reassess its products and the market and decided to take a new approach, endeavoring to leverage the entrenchment of Food Processor® into a monopoly in the market for professional dietary tracking software, bolstered by Trustwell's ownership of its various food databases that numerous apps had come to rely on for their products.

Page 28 -     ANSWER TO COMPLAINT AND COUNTERCLAIMS
FOR DECLARATORY JUDGMENT AND VIOLATIONS
OF FEDERAL ANTITRUST LAWS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

74.    Accordingly, on July 9, 2024, Cary Sullivan, counsel for Trustwell, wrote a letter to Mr. Davidson demanding that Cronometer:

> • Terminate all marketing and sales by Cronometer of nutritional data and related information and products to all health professionals and consultants, universities, and health care institutions;
>
> • Terminate all use by Cronometer of Trustwell's nutritional data and related information and products, including its database, to develop, launch, or support any products or services that compete, directly or indirectly, with Trustwell;

75.    Mr. Sullivan also made additional demands.  Mr. Sullivan's demands were extortionate, in that they sought more than Trustwell would have been entitled to based on any reasonable assessment of the facts and law.  Under no viable legal theory would Trustwell have been entitled to have Cronometer cease all marketing and sales of "nutritional data and related information and products to all health professionals and consultants, universities, and health care institutions."

76.    Mr. Sullivan's letter included a number of false statements.  Mr. Sullivan falsely accused Cronometer of "secretly providing access to and use of [ESHA's] database" to a third party company  "in breach of your license agreement and in violation of U.S. federal and state law."

77.    Mr. Sullivan also falsely stated that Cronometer had "breached [its] license agreement and violated federal and state law in numerous ways."

78.    Mr. Sullivan falsely stated that "Trustwell's proprietary database contains and embodies highly confidential and trade secret information."  That may or may not be true of the Common Foods database.  But it is not true of the Branded Foods and Restaurants databases, which are comprised of publicly available information found on nutrition labels.  It is also not true because Trustwell permitted and encouraged Cronometer to make that information publicly available on its website to its millions of users.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

79.    Mr. Sullivan further falsely alleged that Cronometer had violated the Defend Trade Secrets Act and the Lanham Act, and that Cronometer had engaged in "fraud, conversion, conspiracy, and several other violations of federal and state law."

80.    Mr. Sullivan demanded compliance with his demands within three days.

81.    Notwithstanding the false statements in Mr. Sullivan's letter, Cronometer immediately delisted the ESHA database from its collection of databases available for users to select when logging new food items.

82.    Mr. Davidson thereafter communicated directly with Katy Jones, the CEO of Trustwell.  Ms. Jones apologized to Mr. Davidson for any potential misunderstanding and Mr. Davidson and Ms. Jones spoke at length.  In that call, Mr. Davidson explained that ESHA and Cronometer had a long-standing relationship, and that ESHA was very familiar with exactly what Cronometer had been doing for the past nine years.  Mr. Davidson communicated to Ms. Jones the existence of emails dating back to the start of this long-standing relationship, which show that ESHA knew what Cronometer was using ESHA's databases for, and that ESHA had approved of Cronometer's attribution methods.  Mr. Davidson also explained that Cronometer had only ever received and used the Branded Foods and Restaurant databases, not the Common Foods database, and that those databases were only to round out the offerings from Cronometer's own database and the other databases that it licensed, which substantially dwarfed the ESHA databases.

83.    Ms. Jones responded to Mr. Davidson that she appreciated his response, but that she would need to follow the desires of the private equity investors who invested in Trustwell in determining how to proceed, indicating that if the investors wanted to proceed with filing a lawsuit, Ms. Jones would agree to do so regardless of whether she believed there was a legitimate basis.

84.    On August 22, 2024, Mr. Sullivan sent an additional demand letter, which threatened litigation if Cronometer did not comply with Trustwell's extortionate and unlawful

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

demands.  The letter had the Re: line "Final Attempt to Avoid Litigation."  It included an additional "demand that Cronometer immediately surrender to Trustwell all notes, records, documentation, models, software, databases, and other items or materials containing, referencing, or based on Trustwell's confidential, proprietary, and trade secret information, including, by way of example only and without limitation, database structures and content, report formats, interface designs, business plans, marketing plans, information about publication plans, software features under development, software code, and algorithms."

