1              IN THE UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF OREGON

3                   PORTLAND DIVISION

4

5    ESHA RESEARCH, INC., now known   )
     as TRUSTWELL, Plaintiff,         )
6                                      )
                         Plaintiff,   )   No. 3:24-cv-01586-AB
7                                      )
                  vs.                  )   February 3, 2025
8                                      )
     CRONOMETER SOFTWARE, INC.,        )   Portland, Oregon
9    formerly known as BIGCRUNCH       )
     CONSULTING, LTD., and DOES        )
10   1-20,                             )
                                       )
11   _____Defendants.___)

12

13

14               TRANSCRIPT OF PROCEEDINGS

15            (Telephonic Rule 16 Conference)

16

17        BEFORE THE HONORABLE AMY M. BAGGIO

18        UNITED STATES DISTRICT COURT JUDGE

19

20

21

22

23   Court Reporter:          Ryan White, RMR, CRR
                              United States District Courthouse
24                            1000 SW 3rd Avenue, Room 301
                              Portland, Oregon 97204
25                            (503) 326-8184

```
 1                              APPEARANCES

 2

 3   For the Plaintiff:        JONES DAY
                               By:  CARY SULLIVAN
 4                             carysullivan@jonesday.com
                               3161 Michelson Drive, Suite 800
 5                             Irvine, California 92612
                               (949) 851-3939
 6
                               DUNN CARNEY LLP
 7                             By:  BRIAN R. TALCOTT
                               btalcott@dunncarney.com
 8                             851 SW 6th Avenue, Suite 1500
                               Portland, Oregon 97204
 9                             (503) 224-6440

10   For the Defendant:        SCHWABE, WILLIAMSON & WYATT PC
                               By:  NICHOLAS F. ALDRICH, JR.
11                             naldrich@schwabe.com
                               By:  JULIA DAVIS
12                             jdavis@schwabe.com
                               1420 5th Avenue, Suite 3400
13                             Seattle, Washington 98101
                               (503) 796-2494
14

15

16

17

18

19

20

21

22

23

24

25
```

1                (February 3, 2025; 1:29 p.m.)

2

3               P R O C E E D I N G S

4

5       THE CLERK:  Good afternoon, Counsel.  We're here for

6 the Rule 16 conference in case number 3:24-cv-1586-AB, ESHA

7 Research, Inc., versus Chronometer Software, Inc., et al.  And I

8 apologize for mispronouncing the parties' names.

9       Counsel, can you please identify yourselves for the

10 record.

11       MR. SULLIVAN:  Yes.  Hello.  This is Cary Sullivan

12 with Jones Day on behalf of the plaintiff.

13       MR. TALCOTT:  And this is Brian Talcott with Dunn

14 Carney.  I'm local counsel for the plaintiff.

15       MR. ALDRICH:  Sorry.  This is Nika Aldrich, and I'm

16 joined by Julia Davis of my firm, Schwabe Williamson & Wyatt, on

17 behalf of the defendant.

18       THE COURT:  Okay.  Thank you, Counsel, for your

19 presence here this afternoon.  This is Judge Baggio speaking.

20       I have had the opportunity to review your 26(f) joint

21 status report and I'd like to talk with counsel today about what

22 is reasonable in terms of moving the case forward.  I have a few

23 questions to make sure I am up on the latest, so let me start

24 with those.

25       And perhaps, Mr. Sullivan, let me ask you to answer

1    these questions and we will proceed as necessary.

2              Let me first hear, please, it looked like by the

3    filing that the Rule 26(a)(1) initial disclosures were to be

4    provided by January the 29th, 2025.  Have those been completed?

5              MR. SULLIVAN:  Yes, Your Honor.  Parties exchanged

6    those last week.

7              THE COURT:  Okay.  Thank you.

8              And the parties recently exchanged initial

9    interrogatories.  Is it correct that the responses remain due on

10   February the 24th, Mr. Sullivan?

11             MR. SULLIVAN:  Yes.  I believe that's the correct

12   date, Your Honor.  We have exchanged them and I believe that's

13   the response date.

14             THE COURT:  Anything to the contrary from Mr. Aldrich

15   or Ms. Davis?

16             MR. ALDRICH:  This is Mr. Aldrich and I'll be

17   speaking.

18             The date of the 24th is correct for the response for

19   Trustwell's response to Cronometer's interrogatories.  I'm

20   not -- I don't remember exactly when Cronometer's responses to

21   Trustwell's interrogatories are due.  But the date of

22   February 24th for the -- for Trustwell's responses is correct.

23             THE COURT:  Okay.  Thank you.

24             MR. SULLIVAN:  And Your Honor, this is Cary Sullivan.

25             Just to clarify, our calendar shows that both parties'

1  responses are due on the same date, the 24th.

2        THE COURT:  Mr. Aldrich?

3        MR. ALDRICH:  I don't dispute that.  I think there's a

4  weekend there that -- that makes possibly both dates on a

5  Monday.

6        THE COURT:  Okay.  Got it.

7        Okay.  Thank you.

8        So it looks like from the filings that the parties do

9  agree as to certain deadlines to move the case forward, and the

10  Court will adopt those.  That includes the written and document

11  discovery will be completed by October the 31st, 2025; the fact

12  depositions will be completed by January 30th of 2026; and

13  expert discovery will be completed by April the 30th, 2026.

14        I know we're going to talk a bit about the trade

15  secret identification in just a moment.  But setting that aside

16  for a moment, I'm thinking based on those agreed upon deadlines

17  for the case, that it would make sense for the Court to impose

18  an ADR filing deadline of May the 30th, 2026.  I find that

19  requiring that ADR report to be filed about a month after total

20  discovery is complete is a good time for the parties to talk

21  about possible settlement.

