Brian R. Talcott, OSB No. 965371
DUNN CARNEY LLP
851 SW Sixth Avenue, Suite 1500
Portland, OR 97204
Telephone: (503) 224-6440
Facsimile: (503) 224-7324
E-mail: btalcott@dunncarney.com

Cary D. Sullivan (*admitted Pro Hac Vice*)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone: (949) 851-3939
Facsimile: (949) 553-7539
E-mail: carysullivan@jonesday.com

*Attorneys for Plaintiff*

**Nika Aldrich**, OSB #160306
Email: naldrich@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Facsimile: 206-292-0460

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON – PORTLAND DIVISION

| | |
|---|---|
| ESHA RESEARCH, INC., now known as TRUSTWELL,<br><br>Plaintiff,<br><br>v.<br><br>CRONOMETER SOFTWARE, INC., formerly known as BIGCRUNCH CONSULTING, LTD., and DOES 1-20.<br><br>Defendants. | Civil No. 3:24-cv-01586-AB<br><br>**JOINT STATUS REPORT** |

JOINT STATUS REPORT

## I. INTRODUCTION

The parties provide this Joint Status Report in response to the Court's Order at the February 3, 2025 Scheduling Conference that the parties "file a status report on the trade secret identification."

On February 24, 2025, Trustwell answered Cronometer's Interrogatory No. 2, which asked Trustwell to "Describe with specificity the information that comprises each asserted trade secret that You allege Cronometer misappropriated." Trustwell's objections and response are attached as Exhibit 1. Cronometer objects that Trustwell has sufficiently answered the Interrogatory pursuant to the Court's Order. The parties have been unable to resolve the dispute. The parties' positions are provided below.

## II. CRONOMETER'S POSITION

This case involves food and nutrition databases that Trustwell provided to Cronometer starting in 2015 to support its food tracking app. For each food item in the database, there is corresponding nutrition content, much of which is found on the federally-required labels for those products: calories, carbohydrates, fat, sodium, protein, etc. Some foods are restaurant items, and the nutritional content is included on federally-mandated menu labels.[1] As Trustwell admits, its data comes "from multiple sources," including the food and menu labels themselves. (Ex. 1, p. 4.) Cronometer understands that much of Trustwell's data comes from the U.S. Food and Drug Administration, which itself has a widely-used food and nutrition database, and other publicly-available sources.

Trustwell alleges that *some* of the data in its databases was "data that Trustwell itself

---

[1] *See generally* https://www.fda.gov/food/nutrition-food-labeling-and-critical-foods/menu-labeling-requirements

created, supplemented, and/or augmented" from the otherwise-publicly-available food and menu labels. Cronometer does not know which fields Trustwell claims to have "created, supplemented, and/or augmented," but believes Trustwell may have performed certain unit conversions, and that it may claim propriety over the results.[2]

Trustwell now alleges that Cronometer committed trade secret misappropriation when it used the food/nutrition data in Cronometer's publicly-available app, as intended when the parties first collaborated ten years ago. But Trustwell's Complaint is vague as to which information, exactly, it claims constitutes its trade secrets. Trustwell's databases are borne from publicly available sources (ketchup bottles, McDonalds' menus, FDA databases, and the like). Additionally, there is a dispute about which information Trustwell alleges it supplied to Cronometer. In its Complaint, Trustwell alleged that it supplied Cronometer with a database that included "comprehensive nutritional breakdowns for up to 172 separate data fields . . . for more than 90,000 brand name and generic foods and ingredients." (ECF 1 ¶ 4.) Cronometer disputes that and alleges instead that the information it received from Trustwell was two much smaller databases, limited to branded foods and restaurant items. (*Id.* ¶¶ 102-104.) Trustwell has since admitted that it provided only "portions of" its database to Cronometer (ECF 9 ¶ 33), but has failed to correct the false allegations in its Complaint that overstate by nearly an order of magnitude how much information it actually provided. (*Compare* ECF 6 ¶ 104 *with* ECF 9 ¶

---

[2] For example, in Canada, some foods are required to include Vitamin D content in micrograms (µg) on their nutrition labels. Elsewhere, Vitamin D is often displayed in International Units (IU). 1 microgram of vitamin D is equal to 40 IU. Trustwell may be claiming that it "created, supplemented, and/or augmented" the Vitamin D data for some foods in its databases by converting publicly-available quantities measured in µg into IU or vice versa. However, Cronometer does not actually know—nor has Trustwell ever disclosed—which data in the databases was allegedly "created, supplemented, and/or augmented" by Trustwell.