85.     The letter contained a draft "Complaint for Injunctive Relief and Damages."  That draft complaint contained numerous false statements and allegations.  For example, it accused Cronometer of "secretly us[ing] Trustwell's Database and other nutritional data . . . to help build, market, and sell competing products and services."  To the contrary, nothing was secret about Cronometer's use of the Trustwell data—it has been out and in the open for ESHA, Mr. Geltz, and millions of other users to see starting in 2015.

86.     The draft complaint further alleged that the database licensed to Cronometer is a "trade secret."  That is false.  No reasonable, objective person could conclude that a database licensed for public consumption to millions of people, not to mention ESHA's own, extensive software portfolio and other, third-party apps, is a "trade secret."

87.     The draft complaint further alleged that "[a]t no point did Trustwell ever authorize Cronometer to . . . use [the database] in any way beyond the terms and conditions of the License Agreement."  That is manifestly false, as indicated by the communications between ESHA and Cronometer following transmission of the database, in which ESHA asked to write a joint press release concerning their "partnership."

88.     The draft complaint further alleged that "Cronometer falsely and deceptively marketed and sold, and continues to falsely and deceptively market and sell, Trustwell's crown jewel Trade Secrets as Cronometer's own creation, the result of Cronometer's own honest, hard work."  That is demonstrably false.  Not only is the database not a trade secret, but Cronometer

ANSWER TO COMPLAINT AND COUNTERCLAIMS
FOR DECLARATORY JUDGMENT AND VIOLATIONS
OF FEDERAL ANTITRUST LAWS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

consistently provided attribution to ESHA/Trustwell when users selected one of the food items. This was specifically shown to ESHA's Director of Sales and ESHA's co-founder, who thanked Cronometer for "playing by the rules."

89.     The draft complaint further alleged that "Trustwell did not learn of Cronometer's scheme until mid-2024."  Whatever Trustwell meant by "scheme," that statement is manifestly false for all of the reasons provided above.

90.     The letter demanded compliance with its demands by Monday, August 26, 2024. Mr. Sullivan later advised that he was under a "client mandate" to file the lawsuit by a date certain unless Cronometer was willing to cease selling products to professional users and make substantial changes to its business model.

91.     Cronometer did not agree to Trustwell's unreasonable and extortionate demands.

92.     Cronometer wrote to Mr. Sullivan explaining that Trustwell's contention about a violation of an alleged non-compete agreement by nature of Cronometer selling to healthcare professionals was baseless.  The communication explained, "the non-compete clause is limited to competition of the 'products or services ESHA provides to Licensee.'  Cronometer does not sell any products that compete with ESHA's database-licensing services, which is the only 'product or service' ESHA provides to Cronometer.  The products that Cronometer does provide are inapposite to the language in this clause."

93.     The communication further explained that ESHA "specifically endorsed Cronometer's use of the database, and thus waived, consented, and acquiesced to Cronometer's right to use the database on a public-facing website, accessible to Cronometer's end users, back in 2015 (and also since then).  The same problems underlie any claim concerning allegations concerning lack of attribution—your client specifically consented to the way in which Cronometer provided attribution to ESHA.  And when Trustwell acquired ESHA, Cronometer was proactive in ensuring it continued to attribute the database as Trustwell desired given the change in names."

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

94.    The communication also explained that "ESHA's consent to Cronometer's use of the database on a public-facing website accessible to consumers (including asking to 'write a press release about our partnership') defeats any claim of misappropriation of trade secrets." Thus, Cronometer specifically quoted from ESHA's February 24, 2015 email to Cronometer.

95.    The communication further explained that "any lawsuit would be meritless, and we would intend to seek any fees spent defending such a frivolous lawsuit."

96.    Cronometer further advised that Mr. Sullivan "look at documents in your own client's files, including emails between ESHA and Cronometer" from "2015" and "2019." Mr. Sullivan was advised that such documents "would be critical for a reasonable investigation before filing a lawsuit alleging breach of contract, trademark infringement, and trade secret misappropriation." Mr. Sullivan was invited that if he performed such a reasonable investigation and Trustwell did not have these historical records, he should advise Cronometer.