22        Is there any objection to the addition of that

23  deadline in the Court's order for today, Mr. Sullivan?

24        MR. SULLIVAN:  No objection from the plaintiff,

25  Your Honor.

1          THE COURT:  Thank you.

2          How about from defense counsel, Mr. Aldrich?

3          MR. ALDRICH:  There is not.

4          And I just wanted to point out for Your Honor that

5    there's also an agreement on two additional dates in our

6    proposed schedule, which is on page 11.  Pursuant to a footnote

7    that Trustwell has in their section, they do not object to the

8    February 27 or the March 27 dates for the service of expert

9    reports.

10          THE COURT:  Okay.  Very well.  I see those there.  And

11    what we can do -- that's something too -- that's fine, we can

12    note that for the record.  That would be something I see as kind

13    of handled on your side of things.  So if you want to agree to

14    slight modifications of that, that's fine too.

15          So we'll note the February 27, 2026, for the last day

16    to serve expert disclosures concerning issues for which the

17    party bears the burden of proof, and the further agreed upon

18    date of March 27, 2026, is, as agreed upon by the parties, the

19    last day to serve rebuttal expert disclosures.  But I'm not

20    going to order that just in case you all need to tinker with

21    that a little bit based on the way the case evolves.

22          Okay.  Next on my list is the status of the protective

23    order.  The joint status report on page 6 says that parties are

24    working on it, and it seems to me, particularly in light of

25    these issues related to the trade secret identification, that we

1  need to have finalized the protective order or at least a

2  sufficient written confidentiality agreement that would cover

3  the trade secrets identification in a way that both parties can

4  agree to.

5          So who would like to speak to that?

6          MR. SULLIVAN:  This is Cary Sullivan, Your Honor, on

7  behalf of the plaintiff.

8          I can get -- we can get a draft of the proposed

9  protective order over to Mr. Aldrich this week, if that works

10  for Your Honor.  The parties have agreed in principle to submit

11  one to Your Honor, but we have not yet exchanged drafts.

12          THE COURT:  Okay.  All right.  This week, Mr. Aldrich,

13  that works for you?

14          MR. ALDRICH:  Yes.  That's just fine.

15          And I think the Court has a couple versions of sample

16  protective orders on its website.  There's one that's commonly

17  used and then a separate one used for patent cases that has a

18  second level of -- it's an AEO level, level of confidentiality,

19  that gets added also.

20          So I'll just point out that we can work with

21  Mr. Sullivan on whichever of those is most appropriate here and

22  can try to get one entered as quickly as possible.

23          THE COURT:  Okay.  Please do so.

24          And I do look at those really carefully.  I find that

25  thinking in advance of the different implications of language in

1    a protective order can have a big impact on the way a case is

2    litigated.  So I really do like to think through those

3    carefully, and it has been my practice to, once even a

4    stipulated protective order is filed, take a look at the

5    language.

6            And sometimes I will deny it, but I will give real

7    specific lists of what I think needs to be changed and parties

8    can look at that and resubmit.  I'm not suggesting I'm going to

9    make changes to yours, but I do routinely make edits to the one

10   that's the Court's form just so that I -- again, kind of

11   benefiting from past experiences to try to avoid issues that

12   come up based on vagueness in the language in a way that doesn't

13   end up benefiting anybody involved in the case.

14           So I may flag some of those and give it back to you

15   all in the form of an initial denial with real specific

16   direction on how I would like you to consider resubmitting it.

17           Any questions about that from Mr. Sullivan?

18           MR. SULLIVAN:  I apologize for interrupting,

19   Your Honor.

20           No, no questions from the plaintiff.

21           THE COURT:  Okay.  Thank you.

22           And Mr. Aldrich?

23           MR. ALDRICH:  No.  No comments or questions,

24   Your Honor.

25           THE COURT:  Okay.  All right.  So what it appears from

1    the filings of the parties is that we need to speak for a few

2    more minutes about trade secret identification, which of course

3    is a procedural tool, but it's also the centerpiece of some of

4    the causes of action.  Not all of them, but some of the them.

5            And I understand that plaintiff takes the position

6    that their complaint in paragraphs 3, 4, 13, and 20 sufficiently

7    set forth the trade secret identification; however, I am not so

8    sure, and what I am thinking of doing is pausing all discovery

9    and -- pausing that except for the identification of the trade

10   secret information.  And I believe that this is appropriate here

11   because, of course, we've got Rule 8(a) notice pleading in

12   effect and we need to have the trade secret identification set

13   forth in a way that will put the defense -- the

14   defendant -- excuse me -- on notice of the nature of the

15   plaintiff's claims and also enable the defendant to determine

16   the relevancy of any requested discovery concerning that trade

17   secret.

18           So I do want to note, you know, the rhetoric is -- I'm

19   not going to say heated, but clearly there have been already

20   some disputes between the parties even in the context of the

21   joint Rule 26(f) status report.  Whenever parties are setting

22   forth different schedules and approaches to a case, it feels a

23   little less like a joint report and more of a kind of statement

24   of disagreements.  But I would like to encourage the parties to

25   work collaboratively because obviously these types of cases tend

1  to go on a long time and this could be the type of case that

2  heads down a long, difficult road if parties don't work

3  together.

4         So I'm going to ask counsel to please make best

5  efforts to work collaboratively on the issue of the trade secret

6  identification.

7         I would also like to ask the parties to consider trade

8  secret identification in the form of a numbered list if it is

9  possible in this case, and I don't know enough about it yet to

10 say if it is, but that will allow the parties and the Court to

11 define the boundaries of the trade secret so that we can make

12 sure that each trade secret is litigated separately and there's

13 no conflation of the issues.

14        I also find that the numbering of the trade secrets

15 allows for an easy signifier or shorthand way to refer to the

16 various trade secrets at issue in the case.