Page 2 -    JOINT STATUS REPORT

104[3].)

In the Rule 26(f) Report, Cronometer asked the Court to order Trustwell to identify its trade secrets with "reasonable particularity," as required by well-established case law. (ECF 12, pp. 6-10.) Trustwell responded that the alleged trade secrets were sufficiently defined in paragraphs 3, 4, 13, and 20 of its Complaint. (*Id.*, p. 5.) But those are the paragraphs from which Trustwell has since been backpedaling. (*See* ECF 9 ¶ 33 (only "portions of that database," not the fully panoply of data in "the Database").) And the Court expressed doubts that those paragraphs sufficiently identified any trade secrets. The Court Ordered Trustwell to answer Cronometer's Interrogatory No. 2 and identify its alleged trade secrets "with particularity," preferably "in the form of a numbered list." (Feb. 3, 2025 Hrg. Tr. pp. 10, 14.)

On February 24, Trustwell provided its respond to Interrogatory No. 2. Unfortunately, there is no numbered list. Instead, the Interrogatory response states:

> The trade secret information that Trustwell alleges Cronometer misappropriated in this action is the data contained in Trustwell's master food and nutrition database that Cronometer licensed from Trustwell . . . and that Trustwell . . . provided to Cronometer [on a list of dates].

There are two significant problems with this answer. First, this answer states in essence that the trade secret is, vaguely, "the data" in the supplied databases. That is insufficient and provides no meaningful information beyond what was already stated in Trustwell's Complaint. (*See* ECF 1 ¶ 20.) Trustwell must identify *which* data. "The data" could mean any or all of "each and every individual piece of data in the database," "some of the data in the database," or rather only "the compilation of all of the data."

---

[3] For reference, a 2022 copy of the Data file sent from Trustwell contains only 43 nutritional fields for approximately 51,000 food items. More than half of the fields are blank.

Clearly Trustwell cannot in good faith contend that each and every piece of data in the database is a trade secret, given that it readily admits it obtained at least some of that information from "multiple sources." For example, Trustwell's database includes the following nutritional content for a pack of two Nature Valley Crunchy Maple Brown Sugar granola bars, shown on the left.[4] On the right is the exact same information found on Nature Valley's website[5]:

| "GramWgt" | 42.00000 |
|---|---|
| "Cals" | 190.0000 |
| "Fat" | 7.00000 |
| "SatFat" | 0.50000 |
| "Transfa" | 0.00000 |
| "Carb" | 29.0000 |
| "Fib" | 2.00000 |
| "TotSug" | 12.0000 |
| "AddSug" | 12.0000 |
| "Prot" | 3.00000 |
| "Iron" | 1.00000 |

**NUTRITION FACTS**

Serving size: 2 bars (42g)

Amount per serving
**Calories** 190
As Packaged

| Food component / Nutrient | Amount As Packaged |
|---|---|
| **Total Fat** | 7g |
| Saturated Fat | 0.5g |
| Trans Fat | 0g |
| **Cholesterol** | 0mg |
| **Sodium** | 150mg |
| **Total Carbohydrate** | 29g |
| Dietary Fiber | 2g |
| Total Sugars | 12g |
| Incl. Added Sugars | 12g |
| **Protein** | 3g |
| **Iron** | 1mg |

---

[4] "RefNum" 90780 in the file "Data" dated March 7, 2022.

[5] *See* Maple Brown Sugar Crunchy Granola Bars, available at https://www.naturevalley.com/products/maple-brown-sugar-crunchy-granola-bars (last accessed Feb. 26, 2025).

The fact that a pack of Nature Valley granola bars has 190 Calories or 2g of Dietary Fiber cannot in any universe constitute a trade secret.