97.    Trustwell did not indicate it had any difficulty finding the emails, and it did not further ask for them from Cronometer. Indeed, Cronometer had given Trustwell the specific year of the exchanges, a direct quote from the email exchanges, and advised that Trustwell begin its reasonable investigation by "starting with the person who administered the Cronometer account for ESHA."

98.    Upon information and belief, Trustwell took the ensuing three weeks to review the nine-years worth of email exchanges between ESHA and Cronometer, including the critical exchanges from 2015, referenced above, in Mr. Davidson's telephone conversation with Ms. Jones, and in the communications with Mr. Sullivan.

99.    Notwithstanding, Trustwell filed the instant lawsuit on September 18, 2024.

100.    Upon information and belief, the Complaint was filed with full knowledge that it is baseless.

101.    The as-filed version of the Complaint contains even further demonstratively false statements.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

102.     For example, the as-filed version of the Complaint alleges facts apparently related to a license of the Common Foods database.  Specifically, paragraph 4 defines the "Database" that was allegedly licensed as containing "more than 90,000 brand name and generic foods and ingredients" and "up to 172 separate data fields."  The Branded Foods and Restaurant databases that ESHA sent to Cronometer did not have this information.  That information was apparently specific to the Common Foods database, which Cronometer neither licensed nor received.

103.     Yet, Trustwell defines the "Database" at issue as this database, which Cronometer never licensed or used.  Trustwell then falsely alleges that Cronometer "request[ed] a license to access" this "Database," was "provided . . . access to" this "Database," "downloaded a copy of" this "Database," "misappropriated" this "Database," and used this "Database."

104.     Trustwell knows that Cronometer never received a database of 90,000 items, or with 172 separate data fields, and therefore knows these allegations to be false.

105.     As with the draft complaint, the as-filed Complaint alleges breach of contract, trademark infringement, and trade secret misappropriation.  Trustwell knows these allegations to be baseless as they are directly contradicted by the facts laid out above, which are readily established through Trustwell's own documentation.

106.     No reasonable litigant could believe this lawsuit has any merit.  Specifically, no reasonable person could believe that the Branded Foods and Restaurant databases are trade secrets, or that they have been misappropriated by Cronometer, particularly given the fact that the nutrition information contained therein is widely available from public sources and Cronometer (and other licensees) were free to post the information on public-facing websites to millions of users.  No reasonable person could believe that Cronometer could be liable for breach of contract, given the express statements provided to Cronometer nine years ago.  And no reasonable person could believe that Cronometer has engaged in trademark infringement, when it identified the nutrition information as having come from ESHA, just as ESHA requested.

Page 34 -   ANSWER TO COMPLAINT AND COUNTERCLAIMS
            FOR DECLARATORY JUDGMENT AND VIOLATIONS
            OF FEDERAL ANTITRUST LAWS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

107.     Upon information and belief, Trustwell subjectively believes the lawsuit has no merit.  Trustwell has been informed of as much, and has been directed to the documents that make this abundantly clear.  Upon information and belief, Trustwell reviewed these documents and confirmed its allegations lack merit.

108.     Upon information and belief, Trustwell filed the instant lawsuit anyway in an unlawful attempt to chase one of its few competitors out of a very narrow market for which Trustwell has substantial market power and in which it seeks a monopoly.

109.     Driven by private equity money, Trustwell seeks to use its market power by filing sham litigations against its competitors, forcing them to spend money defending baseless lawsuits in an effort to weaponize the Court system and use it for anticompetitive purposes to prop up its market dominance for Food Processor®.

110.     For example, Trustwell has historically been charging customers $600/year for one log-in for Food Processor® for 3-4 practitioners.  Trustwell just used its market power to increase the price for that software to $10,000.  Trustwell needs Cronometer out of the market to succeed in its attempt to charge these monopolistic prices, and seeks to do so through this lawsuit.

111.     This is not the only such unlawful action Trustwell has taken in this vein.  It has engaged in a pattern of such conduct in its markets.