17        So what I think is appropriate is I'm going to set a

18 March 3rd, 2025, deadline to file a status report on the trade

19 secret identification.  That will allow me to get caught up on

20 your professional and collaborative work together to see if you

21 can resolve the identification of the trade secret issue in a

22 way that will avoid motion litigation.  If you cannot resolve

23 the trade secret identification amicably upon a good faith

24 conferral, then we will plan to handle this issue in the form of

25 motions.

1        Parties will note, please, that the Court will look

2  unfavorably on motion litigation that appears to, in fact, seek

3  a stay of the discovery longer than appropriate.

4        I think that working together we can resolve these

5  issues, and hopefully Counsel can resolve the issues with that

6  conferral, and I will hope that that status report will allow

7  for parties to do that and report to the Court that that issue

8  is resolved without the addition of motions on this.

9        Regarding other types of discovery issues, the way I

10  like to handle discovery disputes is to have the parties

11  initially submit to the courtroom deputy a single email and

12  attached to that email is a one-page summary for each side

13  describing their side of the discovery dispute.

14        I will review the attachments to the email and we will

15  either set a telephone conference for us to discuss the issue

16  that will be on the record, and that -- at that teleconference,

17  the Court will make exhibits to the conference each side's

18  one-page filing so that your arguments are preserved for

19  purposes of appeal.  But my goal is to allow you to be a little

20  bit more effective and efficient with the use of your time and

21  not require full and formal briefing on issues that are pretty

22  straightforward.

23        If upon receipt of that email from my courtroom deputy

24  and I take a look at those attachments and instead it appears

25  that this is complicated and briefing is going to be necessary,

1  then instead of scheduling a telephone status conference to

2  discuss the dispute, we will issue a briefing schedule and all

3  of that will be done more formally.

4          So -- excuse me -- let me start with Mr. Sullivan.

5          Mr. Sullivan, do you have any questions or comments or

6  concerns about the information I just laid out about both the

7  identification of the trade secrets as well as discovery dispute

8  processes in general?

9          MR. SULLIVAN:  Thank you, Your Honor.

10         No, no questions at this point.  I will say I'm -- I'm

11  a little concerned at the outset that staying all the discovery

12  is going to delay things possibly past the deadlines the parties

13  have agreed to so far, but we'll cross that bridge when we get

14  there.

15         THE COURT:  So -- well, I'm glad to hear you if you've

16  got a further comment on that.

17         So my thought is, though, particularly I think it was

18  your position about the mirroring of the discovery needs beyond

19  the trade secret claims that led me to that conclusion, that it

20  was appropriate to pause all the discovery except identification

21  of the trade secrets.  What am I missing?

22         MR. SULLIVAN:  You're missing nothing, Your Honor.  My

23  concern is simply that by -- by pausing all discovery, you know,

24  pending the trade secret identification, I -- I am hopeful that

25  the parties can reach agreement on that, but I don't know how

1  optimistic I am just given the tenor of the litigation so far,

2  and, you know, I wouldn't be shocked if this necessitated some

3  sort of motion practice after the status report to Your Honor.

4  I just want to put that out there.

5       THE COURT:  Well, we will deal with that as we need to

6  deal with it.  So if motions are necessary, Mr. Sullivan, we'll

7  certainly handle them and we'll handle them in a timely manner.

8  I can promise you that, sir.  Okay?

9       MR. SULLIVAN:  Thank you, Your Honor.  I appreciate

10 it.

11      THE COURT:  And what about from Mr. Aldrich's

12 perspective?  Questions, comments, or concerns?

13      MR. ALDRICH:  I don't have any concerns, Your Honor.

14 And if we get from Mr. Sullivan a list of trade secrets that

15 is -- you know, sufficiently identifies them in a way that we

16 can litigate in advance of March 3rd, we won't have any

17 opposition to commencing discovery earlier and letting the Court

18 know that we've come to an agreement and are in a position to

19 lift the stay of discovery and move forward.

20      We just need clarity and we need the list of trade

21 secrets to be final, if you will, so that it can't be amended

22 later once they look under the hood at what we have, at the

23 information that Cronometer has in its possession.  But we don't

24 need the process to take a month if Mr. Sullivan can get us that

25 information faster.

1          THE COURT:  And so -- and what I'm hoping is that

2    these issues will be resolved through the responses to the

3    interrogatories.  That's what I'm hoping.  And if parties confer

4    and talk about the status of this and you want to file a status

5    report before March the 3rd because you've got it sorted out,

6    feel free to do that too and we can get it moving even more

7    quickly.

8          MR. SULLIVAN:  So Your Honor --

9          MR. ALDRICH:  No questions, Your Honor.

10          THE COURT:  Yes, Mr. Sullivan?

11          MR. SULLIVAN:  I didn't mean to interrupt.

12          THE COURT:  What were you saying?

13          MR. SULLIVAN:  Yeah.  Just to be clear, the

14    interrogatories we view as a very different thing than the trade

15    secret identification.  The interrogatories, without going into

16    argument, are -- are much broader and in some ways

17    inappropriately broad.

18          So what I'm viewing is a simple pleading to be served,

19    not filed, identifying with particularity the trade secrets,

20    period, full stop.  Is that what Your Honor has in mind?

21          THE COURT:  Well, let me hear from Mr. Aldrich

22    because, again, I'm not in the weeds in this to the extent you

23    all are yet.  So let me make sure I have a full understanding of

24    what you just said and any counter view to that.

25          Mr. Aldrich?

1          MR. ALDRICH:  Yes, Your Honor.

2          I'm just pulling up the interrogatories now.  We

3    served a total of four interrogatories, but there's only one

4    that I think is at issue here, and it simply says "Describe with

5    specificity the information that comprises each asserted trade

6    secret that you allege Cronometer misappropriated."