To the extent Trustwell instead contends that only *some* of the data in the database is a trade secret—*e.g.*, perhaps the "data that Trustwell itself created, supplemented, and/or augmented"—it must identify *which specific data* in the database it so created, supplemented, and/or augmented.

To the extent Trustwell asserts only that *the complete compilation* of data is a trade secret, it must so state, and disclaim that any individual piece of data within that database constitutes a trade secret.

Either way, simply claiming "the data" does nothing to provide the requisite level of particularity or to put Cronometer on notice of what Trustwell claims in this case.

Moreover, the possibility that Trustwell may claim that the trade secret is only a *compilation* of the complete data it produced raises a second significant problem. Cronometer does not know what the complete compilation of data is, because Trustwell alleges it sent significantly more data than Cronometer asserts it ever received, and Cronometer does not have the original transmission of data it received from Trustwell's predecessor more than ten years ago. For this reason, Cronometer invited Trustwell to produce the complete compilation(s) of data that it alleges it sent to Cronometer, along with the transmission correspondence, and identify those productions in its response to Interrogatory No. 2 pursuant to Rule 34(d). Trustwell declined.[6]

---

[6] In its response below, Trustwell notes that Cronometer was able to sequester the Trustwell data *that remained in its system* as of 2024. That does not change the fact that Cronometer no longer has the original data files sent in, e.g., 2015. This is critical, given Trustwell's sworn representation to the Court that it sent Cronometer nearly ten times as much data as Cronometer

In providing its response below, Trustwell misstates the law and further compounds the concerns. First, it cites *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 659 (9th Cir. 2020) for the proposition that "[a]t this stage, particularly where no discovery whatsoever had occurred … [the plaintiff's] burden is only to identify at least one trade secret with sufficient particularity to create a triable issue." But that is the standard to survive a motion for summary judgment, not the standard this Court invoked when ordering Trustwell to identify its trade secrets with particularity before it could obtain discovery in this case. *That* standard derives from judicial concerns about discovery, prejudice, and the particularities of trade secret cases, as articulated in the Parties' Rule 26(f) report.

Second, Trustwell states that "the entirety of the dataset" is the "trade secrets" (plural) at issue. That is unfortunately as vague as "the data." To the extent Trustwell will limit its trade secrets claim to only *the compilation of data* it provided, and does not and will not assert that any individual piece of data—or even any subset of data—within the compilation is a trade secret, it should so state and produce that data. Such clarity will dramatically affect the discovery that will be needed in this case.

Moreover, through multiple rounds of editing on this document over the past week, Trustwell still refuses to identify its alleged trade secret(s) with any greater specificity than just "the entirety of the dataset." It defends that it should not need to identify any information within the dataset that constitutes a trade secret, arguing that it would be too burdensome to do so,[7]

---

says it ever received. Given the significant disconnect, Trustwell should clearly identify the datasets on which its claims are premised pursuant to Rule 34(d).

[7] Contrary to Trustwell's representations, it would not be unduly burdensome for it to identify, for example, that all nutrition values for particular food items, or that all values under the column for a particular nutrient are trade secrets—to the extent such is true. Trustwell refuses to do so.

while at the same time refusing to represent that only the complete compilation of the data is its alleged trade secret.

At the end, Cronometer still does not know what alleged trade secret(s) it is accused of misappropriating. Cronometer has a right to have clarity on exactly what Trustwell claims is a trade secret so it can (i) engage in discovery concerning whether such information meets the statutory definition of a trade secret and/or (ii) demonstrate that it did not misappropriate the information.

Finally, contrary to Trustwell's representations below, Cronometer has no interest in obstruction or delay. It responded immediately to Trustwell upon receiving the deficient interrogatory responses, and offered to get this joint status report on file days early to avoid any undue delay.