112.     Such conduct violates the Sherman Antitrust Act and is criminally and civilly unlawful.  The allegations herein also establish violations of the Hobbs Act.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

## COUNTERCLAIM I

### Declaratory Judgment of No Liability for Breach of Contract

113.    Cronometer incorporates by reference its allegations in paragraphs 1-112 of these Counterclaims set forth above.

114.    Cronometer seeks declaratory judgment that it is not liable for breach of contract.

## COUNTERCLAIM II

### Declaratory Judgment of No Liability Under the Defend Trade Secrets Act (18 U.S.C. § 1836, *et seq.*)

115.    Cronometer incorporates by reference its allegations in paragraphs 1-114 of these Counterclaims set forth above.

116.    Cronometer seeks declaratory judgment that it is not liable for misappropriation of trade secrets under the Defend Trade Secrets Act (18 U.S.C. § 1836, *et seq.*).

## COUNTERCLAIM III

### Declaratory Judgment of No Liability Under the Lanham Act (15 U.S.C. § 1125(a))

117.    Cronometer incorporates by reference its allegations in paragraphs 1-116 of these Counterclaims set forth above.

118.    Cronometer seeks declaratory judgment that it is not liable for false advertising or false designation of origin under Lanham Act (U.S.C. § 1125(a)).

## COUNTERCLAIM IV

### Declaratory Judgment of No Liability Under the Oregon Uniform Trade Secrets Act (Or. Rev. Stat. § 646.461, *et seq.*)

119.    Cronometer incorporates by reference its allegations in paragraphs 1-118 of these Counterclaims set forth above.

120.    Cronometer seeks declaratory judgment that it is not liable for misappropriation of trade secrets under the Uniform Trade Secrets Act (Or. Rev. Stat. § 646.461, *et seq.*).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

## COUNTERCLAIM V

### Declaratory Judgment of No Liability Under the Oregon Unlawful Trade Practices Act (Or. Rev. Stat. § 646.605, *et seq.*)

121.    Cronometer incorporates by reference its allegations in paragraphs 1-120 of these Counterclaims set forth above.

122.    Cronometer seeks declaratory judgment that it is not liable for unlawful trade practices under Oregon Unlawful Trade Practices Act (Or. Rev. Stat. § 646.605, *et seq.*)

## COUNTERCLAIM VI

### Violation of Federal Antitrust Statute, 15 U.S.C. § 2

123.    Cronometer incorporates by reference its allegations in paragraphs 1-122 of these Counterclaims set forth above.

124.    When Trustwell filed this action, it knew each of its claims was baseless.

125.    This lawsuit is objectively baseless because no reasonable litigant could conclude that Trustwell's allegations are reasonably calculated to elicit a favorable outcome because it clearly, unmistakably, and affirmatively consented and acquiesced to the very actions of which it, now driven by private equity investors, now complains.

126.    Trustwell therefore does not have a sufficient basis to assert the claims in this action.

127.    Upon information and belief, Trustwell knew its claims had no chance of success. Specifically, Cronometer advised both Trustwell's CEO and its attorney of the facts underlying this lawsuit.  Cronometer advised Trustwell on multiple occasions that documents from the time of the alleged formation of the license agreement undermined any cause of action by clearly demonstrating that Trustwell's predecessor company clearly, unmistakably, and affirmatively consented to, acquiesced to, encouraged, and promoted Cronometer using the Branded Foods and Restaurant databases on its public-facing website.  However, Trustwell's CEO indicated that she would not be the one to decide whether to proceed with filing a lawsuit—rather, that decision

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

would be made instead by Trustwell's private equity investors.  Likewise, Trustwell's attorney represented that he was under a "client mandate" to file a lawsuit on a date certain, regardless what the facts were, regardless any effort to engage in a reasonable investigation, and regardless the specific collection of case-dispositive communications that Cronometer directed him toward—unless Cronometer capitulated to unreasonable and extortionate demands, including withdrawing one of its products from the market.

128.    In other words, Trustwell represented that it intended to file this lawsuit regardless the known existence of case-dispositive facts, driven instead by mandates from investors.

129.    Trustwell's action is subjectively baseless because its claims are merely an attempt to conceal its attempt to monopolize the market as described herein.  It only seeks to enforce claims against Cronometer to eliminate it from the market.