7          And so I think that that's the same as the information

8    Your Honor is ordering and that Mr. Sullivan is offering to

9    provide.  I'm not seeing that as overly broad, but Mr. Sullivan

10   may have some reasons why he believes it's broader than what

11   Your Honor is ordering that I'm just not aware of.

12          THE COURT:  Mr. Sullivan?

13          MR. ALDRICH:  It's interrogatory number 2 is what I

14   just read.

15          MR. SULLIVAN:  Yeah.  And to be clear,

16   we -- interrogatory number 2 is what I was envisioning in terms

17   of a response.

18          THE COURT:  Okay.

19          MR. SULLIVAN:  And that is separate from responding to

20   the interrogatories at large.

21          THE COURT:  Okay.  Yes.  Okay.  Meeting of the minds

22   achieved.

23          All right.  Okay.  That's everything that I have on my

24   list.

25          Let me ask first, Mr. Sullivan, do you have anything

else on your list that we need to address today?

MR. SULLIVAN:  Nothing, Your Honor.  Thank you for your time.

THE COURT:  Yes, sir.

Mr. Aldrich?

MR. ALDRICH:  The only thing I'd like to note is that we did not set a deadline, for example, for summary judgment or other briefing following the close of fact discovery and ADR.  I assume that's by design, but I just wanted to raise that those dates are not set at this point.

THE COURT:  That is correct.  Thank you for bringing that up.

Indeed, while I usually do set case deadlines all the way through trial, in a case like this, I think a baby-step approach makes more sense.  That way I can be on top of what's happening with you all and the case needs and respond accordingly, and that way we can avoid resetting deadlines if necessary.

So we'll just take this case a little bit slower and -- in the sense of scheduling it out, and I will look forward to getting that status report on March the 3rd or sooner if parties figure it out, and then we will enter the next steps of the case as appropriate.

Anything --

MR. ALDRICH:  Thank you.  Then I have no further --

```
1              THE COURT:  Anything further, Mr. Sullivan?

2              MR. SULLIVAN:  Nothing further, Your Honor.  Thank you

3    again.

4              THE COURT:  From Mr. Aldrich?

5              MR. ALDRICH:  And again, sorry for interrupting.  But

6    no further questions, Your Honor.  Thank you for your time.

7              THE COURT:  Okay.  Thank you both for being here.  I

8    will look forward to seeing that status report and hopefully

9    getting a good report that the trade secret identification issue

10   has been put to bed and we can move forward with the case.

11             All right, everyone.  Thank you for your time.

12             We are in recess.

13        (The proceedings concluded at 1:50 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25
```

1                      C E R T I F I C A T E

2

3           I certify, by signing below, that the foregoing is a

4    true and correct transcript, to the best of my ability, of the

5    telephonic oral argument heard via conference call, taken by

6    stenographic means.  Due to the telephonic connection, parties

7    appearing via speakerphone or cell phone, speakers overlapping

8    when speaking, speakers not identifying themselves before they

9    speak, fast speakers, the speaker's failure to enunciate, and/or

10   other technical difficulties that occur during telephonic

11   proceedings, this certification is limited by the

12   above-mentioned reasons and any technological difficulties of

13   such proceedings occurring over the speakerphone at the United

14   States District Court of Oregon in the above-entitled cause.  A

15   transcript without an original signature, conformed signature,

16   or digitally signed signature is not certified.

17

18           DATED this 11th day of February, 2025.

19

20

21                              // Ryan White
                                _____
22                              RYAN WHITE
                                Registered Merit Reporter
                                Certified Realtime Reporter
23                              Expires 9/30/2025

24

25

## 1

**11** [1] - 6:6
**13** [1] - 9:6
**1:50** [1] - 17:13

## 2

**2** [2] - 15:13, 15:16
**20** [1] - 9:6
**2025** [3] - 4:4, 5:11, 10:18
**2026** [5] - 5:12, 5:13, 5:18, 6:15, 6:18
**24th** [4] - 4:10, 4:18, 4:22, 5:1
**26(a)(1** [1] - 4:3
**26(f** [1] - 9:21
**27** [4] - 6:8, 6:15, 6:18
**29th** [1] - 4:4

## 3

**3** [1] - 9:6
**30th** [3] - 5:12, 5:13, 5:18
**31st** [1] - 5:11
**3rd** [4] - 10:18, 13:16, 14:5, 16:21

## 4

**4** [1] - 9:6

## 6

**6** [1] - 6:23

## 8

**8(a** [1] - 9:11

## A

**accordingly** [1] - 16:17
**achieved** [1] - 15:22
**action** [1] - 9:4
**added** [1] - 7:19
**addition** [2] - 5:22, 11:8
**additional** [1] - 6:5
**address** [1] - 16:1
**adopt** [1] - 5:10
**ADR** [3] - 5:18, 5:19, 16:8
**advance** [2] - 7:25, 13:16
**AEO** [1] - 7:18
**agree** [3] - 5:9, 6:13, 7:4
**agreed** [5] - 5:16, 6:17, 6:18, 7:10, 12:13
**agreement** [4] - 6:5, 7:2, 12:25, 13:18
**Aldrich** [11] - 4:14, 4:16, 5:2, 6:2, 7:9, 7:12, 8:22, 14:21, 14:25, 16:5, 17:4
**ALDRICH** [12] - 4:16, 5:3, 6:3, 7:14, 8:23, 13:13, 14:9, 15:1, 15:13, 16:6, 16:25, 17:5
**Aldrich's** [1] - 13:11
**allege** [1] - 15:6
**allow** [4] - 10:10, 10:19, 11:6, 11:19
**allows** [1] - 10:15
**amended** [1] - 13:21
**amicably** [1] - 10:23
**apologize** [1] - 8:18
**appeal** [1] - 11:19