### III. TRUSTWELL'S POSITION

Cronometer's position above misrepresents both the facts and the law. As Trustwell noted during the recent Rule 16 Conference, Cronometer seems intent on creating only obstruction and delay here. This latest dispute unfortunately supports that.[8]

To begin, as the Ninth Circuit observed, "[a]t this stage, particularly where no discovery whatsoever had occurred … [the plaintiff's] burden is only to identify at least one trade secret with sufficient particularity to create a triable issue." *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 659 (9th Cir. 2020).[9] The District of Oregon has made clear that this requires

---

[8] Each time Trustwell provided its portion of the Joint Status Report to Cronometer, to file, Cronometer revised its own portion in response—three separate times—even going so far as to delete certain language in its first revision, and then adding that same language back in its second and third revisions, after Trustwell pointed out the deletion, as discussed below. (Trustwell's Exhibits C-E). The Court should not countenance such gamesmanship.

[9] Cronometer takes issue above with Trustwell's citation to *InteliClear*. Notably, Cronometer

Page 7 -    JOINT STATUS REPORT

merely that the description is "sufficient to put defendant on notice of the nature of plaintiff's claim and enable defendant to determine the relevancy of any requested discovery, at least to allow this case to proceed past the pleadings stage." *Sennco Solutions, Inc. v. Mobile Techs., Inc.*, 2020 WL 8836070, at *3 (D. Or. Dec. 21, 2020) (citing *Redfin Corp. v. iPayOne.com, Inc.*, 2018 WL 1397482, *2 (W.D. Wash. Mar. 20, 2018) (denying motion for protective order "where the plaintiff's trade secret allegations provided enough information 'to give Redfin notice of what issues may arise later in this litigation as well as the scope of appropriate discovery'"); and *InteliClear*, 978 F.3d at 662 ("Federal cases analyzing whether a plaintiff's trade secrets are described with 'sufficient particularity' typically arise in the battleground of discovery.  In such cases, discovery provides an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification…. Refining trade secret identifications through discovery makes good sense."));[10] *see also Opal Labs, Inc. v. Sprinklr, Inc.*, 2019 WL 6528589, at *1 (D. Or. Dec. 4, 2019) ("Reasonable particularity is 'a description of the trade secrets at issue that is sufficient to (a) put a defendant on notice of the nature of the plaintiff's

---

fails to address all of the other cases cited in Trustwell's position.  Regardless, *InteliClear* presents a similar procedural posture.  In *InteliClear*, as here, no discovery had been conducted and the defendant was challenging the sufficiency of the trade secret identification.  *Id*. at 655.  The Ninth Circuit made clear that trade secret identification at the outset of a case is a low bar to clear, and that "[r]efining trade secret identifications through discovery makes good sense."  *Id*. at 662.

[10] Cronometer should have ready access to the datasets provided by Trustwell over the years, particularly given that Trustwell has identified the sixteen dates on which the datasets were provided.  In fact, Cronometer specifically references above one of the datasets provided in 2022.  In other words, Cronometer *can* identify the datasets.  Moreover, once the temporary stay is lifted, and once the parties proceed with discovery, Trustwell will re-produce the datasets that it previously provided to Cronometer, and it will update its interrogatory response to include the Bates numbers of those productions, thereby further refining its trade secret identification, as contemplated by the Ninth Circuit.

claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets.'") (*citing Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1155 (D. Or. 2015)).

Trustwell identified the trade secrets at issue here, in response to Cronometer's Interrogatory No. 2, in relevant part as follows:

> [T]he data contained in Trustwell's master food and nutrition database that Cronometer licensed from Trustwell . . . and that Trustwell originally provided to Cronometer … on approximately February 13, 2015, with subsequent, periodic updates provided to Cronometer on the [*fifteen*] dates below.

In subsequent correspondence between counsel, Trustwell confirmed that "the entirety of the dataset that Trustwell provided to Cronometer on the identified dates constitutes the trade secrets at issue." (Trustwell's Exhibit A.) As Trustwell's counsel explained:

> That provides more than sufficient specificity for Cronometer to understand precisely what data is at issue, and to pull those precise files from its records (the only files that were transmitted from Trustwell to Cronometer on the identified dates). We are unable to further define in writing a dataset that contains tens of thousands of entries with countless data fields for each entry and that changes over time.[11]

(*Id.*)

Although Cronometer now professes confusion about the dataset, they had no trouble identifying that dataset several months ago. In July 2024, just three days after receiving Trustwell's initial cease-and-desist letter, Cronometer's counsel represented as follows: "In response to your demands, Cronometer reports that it has segregated and isolated Trustwell's

---

[11] For example, Cronometer describes above a dataset from 2022 as containing "43 nutritional fields for approximately 51,000 food items." That means approximately 2.2 million individual data fields. And that is just one dataset. There is simply no way to define in writing such a voluminous dataset, particularly one that changes over time, other than by date of transmission.