130.    As described above, Trustwell has market power in the market for professional dietary tracking software.

131.    There is a dangerous probability that Trustwell will achieve monopoly power in the United States professional dietary tracking software market.

132.    As a result of Trustwell's unlawful acts, Cronometer has suffered and will continue to suffer antitrust injury in an amount to be proven at trial.  That injury includes reputational harm from the public filing of false allegations.  It also includes the expenditure of substantial amounts of money, time, and human resources in order to defend itself against baseless claims.

133.    This has also caused the diversion of resources, which has resulted in lost sales.

134.    A dangerous probability of achieving monopoly power exists due to Trustwell's anticompetitive practices, barriers to entry in the market (including the ground-up development of software in an entrenched market), the nature of the competition in this market, the probable development of the industry, and the elasticity of consumer demand.

**ANSWER TO COMPLAINT AND COUNTERCLAIMS FOR DECLARATORY JUDGMENT AND VIOLATIONS OF FEDERAL ANTITRUST LAWS**

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

135.    Because Cronometer is not the only competitor Trustwell is targeting in this market, there is a dangerous probability that Trustwell will achieve monopoly power in this market.

136.    Trustwell's anticompetitive behavior also includes its luring small businesses to license databases from it on false pretenses, allowing them to use the database outside the scope of the license agreements, allowing them to make headway in the market in reliance on Trustwell's acquiescence, and then suing them for breach of contract and attempting to force them out of the market.

137.    Cronometer and customers in the relevant market have been injured in their business and property by reason of Trustwell's antitrust violations.  Cronometer's injury is the type of injury the antitrust laws were designed to prevent and flows from that which makes Trustwell's acts unlawful.

138.    Trustwell's practices are intended to, and if succeeded will, (i) decrease quality of products in the relevant market, (ii) increase Trustwell's market power, (iii) unreasonably restrain entry into the relevant market, (iv) increase costs to consumers by preventing competitive entrants from reaching economies of scale, and/or (v) unreasonably restrain competition by channeling consumer choices to Trustwell's inferior products, thereby effectively excluding other competitors' access to the relevant market.

139.    Trustwell's conduct has no legitimate business purpose or procompetitive effect. Its conduct is designed to exclude competitive threats and to monopolize the United States professional dietary tracking software market.

## **PRAYER FOR RELIEF**

WHEREFORE, Cronometer Software, Inc. respectfully prays for the following relief:

(a) That the Court deny all relief to Trustwell;

(b) That the Court enter judgment finding that Cronometer is not liable for breach of contract;

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

(c) That the Court enter judgment finding that Cronometer is not liable for violations of the Defend Trade Secrets Act (18 U.S.C. § 1836, *et seq*.);

(d) That the Court enter judgment finding that Cronometer is not liable for violations of the Lanham Act (15 U.S.C. § 1125(a);

(e) That the Court enter judgment finding that Cronometer is not liable for violations of the Oregon Uniform Trade Secrets Act (Or. Rev. Stat. § 646.461, *et seq*.);

(f) That the Court enter judgment finding that Cronometer is not liable for violations of the Oregon Unlawful Trade Practices Act (Or. Rev. Stat. § 646.605, *et seq*.);

(g) That the Court enter judgment finding that Trustwell is liable for violations of the Sherman Act, 15 U.S.C. § 2;

(h) That the Court enter preliminary and permanent injunctive relief prohibiting Trustwell from further violations of the Sherman Act;

(i) An award of treble damages;

(j) An award of attorney fees;

(k) An award of costs;

(l) An award of prejudgment interest;

(m) All equitable and other relief the Court finds just under the circumstances.

//

//

//

//

//

//

//

//

//

Page 40 - ANSWER TO COMPLAINT AND COUNTERCLAIMS FOR DECLARATORY JUDGMENT AND VIOLATIONS OF FEDERAL ANTITRUST LAWS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Cronometer Software, Inc. requests a trial by jury of all issues so triable.

Dated this 17th day of December, 2024.

Respectfully submitted,

SCHWABE, WILLIAMSON & WYATT, P.C.


*s/ Nika Aldrich*
Nika Aldrich, OSB #160306
Email: naldrich@schwabe.com

*Attorney for Defendant Cronometer Software, Inc.*

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460