**appreciate** [1] - 13:9
**approach** [1] - 16:15
**approaches** [1] - 9:22
**appropriate** [6] - 7:21, 9:10, 10:17, 11:3, 12:20, 16:23
**April** [1] - 5:13
**argument** [1] - 14:16
**arguments** [1] - 11:18
**aside** [1] - 5:15
**asserted** [1] - 15:5
**assume** [1] - 16:9
**attached** [1] - 11:12
**attachments** [2] - 11:14, 11:24
**avoid** [3] - 8:11, 10:22, 16:17
**aware** [1] - 15:11

## B

**baby** [1] - 16:14
**baby-step** [1] - 16:14
**based** [3] - 5:16, 6:21, 8:12
**bears** [1] - 6:17
**bed** [1] - 17:10
**behalf** [1] - 7:7
**believes** [1] - 15:10
**benefiting** [2] - 8:11, 8:13
**best** [1] - 10:4
**between** [1] - 9:20
**beyond** [1] - 12:18
**big** [1] - 8:1
**bit** [4] - 5:14, 6:21, 11:20, 16:19
**boundaries** [1] - 10:11
**bridge** [1] - 12:13
**briefing** [4] - 11:21, 11:25, 12:2, 16:8
**bringing** [1] - 16:11
**broad** [2] - 14:17, 15:9
**broader** [2] - 14:16, 15:10
**burden** [1] - 6:17

## C

**calendar** [1] - 4:25
**cannot** [1] - 10:22
**carefully** [2] - 7:24, 8:3
**Cary** [2] - 4:24, 7:6
**case** [16] - 5:9, 5:17, 6:20, 6:21, 8:1, 8:13, 9:22, 10:1, 10:9, 10:16, 16:13, 16:14, 16:16, 16:19, 16:23, 17:10
**cases** [2] - 7:17, 9:25
**caught** [1] - 10:19
**causes** [1] - 9:4
**centerpiece** [1] - 9:3
**certain** [1] - 5:9
**certainly** [1] - 13:7
**changed** [1] - 8:7
**changes** [1] - 8:9
**claims** [2] - 9:15, 12:19
**clarify** [1] - 4:25
**clarity** [1] - 13:20
**clear** [2] - 14:13, 15:15
**clearly** [1] - 9:19
**close** [1] - 16:8
**collaborative** [1] - 10:20
**collaboratively** [2] - 9:25, 10:5

**commencing** [1] - 13:17
**comment** [1] - 12:16
**comments** [3] - 8:23, 12:5, 13:12
**commonly** [1] - 7:16
**complaint** [1] - 9:6
**complete** [1] - 5:20
**completed** [4] - 4:4, 5:11, 5:12, 5:13
**complicated** [1] - 11:25
**comprises** [1] - 15:5
**concern** [1] - 12:23
**concerned** [1] - 12:11
**concerning** [2] - 6:16, 9:16
**concerns** [3] - 12:6, 13:12, 13:13
**concluded** [1] - 17:13
**conclusion** [1] - 12:19
**confer** [1] - 14:3
**conference** [3] - 11:15, 11:17, 12:1
**conferral** [2] - 10:24, 11:6
**confidentiality** [2] - 7:2, 7:18
**conflation** [1] - 10:13
**consider** [2] - 8:16, 10:7
**context** [1] - 9:20
**contrary** [1] - 4:14
**correct** [4] - 4:9, 4:11, 4:18, 4:22, 16:11
**counsel** [2] - 6:2, 10:4
**Counsel** [1] - 11:5
**counter** [1] - 14:24
**couple** [1] - 7:15
**course** [2] - 9:2, 9:11
**COURT** [26] - 4:7, 4:14, 4:23, 5:2, 5:6, 6:1, 6:10, 7:12, 7:23, 8:21, 8:25, 12:15, 13:5, 13:11, 14:1, 14:10, 14:12, 14:21, 15:12, 15:18, 15:21, 16:4, 16:11, 17:1, 17:4, 17:7
**Court** [8] - 5:10, 5:17, 7:15, 10:10, 11:1, 11:7, 11:17, 13:17
**Court's** [2] - 5:23, 8:10
**courtroom** [2] - 11:11, 11:23
**cover** [1] - 7:2
**Cronometer** [2] - 13:23, 15:6
**Cronometer's** [2] - 4:19, 4:20
**cross** [1] - 12:13

## D

**date** [6] - 4:12, 4:13, 4:18, 4:21, 5:1, 6:18
**dates** [4] - 5:4, 6:5, 6:8, 16:10
**Davis** [1] - 4:15
**deadline** [4] - 5:18, 5:23, 10:18, 16:7
**deadlines** [5] - 5:9, 5:16, 12:12, 16:13, 16:17
**deal** [2] - 13:5, 13:6
**defendant** [2] - 9:14, 9:15
**defense** [2] - 6:2, 9:13
**define** [1] - 10:11
**delay** [1] - 12:12
**denial** [1] - 8:15
**deny** [1] - 8:6
**depositions** [1] - 5:12
**deputy** [2] - 11:11, 11:23
**Describe** [1] - 15:4
**describing** [1] - 11:13

**design** [1] - 16:9
**determine** [1] - 9:15
**different** [3] - 7:25, 9:22, 14:14
**difficult** [1] - 10:2
**direction** [1] - 8:16
**disagreements** [1] - 9:24
**disclosures** [3] - 4:3, 6:16, 6:19
**discovery** [17] - 5:11, 5:13, 5:20, 9:8,
  9:16, 11:3, 11:9, 11:10, 11:13, 12:7,
  12:11, 12:18, 12:20, 12:23, 13:17,
  13:19, 16:8
**discuss** [2] - 11:15, 12:2
**dispute** [4] - 5:3, 11:13, 12:2, 12:7
**disputes** [2] - 9:20, 11:10
**document** [1] - 5:10
**done** [1] - 12:3
**down** [1] - 10:2
**draft** [1] - 7:8
**drafts** [1] - 7:11
**due** [3] - 4:9, 4:21, 5:1