Page 9 -   JOINT STATUS REPORT

dataset from its system." (Trustwell's Exhibit B.)  That representation certainly calls into question the veracity of Cronometer's current position above that it "does not know what the complete compilation of data is."[12]

Ultimately, Trustwell's trade secret identification plainly puts Cronometer on notice of the nature of Trustwell's claims and enables Cronometer to determine the relevance of any requested discovery.  That is all that is required at this stage.  *Sennco Solutions, Inc.*, 2020 WL 8836070, at *3; *Opal Labs, Inc.*, 2019 WL 6528589, at *1.  The inquiry should end there.

In its position statement, however, Cronometer goes on to take issue with *whether* the identified dataset constitutes a trade secret.  That obviously misses the point of the inquiry at this stage.  Nevertheless, Trustwell feels compelled to point out the law as it relates to compilation trade secrets: "Unlike a patent, novelty is not required for information to be protected as a trade secret, and independent discovery by another does not preclude protection."  *Amvac Chem. Corp. v. Termilind, Ltd.*, 1999 WL 1279664, at *4 (D. Or. Aug. 3, 1999) (citing *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974); and *Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972)).  "It does not matter if a portion of the trade secret is generally known, or even that every individual portion of the trade secret is generally known, so long as the combination of all such information is not generally known."  *O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1089-90 (N.D. Cal. 2006); *see also Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 962-63 (C.D. Cal. 2011) (same).

Given that Cronometer purports to challenge the protectability of Trustwell's trade

---

[12] Cronometer claims above that it "no longer has the original data files sent in, e.g., 2015." Yet, in its answer in this case, Cronometer was somehow able to cite and quote many of its own emails from February 2015.  (ECF No. 6, ¶¶ 36-37, 42-44, 48.)

secrets, which it was able to "segregate[] and isolate[]" more than seven months ago, its current position that it somehow does not understand what those trade secrets are rings hollow. And the fact that Cronometer paid Trustwell licensing fees every year for a decade, for access to Trustwell's trade secrets—albeit while representing that it would use the trade secrets solely for its "own internal nutritional analyses"—demonstrates that even Cronometer recognizes the significant value of those trade secrets.

    In revising its position above—the first time—in response to Trustwell's position, Cronometer deleted the following statement: "Cronometer still does not know what alleged trade secret(s) it is accused of misappropriating." (Trustwell's Exhibit C, at 6.) That deletion alone demonstrates the sufficiency of Trustwell's trade secret identification. Although Cronometer added that language back, in revising its position for the second time, in response to Trustwell's position in which it pointed out that deletion (Trustwell's Exhibit D, at 6, and Exhibit E, at 7.), there can be no legitimate question that Cronometer understands the trade secrets at issue. Cronometer now requests "clarity on exactly what Trustwell claims is a trade secret." Apparently, Cronometer wants Trustwell to designate each piece of data—individual data field by individual data field, over millions of data fields. There is simply no authority, anywhere, that supports such an extreme result. Trustwell has identified the trade secrets at issue with sufficient particularity. Nothing more is required. The Court should lift the temporary stay and allow discovery to proceed.

Respectfully submitted,

Dated: March 3, 2025                SCHWABE, WILLIAMSON & WYATT, P.C.

*s/ Nika Aldrich*
Nika Aldrich, OSB #160306
Email: naldrich@schwabe.com

*Attorney for Defendant Cronometer Software, Inc.*

Dated: March 3, 2025                DUNN CARNEY LLP

*s/ Cary D. Sullivan* (by permission)
Brian R. Talcott, OSB 965371
Email: btalcott@dunncarney.com

**JONES DAY**
Cary D. Sullivan (*admitted Pro Hac Vice*)
Email: carysullivan@jonesday.com

*Attorneys for Plaintiff Trustwell*