## E

**easy** [1] - 10:15
**edits** [1] - 8:9
**effect** [1] - 9:12
**effective** [1] - 11:20
**efficient** [1] - 11:20
**efforts** [1] - 10:5
**either** [1] - 11:15
**email** [4] - 11:11, 11:12, 11:14, 11:23
**enable** [1] - 9:15
**encourage** [1] - 9:24
**end** [1] - 8:13
**enter** [1] - 16:22
**entered** [1] - 7:22
**envisioning** [1] - 15:16
**evolves** [1] - 6:21
**exactly** [1] - 4:20
**example** [1] - 16:7
**except** [2] - 9:9, 12:20
**exchanged** [4] - 4:5, 4:8, 4:12, 7:11
**excuse** [2] - 9:14, 12:4
**exhibits** [1] - 11:17
**experiences** [1] - 8:11
**expert** [4] - 5:13, 6:8, 6:16, 6:19
**extent** [1] - 14:22

## F

**fact** [3] - 5:11, 11:2, 16:8
**faith** [1] - 10:23
**far** [2] - 12:13, 13:1
**faster** [1] - 13:25
**February** [4] - 4:10, 4:22, 6:8, 6:15
**few** [1] - 9:1
**figure** [1] - 16:22
**file** [2] - 10:18, 14:4
**filed** [3] - 5:19, 8:4, 14:19
**filing** [3] - 4:3, 5:18, 11:18
**filings** [2] - 5:8, 9:1
**final** [1] - 13:21
**finalized** [1] - 7:1
**fine** [3] - 6:11, 6:14, 7:14

**first** [2] - 4:2, 15:25
**flag** [1] - 8:14
**following** [1] - 16:8
**footnote** [1] - 6:6
**form** [4] - 8:10, 8:15, 10:8, 10:24
**formal** [1] - 11:21
**formally** [1] - 12:3
**forth** [3] - 9:7, 9:13, 9:22
**forward** [5] - 5:9, 13:19, 16:21, 17:8,
  17:10
**four** [1] - 15:3
**free** [1] - 14:6
**full** [3] - 11:21, 14:20, 14:23

## G

**general** [1] - 12:8
**given** [1] - 13:1
**glad** [1] - 12:15
**goal** [1] - 11:19

## H

**handle** [4] - 10:24, 11:10, 13:7
**handled** [1] - 6:13
**heads** [1] - 10:2
**hear** [3] - 4:2, 12:15, 14:21
**heated** [1] - 9:19
**Honor** [24] - 4:5, 4:12, 4:24, 5:25, 6:4,
  7:6, 7:10, 7:11, 8:19, 8:24, 12:9,
  12:22, 13:3, 13:9, 13:13, 14:8, 14:9,
  14:20, 15:1, 15:8, 15:11, 16:2, 17:2,
  17:6
**hood** [1] - 13:22
**hope** [1] - 11:6
**hopeful** [1] - 12:24
**hopefully** [2] - 11:5, 17:8
**hoping** [3] - 14:1, 14:3

## I

**identification** [17] - 5:15, 6:25, 7:3, 9:2,
  9:7, 9:9, 9:12, 10:6, 10:8, 10:19,
  10:21, 10:23, 12:7, 12:20, 12:24,
  14:15, 17:9
**identifies** [1] - 13:15
**identifying** [1] - 14:19
**impact** [1] - 8:1
**implications** [1] - 7:25
**impose** [1] - 5:17
**inappropriately** [1] - 14:17
**includes** [1] - 5:10
**indeed** [1] - 16:13
**information** [6] - 9:10, 12:6, 13:23,
  13:25, 15:5, 15:7
**initial** [3] - 4:3, 4:8, 8:15
**instead** [2] - 11:24, 12:1
**interrogatories** [9] - 4:9, 4:19, 4:21,
  14:3, 14:14, 14:15, 15:2, 15:3, 15:20
**interrogatory** [2] - 15:13, 15:16
**interrupt** [1] - 14:11
**interrupting** [2] - 8:18, 17:5
**involved** [1] - 8:13
**issue** [9] - 10:5, 10:16, 10:21, 10:24,

11:7, 11:15, 12:2, 15:4, 17:9
**issues** [9] - 6:16, 6:25, 8:11, 10:13,
  11:5, 11:9, 11:21, 14:2

## J

**January** [2] - 4:4, 5:12
**joint** [3] - 6:23, 9:21, 9:23
**judgment** [1] - 16:7

## K

**kind** [3] - 6:12, 8:10, 9:23

## L

**laid** [1] - 12:6
**language** [3] - 7:25, 8:5, 8:12
**large** [1] - 15:20
**last** [3] - 4:6, 6:15, 6:19
**least** [1] - 7:1
**led** [1] - 12:19
**less** [1] - 9:23
**letting** [1] - 13:17
**level** [3] - 7:18
**lift** [1] - 13:19
**light** [1] - 6:24
**list** [6] - 6:22, 10:8, 13:14, 13:20, 15:24,
  16:1
**lists** [1] - 8:7
**litigate** [1] - 13:16
**litigated** [2] - 8:2, 10:12
**litigation** [3] - 10:22, 11:2, 13:1
**look** [8] - 7:24, 8:4, 8:8, 11:1, 11:24,
  13:22, 16:20, 17:8
**looked** [1] - 4:2
**looks** [1] - 5:8

## M

**manner** [1] - 13:7
**March** [6] - 6:8, 6:18, 10:18, 13:16, 14:5,
  16:21
**mean** [1] - 14:11
**meeting** [1] - 15:21
**mind** [1] - 14:20
**minds** [1] - 15:21
**minutes** [1] - 9:2
**mirroring** [1] - 12:18
**misappropriated** [1] - 15:6
**missing** [2] - 12:21, 12:22
**modifications** [1] - 6:14
**moment** [2] - 5:15, 5:16
**Monday** [1] - 5:5
**month** [2] - 5:19, 13:24
**most** [1] - 7:21
**motion** [3] - 10:22, 11:2, 13:3
**motions** [3] - 10:25, 11:8, 13:6
**move** [3] - 5:9, 13:19, 17:10
**moving** [1] - 14:6
**MR** [28] - 4:5, 4:11, 4:16, 4:24, 5:3, 5:24,
  6:3, 7:6, 7:14, 8:18, 8:23, 12:9, 12:22,
  13:9, 13:13, 14:8, 14:9, 14:11, 14:13,
  15:1, 15:13, 15:15, 15:19, 16:2, 16:6,
  16:25, 17:2, 17:5

## N

**nature** [1] - 9:14
**necessary** [4] - 4:1, 11:25, 13:6, 16:18
**necessitated** [1] - 13:2
**need** [9] - 6:20, 7:1, 9:1, 9:12, 13:5, 13:20, 13:24, 16:1
**needs** [3] - 8:7, 12:18, 16:16
**next** [2] - 6:22, 16:22
**note** [5] - 6:12, 6:15, 9:18, 11:1, 16:6
**nothing** [3] - 12:22, 16:2, 17:2
**notice** [2] - 9:11, 9:14
**number** [2] - 15:13, 15:16
**numbered** [1] - 10:8
**numbering** [1] - 10:14

## O

**object** [1] - 6:7
**objection** [2] - 5:22, 5:24
**obviously** [1] - 9:25
**October** [1] - 5:11
**offering** [1] - 15:8
**once** [2] - 8:3, 13:22
**one** [8] - 7:11, 7:16, 7:17, 7:22, 8:9, 11:12, 11:18, 15:3
**one-page** [2] - 11:12, 11:18
**opposition** [1] - 13:17
**optimistic** [1] - 13:1
**order** [7] - 5:23, 6:20, 6:23, 7:1, 7:9, 8:1, 8:4
**ordering** [2] - 15:8, 15:11
**orders** [1] - 7:16
**outset** [1] - 12:11
**overly** [1] - 15:9

## P

**p.m** [1] - 17:13
**page** [4] - 6:6, 6:23, 11:12, 11:18
**paragraphs** [1] - 9:6
**particularity** [1] - 14:19
**particularly** [2] - 6:24, 12:17
**parties** [23] - 4:5, 4:8, 5:8, 5:20, 6:18, 6:23, 7:3, 7:10, 8:7, 9:1, 9:20, 9:21, 9:24, 10:2, 10:7, 10:10, 11:1, 11:7, 11:10, 12:12, 12:25, 14:3, 16:22
**parties'** [1] - 4:25
**party** [1] - 6:17
**past** [2] - 8:11, 12:12
**patent** [1] - 7:17
**pause** [1] - 12:20
**pausing** [3] - 9:8, 9:9, 12:23
**pending** [1] - 12:24
**period** [1] - 14:20
**perspective** [1] - 13:12
**plaintiff** [4] - 5:24, 7:7, 8:20, 9:5
**plaintiff's** [1] - 9:15
**plan** [1] - 10:24
**pleading** [2] - 9:11, 14:18
**point** [4] - 6:4, 7:20, 12:10, 16:10
**position** [3] - 9:5, 12:18, 13:18
**possession** [1] - 13:23
**possible** [3] - 5:21, 7:22, 10:9

**possibly** [2] - 5:4, 12:12
**practice** [2] - 8:3, 13:3
**preserved** [1] - 11:18
**pretty** [1] - 11:21
**principle** [1] - 7:10
**procedural** [1] - 9:3
**proceed** [1] - 4:1
**proceedings** [1] - 17:13
**process** [1] - 13:24
**processes** [1] - 12:8
**professional** [1] - 10:20
**promise** [1] - 13:8
**proof** [1] - 6:17
**proposed** [2] - 6:6, 7:8
**protective** [6] - 6:22, 7:1, 7:9, 7:16, 8:1, 8:4
**provide** [1] - 15:9
**provided** [1] - 4:4
**pulling** [1] - 15:2
**purposes** [1] - 11:19
**pursuant** [1] - 6:6
**put** [3] - 9:13, 13:4, 17:10

## Q

**questions** [9] - 4:1, 8:17, 8:20, 8:23, 12:5, 12:10, 13:12, 14:9, 17:6
**quickly** [2] - 7:22, 14:7

## R

**raise** [1] - 16:9
**reach** [1] - 12:25
**read** [1] - 15:14
**real** [2] - 8:6, 8:15
**really** [2] - 7:24, 8:2
**reasons** [1] - 15:10
**rebuttal** [1] - 6:19
**receipt** [1] - 11:23
**recently** [1] - 4:8
**recess** [1] - 17:12
**record** [2] - 6:12, 11:16
**refer** [1] - 10:15
**regarding** [1] - 11:9
**related** [1] - 6:25
**relevancy** [1] - 9:16
**remain** [1] - 4:9
**remember** [1] - 4:20
**report** [12] - 5:19, 6:23, 9:21, 9:23, 10:18, 11:6, 11:7, 13:3, 14:5, 16:21, 17:8, 17:9
**reports** [1] - 6:9
**requested** [1] - 9:16
**require** [1] - 11:21
**requiring** [1] - 5:19
**resetting** [1] - 16:17
**resolve** [4] - 10:21, 10:22, 11:4, 11:5
**resolved** [2] - 11:8, 14:2
**respond** [1] - 16:16
**responding** [1] - 15:19
**response** [4] - 4:13, 4:18, 4:19, 15:17
**responses** [5] - 4:9, 4:20, 4:22, 5:1, 14:2
**resubmit** [1] - 8:8

**resubmitting** [1] - 8:16
**review** [1] - 11:14
**rhetoric** [1] - 9:18
**road** [1] - 10:2
**routinely** [1] - 8:9
**Rule** [3] - 4:3, 9:11, 9:21

## S

**sample** [1] - 7:15
**schedule** [2] - 6:6, 12:2
**schedules** [1] - 9:22
**scheduling** [2] - 12:1, 16:20
**second** [1] - 7:18
**secret** [19] - 5:15, 6:25, 9:2, 9:7, 9:10, 9:12, 9:17, 10:5, 10:8, 10:11, 10:12, 10:19, 10:21, 10:23, 12:19, 12:24, 14:15, 15:6, 17:9
**secrets** [8] - 7:3, 10:14, 10:16, 12:7, 12:21, 13:14, 13:21, 14:19
**section** [1] - 6:7
**see** [3] - 6:10, 6:12, 10:20
**seeing** [2] - 15:9, 17:8
**seek** [1] - 11:2
**sense** [3] - 5:17, 16:15, 16:20
**separate** [2] - 7:17, 15:19
**separately** [1] - 10:12
**serve** [2] - 6:16, 6:19
**served** [2] - 14:18, 15:3
**service** [1] - 6:8
**set** [7] - 9:7, 9:12, 10:17, 11:15, 16:7, 16:10, 16:13
**setting** [2] - 5:15, 9:21
**settlement** [1] - 5:21
**shocked** [1] - 13:2
**shorthand** [1] - 10:15
**shows** [1] - 4:25
**side** [3] - 6:13, 11:12, 11:13
**side's** [1] - 11:17
**signifier** [1] - 10:15
**simple** [1] - 14:18
**simply** [2] - 12:23, 15:4
**single** [1] - 11:11
**slight** [1] - 6:14
**slower** [1] - 16:19
**sometimes** [1] - 8:6
**sooner** [1] - 16:21
**sorry** [1] - 17:5
**sort** [1] - 13:3
**sorted** [1] - 14:5
**speaking** [1] - 4:17
**specific** [2] - 8:7, 8:15
**specificity** [1] - 15:5
**start** [1] - 12:4
**statement** [1] - 9:23
**status** [7] - 6:22, 6:23, 9:21, 10:18, 11:6, 12:1, 13:3, 14:4, 16:21, 17:8
**stay** [2] - 11:3, 13:19
**staying** [1] - 12:11
**step** [1] - 16:14
**steps** [1] - 16:22
**stipulated** [1] - 8:4
**stop** [1] - 14:20

**straightforward** [1] - 11:22
**submit** [2] - 7:10, 11:11
**sufficient** [1] - 7:2
**sufficiently** [2] - 9:6, 13:15
**suggesting** [1] - 8:8
**SULLIVAN** [16] - 4:5, 4:11, 4:24, 5:24, 7:6, 8:18, 12:9, 12:22, 13:9, 14:8, 14:11, 14:13, 15:15, 15:19, 16:2, 17:2
**Sullivan** [17] - 4:10, 4:24, 5:23, 7:6, 7:21, 8:17, 12:4, 12:5, 13:6, 13:14, 13:24, 14:10, 15:8, 15:9, 15:12, 15:25, 17:1
**summary** [2] - 11:12, 16:7

## T

**teleconference** [1] - 11:16
**telephone** [2] - 11:15, 12:1
**tend** [1] - 9:25
**tenor** [1] - 13:1
**terms** [1] - 15:16
**THE** [26] - 4:7, 4:14, 4:23, 5:2, 5:6, 6:1, 6:10, 7:12, 7:23, 8:21, 8:25, 12:15, 13:5, 13:11, 14:1, 14:10, 14:12, 14:21, 15:12, 15:18, 15:21, 16:4, 16:11, 17:1, 17:4, 17:7
**thinking** [3] - 5:16, 7:25, 9:8
**timely** [1] - 13:7
**tinker** [1] - 6:20
**today** [2] - 5:23, 16:1
**together** [3] - 10:3, 10:20, 11:4
**tool** [1] - 9:3
**top** [1] - 16:15
**total** [2] - 5:19, 15:3
**trade** [27] - 5:14, 6:25, 7:3, 9:2, 9:7, 9:9, 9:12, 9:16, 10:5, 10:7, 10:11, 10:12, 10:14, 10:16, 10:18, 10:21, 10:23, 12:7, 12:19, 12:21, 12:24, 13:14, 13:20, 14:14, 14:19, 15:5, 17:9
**trial** [1] - 16:14
**Trustwell** [1] - 6:7
**Trustwell's** [3] - 4:19, 4:21, 4:22
**try** [2] - 7:22, 8:11
**two** [1] - 6:5
**type** [1] - 10:1
**types** [2] - 9:25, 11:9

## U

**under** [1] - 13:22
**unfavorably** [1] - 11:2
**up** [5] - 8:12, 8:13, 10:19, 15:2, 16:12

## V

**vagueness** [1] - 8:12
**various** [1] - 10:16
**versions** [1] - 7:15
**view** [2] - 14:14, 14:24
**viewing** [1] - 14:18

## W

**ways** [1] - 14:16
**website** [1] - 7:16

**weeds** [1] - 14:22
**week** [3] - 4:6, 7:9, 7:12
**weekend** [1] - 5:4
**whichever** [1] - 7:21
**works** [2] - 7:9, 7:13
**written** [2] - 5:10, 7:2