# Trustwell's Exhibit A

| | |
|---|---|
| **From:** | Sullivan, Cary D. |
| **Sent:** | Tuesday, February 25, 2025 5:51 PM |
| **To:** | Aldrich, Nika F. |
| **Cc:** | Brian R. Talcott (btalcott@dunncarney.com); _Cronometer Counsel |
| **Subject:** | RE: Trustwell v Cronometer – response to rog 2 [IMAN-PDX.FID4648279] |

Nika,

Thanks for your email.

We disagree that Trustwell's identification of the trade secrets at issue, in response to Cronometer's Interrogatory No. 2, is not sufficient, and we decline to provide a supplemental response.

We specifically defined and identified the data that we contend constitutes the trade secrets that were misappropriated here, including by the specific dates of transmission from Trustwell to Cronometer. That provides more than sufficient specificity for Cronometer to understand precisely what data is at issue, and to pull those precise files from its records (the only files that were transmitted from Trustwell to Cronometer on the identified dates). We are unable to further define in writing a dataset that contains tens of thousands of entries with countless data fields for each entry and that changes over time. As stated in our interrogatory response, the entirety of the dataset that Trustwell provided to Cronometer on the identified dates constitutes the trade secrets at issue.

That Cronometer apparently disagrees about whether the identified trade secrets are, in fact, trade secrets is simply not relevant here, and constitutes a factual dispute in any event. Interrogatory No. 2 asked us to identify in writing the trade secrets at issue. We have done that.

Cronometer obviously will follow up with document requests seeking production of the data files themselves. Indeed, Cronometer has already propounded such requests. Trustwell will respond to those requests in due course, when Cronometer likewise responds to Trustwell's discovery requests, after the temporary stay is lifted.

The issue before us now is whether Cronometer will dispute the trade secret identification before the court. I believe that would be a waste of time, but obstruction and delay seems to be Cronometer's sole intent so far.

Please let us know how you wish to proceed.

Thanks,
Cary

Cary D. Sullivan
Partner
**JONES DAY® - One Firm Worldwide℠**
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Office +1.949.553.7513

**From:** Aldrich, Nika F. <NAldrich@SCHWABE.com>
**Sent:** Tuesday, February 25, 2025 2:51 PM

1

**To:** Sullivan, Cary D. <carysullivan@jonesday.com>
**Cc:** Brian R. Talcott (btalcott@dunncarney.com) <btalcott@dunncarney.com>; _Cronometer Counsel <CronometerCounsel@SCHWABE.com>
**Subject:** RE: Trustwell v Cronometer - response to rog 2 [IMAN-PDX.FID4648279]

**This Message Is From an External Sender**

If you are concerned about the message's content, highlight the email in your inbox and click "Report Suspicious" in the Outlook ribbon -or- contact 6Help.

Report Suspicious

Cary,

We received Plaintiffs' answer to Interrogatory No. 2. Unfortunately, it is insufficient in that it fails to identify the alleged trade secrets with the requisite level of specificity. In summary, the response states, "The trade secret information that Trustwell alleges Cronometer misappropriated in this action is the data contained in Trustwell's master food and nutrition database that Cronometer licensed from Trustwell . . . and Trustwell originally provided to Cronometer."

There are two problems with Truswell's answer. First, there is a disagreement about which information from the "master food and nutrition database," specifically, was "licensed from Trustwell" and "provided to Cronometer." For example, Trustwell has pleaded pursuant to Rule 11 that it licensed and provided a database of "up to 172 separate data fields . . . for more than 90,000 . . . foods and ingredients." (ECF 1, ¶ 4.) Cronometer does not have that data and denies that it ever received such information. (ECF 6, ¶¶ 102-104.) Accordingly, given the disagreement, Trustwell's broad statement of undefined "data" that it "licensed" and "provided" is insufficient. We will need greater specificity for this reason.

Second, Trustwell implicitly recognizes that *not all* of the data that it provided is trade secret, because some of it came from other "sources." And while some of that data was "created, supplemented, and/or augmented" by Trustwell, apparently not all of it was. Judge Baggio required Trustwell to identify its trade secrets "with particularity." A vague reference to "data" is insufficient.

Please confirm you will provide a supplemental response to Interrogatory No. 2 that addresses these two issues. With respect to the first issue, we would be amenable to having you identify the "licensed" and "provided" data pursuant to Rule 34(d) by producing the databases that were sent and their transmittal emails.

Thanks,

**Nika Aldrich**

Shareholder
D: (503) 796-2494
C: (206) 778-9678
naldrich@schwabe.com



---

**From:** Sullivan, Cary D. <carysullivan@jonesday.com>
**Sent:** Monday, February 24, 2025 3:15 PM
**To:** Aldrich, Nika F. <NAldrich@SCHWABE.com>
**Cc:** Brian R. Talcott (btalcott@dunncarney.com) <btalcott@dunncarney.com>
**Subject:** RE: Trustwell v Cronometer - response to rog 2 [IMAN-PDX.FID4648279]

Thanks.  Response is attached.  Pursuant to the court's order, I believe the ball is now in your court as to whether Cronometer intends to raise any dispute with the identification.

Cary D. Sullivan
Partner
**JONES DAY® - One Firm Worldwide℠**
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Office +1.949.553.7513

---

**From:** Aldrich, Nika F. <NAldrich@SCHWABE.com>
**Sent:** Monday, February 24, 2025 2:42 PM
**To:** Sullivan, Cary D. <carysullivan@jonesday.com>
**Cc:** Brian R. Talcott (btalcott@dunncarney.com) <btalcott@dunncarney.com>
**Subject:** RE: Trustwell v Cronometer - response to rog 2 [IMAN-PDX.FID4648279]

Cary,

Confirmed.

Thanks,

**Nika Aldrich**

Shareholder
D: (503) 796-2494
C: (206) 778-9678
naldrich@schwabe.com

# Schwabe

**From:** Sullivan, Cary D. <carysullivan@jonesday.com>
**Sent:** Monday, February 24, 2025 2:40 PM
**To:** Aldrich, Nika F. <NAldrich@SCHWABE.com>
**Cc:** Brian R. Talcott (btalcott@dunncarney.com) <btalcott@dunncarney.com>
**Subject:** Trustwell v Cronometer - response to rog 2

Nika,

We have Trustwell's response to Cronometer's rog no. 2. We've marked it 'confidential' under the stipulated protective order. Please confirm that Cronometer will treat it as such even though the court has not yet entered the protective order.

Thanks,
Cary

Cary D. Sullivan
Partner
**JONES DAY® - One Firm Worldwide℠**
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Office +1.949.553.7513

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

---

NOTICE: This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.
***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

---

NOTICE: This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

**Trustwell's Exhibit B**



Suite 1800
1631 Dickson Avenue
Kelowna, BC
Canada V1Y 0B5
T: 250.861.5332

July 12, 2024

DELIVERED VIA EMAIL
carysullivan@jonesday.com

Paul Matthews, P.Eng. (AB)
D:  250.300.8574 | 403.218.7550 | 604.631.9159
F:  250.861.8772
pmatthews@lawsonlundell.com

Jones Day
3161 Michelson Drive
Suite 80
Irvine, California
USA 92612.4408

<u>Attention</u>:  Cary D. Sullivan

Dear Mr. Sullivan:

**Response to Demand to Cease and Desist dated July 9, 2024**

We are legal counsel for Cronometer Software Inc. (formerly Bigcrunch Consulting Ltd.) ("**Cronometer**") and are in receipt of your correspondence with the subject line "Demand to Cease and Desist" dated July 9, 2024.

We have reviewed the allegations set out in your correspondence with Cronometer, who maintain that the allegations are not supported by fact and denies them outright.

As you are aware, Cronometer is a corporation with its sole office in Canada. Accordingly, it has taken steps to select and retain local counsel. Once retained, we will promptly report back with and introduce Cronometer's local counsel.  Please note that by taking these steps, Cronometer does not waive any rights to challenge jurisdiction or venue.

We also ask that Trustwell reciprocate. It is apparent to us that Trustwell's acting counsel in this matter is not a member of the Oregon State Bar and cannot represent Trustwell on matters of Oregon law.

In response to your demands, Cronometer reports that it has segregated and isolated Trustwell's dataset from its system.  This action is taken without any admission of wrongdoing or liability on the part of Cronometer.

Cronometer will respond to the other requirements set out in your letter in due course once it has retained local counsel in Oregon.

Page 2

Until we notify you otherwise, direct all correspondence and contacts regarding this matter to the undersigned.

We write with all rights reserved.

Yours very truly,

LAWSON LUNDELL LLP

Paul Matthews, P.Eng. (AB)*
 *Member of the Law Societies of BC and Alberta, and Oregon State Bar
PWM/ljf

cc.    client

# Trustwell's Exhibit C

Brian R. Talcott, OSB No. 965371
DUNN CARNEY LLP
851 SW Sixth Avenue, Suite 1500
Portland, OR 97204
Telephone: (503) 224-6440
Facsimile: (503) 224-7324
E-mail: btalcott@dunncarney.com

Cary D. Sullivan (*admitted Pro Hac Vice*)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone: (949) 851-3939
Facsimile: (949) 553-7539
E-mail: carysullivan@jonesday.com

*Attorneys for Plaintiff*

**Nika Aldrich**, OSB #160306
Email: naldrich@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Facsimile: 206-292-0460

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON – PORTLAND DIVISION

| | |
|---|---|
| ESHA RESEARCH, INC., now known as TRUSTWELL, | Civil No. 3:24-cv-01586-AB |
| Plaintiff, | |
| v. | **JOINT STATUS REPORT** |
| CRONOMETER SOFTWARE, INC., formerly known as BIGCRUNCH CONSULTING, LTD., and DOES 1-20. | |
| Defendants. | |

JOINT STATUS REPORT

## I.     INTRODUCTION

The parties provide this Joint Status Report in response to the Court's Order at the February 3, 2025 Scheduling Conference that the parties "file a status report on the trade secret identification."

On February 24, 2025, Trustwell answered Cronometer's Interrogatory No. 2, which asked Trustwell to "Describe with specificity the information that comprises each asserted trade secret that You allege Cronometer misappropriated." Trustwell's objections and response are attached as Exhibit 1. Cronometer objects that Trustwell has sufficiently answered the Interrogatory pursuant to the Court's Order. The parties have been unable to resolve the dispute. The parties' positions are provided below.

## II.     CRONOMETER'S POSITION

This case involves food and nutrition databases that Trustwell provided to Cronometer starting in 2015 to support its food tracking app. For each food item in the database, there is corresponding nutrition content, much of which is found on the federally-required labels for those products: calories, carbohydrates, fat, sodium, protein, etc. Some foods are restaurant items, and the nutritional content is included on federally-mandated menu labels.[1] As Trustwell admits, its data comes "from multiple sources," including the food and menu labels themselves. (Ex. 1, p. 4.) Cronometer understands that much of Trustwell's data comes from the U.S. Food and Drug Administration, which itself has a widely-used food and nutrition database, and other publicly-available sources.

Trustwell alleges that *some* of the data in its databases was "data that Trustwell itself

---

[1] *See generally* https://www.fda.gov/food/nutrition-food-labeling-and-critical-foods/menu-labeling-requirements

created, supplemented, and/or augmented" from the otherwise-publicly-available food and menu labels. Cronometer does not know which fields Trustwell claims to have "created, supplemented, and/or augmented," but believes Trustwell may have performed certain unit conversions, and that it may claim propriety over the results.[2]

Trustwell now alleges that Cronometer committed trade secret misappropriation when it used the food/nutrition data in Cronometer's publicly-available app, as intended when the parties first collaborated ten years ago. But Trustwell's Complaint is vague as to which information, exactly, it claims constitutes its trade secrets. Trustwell's databases are borne from publicly available sources (ketchup bottles, McDonalds' menus, FDA databases, and the like). Additionally, there is a dispute about which information Trustwell alleges it supplied to Cronometer. In its Complaint, Trustwell alleged that it supplied Cronometer with a database that included "comprehensive nutritional breakdowns for up to 172 separate data fields . . . for more than 90,000 brand name and generic foods and ingredients." (ECF 1 ¶ 4.) Cronometer disputes that and alleges instead that the information it received from Trustwell was two much smaller databases, limited to branded foods and restaurant items. (*Id.* ¶¶ 102-104.) Trustwell has since admitted that it provided only "portions of" its database to Cronometer (ECF 9 ¶ 33), but has failed to correct the false allegations in its Complaint that overstate by nearly an order of magnitude how much information it actually provided. (*Compare* ECF 6 ¶ 104 *with* ECF 9 ¶

---

[2] For example, in Canada, some foods are required to include Vitamin D content in micrograms (μg) on their nutrition labels. Elsewhere, Vitamin D is often displayed in International Units (IU). 1 microgram of vitamin D is equal to 40 IU. Trustwell may be claiming that it "created, supplemented, and/or augmented" the Vitamin D data for some foods in its databases by converting publicly-available quantities measured in μg to IU or vice versa. However, Cronometer does not actually know—nor has Trustwell ever disclosed—which data in the databases was allegedly "created, supplemented, and/or augmented" by Trustwell.

104[3].)

In the Rule 26(f) Report, Cronometer asked the Court to order Trustwell to identify its trade secrets with "reasonable particularity," as required by well-established case law. (ECF 12, pp. 6-10.) Trustwell responded that the alleged trade secrets were sufficiently defined in paragraphs 3, 4, 13, and 20 of its Complaint. (*Id.*, p. 5.) But those are the paragraphs from which Trustwell has since been backpedaling. (*See* ECF 9 ¶ 33 (only "portions of that database," not the fully panoply of data in "the Database").) And the Court expressed doubts that those paragraphs sufficiently identified any trade secrets. The Court Ordered Trustwell to answer Cronometer's Interrogatory No. 2 and identify its alleged trade secrets "with particularity," preferably "in the form of a numbered list." (Feb. 3, 2025 Hrg. Tr. pp. 10, 14.)

On February 24, Trustwell provided its respond to Interrogatory No. 2. Unfortunately, there is no numbered list. Instead, the Interrogatory response states:

> The trade secret information that Trustwell alleges Cronometer misappropriated in this action is the data contained in Trustwell's master food and nutrition database that Cronometer licensed from Trustwell . . . and that Trustwell . . . provided to Cronometer [on a list of dates].

There are two significant problems with this answer. First, this answer states in essence that the trade secret is, vaguely, "the data" in the supplied databases. That is insufficient and provides no meaningful information beyond what was already stated in Trustwell's Complaint. (*See* ECF 1 ¶ 20.) Trustwell must identify *which* data. "The data" could mean any or all of "each and every individual piece of data in the database," "some of the data in the database," or rather only "the compilation of all of the data."

---

[3] For reference, a 2022 copy of the Data file sent from Trustwell contains only 43 nutritional fields for approximately 51,000 food items. More than half of the fields are blank.

Clearly Trustwell cannot in good faith contend that each and every piece of data in the database is a trade secret, given that it readily admits it obtained at least some of that information from "multiple sources." For example, Trustwell's database includes the following nutritional content for a pack of two Nature Valley Crunchy Maple Brown Sugar granola bars, shown on the left.[4] On the right is the exact same information found on Nature Valley's website[5]:

| | | | NUTRITION FACTS | | |
|---|---|---|---|---|---|
| | | | **Serving size: 2 bars (42g)** | | |
| | | | Amount per serving | | |
| | | | **Calories** | **190** As Packaged | |
| "GramWgt" | 42.00000 | | **Food component / Nutrient** | **Amount** As Packaged | |
| "Cals" | 190.0000 | | | | |
| "Fat" | 7.00000 | | **Total Fat** | 7g | |
| "SatFat" | 0.50000 | | Saturated Fat | 0.5g | |
| "Transfa" | 0.00000 | | Trans Fat | 0g | |
| "Carb" | 29.0000 | | **Cholesterol** | 0mg | |
| "Fib" | 2.00000 | | **Sodium** | 150mg | |
| "TotSug" | 12.0000 | | **Total Carbohydrate** | 29g | |
| "AddSug" | 12.0000 | | Dietary Fiber | 2g | |
| "Prot" | 3.00000 | | Total Sugars | 12g | |
| "Iron" | 1.00000 | | Incl. Added Sugars | 12g | |
| | | | **Protein** | 3g | |
| | | | **Iron** | 1mg | |

---

[4] "RefNum" 90780 in the file "Data" dated March 7, 2022.

[5] *See* Maple Brown Sugar Crunchy Granola Bars, available at https://www.naturevalley.com/products/maple-brown-sugar-crunchy-granola-bars (last accessed Feb. 26, 2025).

Page 4 -   JOINT STATUS REPORT

The fact that a pack of Nature Valley granola bars has 190 Calories or 2g of Dietary Fiber cannot in any universe constitute a trade secret.

To the extent Trustwell instead contends that only *some* of the data in the database is a trade secret—*e.g.*, perhaps the "data that Trustwell itself created, supplemented, and/or augmented"—it must identify *which specific data* in the database it so created, supplemented, and/or augmented.

To the extent Trustwell asserts only that *the complete compilation* of data is a trade secret, it must so state, and disclaim that any individual piece of data within that database constitutes a trade secret.

Either way, simply claiming "the data" does nothing to provide the requisite level of particularity or to put Cronometer on notice of what Trustwell claims in this case.

Moreover, the possibility that Trustwell may claim that the trade secret is only a *compilation* of the complete data it produced raises a second significant problem. Cronometer does not know what the complete compilation of data is, because Trustwell alleges it sent significantly more data than Cronometer asserts it ever received, and Cronometer does not have the original transmission of data it received from Trustwell's predecessor more than ten years ago. For this reason, Cronometer invited Trustwell to produce the complete compilation(s) of data that it alleges it sent to Cronometer, along with the transmission correspondence, and identify those productions in its response to Interrogatory No. 2 pursuant to Rule 34(d). Trustwell declined.[6]

---

[6] In its response below, Trustwell notes that Cronometer was able to sequester the Trustwell data *that remained in its system* as of 2024. That does not change the fact that Cronometer no longer has the original data files sent in, e.g., 2015. This is critical, given Trustwell's sworn representation to the Court that it sent Cronometer nearly ten times as much data as Cronometer

In providing its response below, Trustwell misstates the law and further compounds the concerns.  First, it cites *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 659 (9th Cir. 2020) for the proposition that "[a]t this stage, particularly where no discovery whatsoever had occurred … [the plaintiff's] burden is only to identify at least one trade secret with sufficient particularity to create a triable issue."  But that is the standard to survive a motion for summary judgment, not the standard this Court invoked when ordering Trustwell to identify its trade secrets with particularity before it could obtain discovery in this case.  *That* standard derives from judicial concerns about discovery, prejudice, and the particularities of trade secret cases, as articulated in the Parties' Rule 26(f) report.

Second, Trustwell states that "the entirety of the dataset" is the "trade secrets" (plural) at issue.  That is unfortunately as vague as "the data."  To the extent Trustwell will limit its trade secrets claim to only *the compilation of data* it provided, and does not and will not assert that any individual piece of data—or even any subset of data—within the compilation is a trade secret, it should so state and produce that data.  Such clarity will dramatically effect the discovery that will be needed in this case.

~~At the end, Cronometer still does not know what alleged trade secret(s) it is accused of misappropriating.~~  Cronometer has a right to have clarity on ~~this issue~~exactly what Trustwell claims is a trade secret so it can (i) engage in discovery concerning whether such information meets the statutory definition of a trade secret and/or (ii) demonstrate that it did not misappropriate the information.

---

says it ever received.  Given the significant disconnect, Trustwell should clearly identify the datasets on which its claims are premised pursuant to Rule 34(d).

Finally, contrary to Trustwell's representations below, Cronometer has no interest in obstruction or delay.  It responded immediately to Trustwell upon receiving the deficient interrogatory responses, and offered to get this joint status report on file days early to avoid any undue delay.

### III.    TRUSTWELL'S POSITION

Cronometer's position above misrepresents both the facts and the law.  As Trustwell noted during the recent Rule 16 Conference, Cronometer seems intent on creating only obstruction and delay here.  This latest dispute unfortunately supports that.

To begin, as the Ninth Circuit observed, "[a]t this stage, particularly where no discovery whatsoever had occurred … [the plaintiff's] burden is only to identify at least one trade secret with sufficient particularity to create a triable issue."  *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 659 (9th Cir. 2020).  The District of Oregon has made clear that this requires merely that the description is "sufficient to put defendant on notice of the nature of plaintiff's claim and enable defendant to determine the relevancy of any requested discovery, at least to allow this case to proceed past the pleadings stage."  *Sennco Solutions, Inc. v. Mobile Techs., Inc.*, 2020 WL 8836070, at *3 (D. Or. Dec. 21, 2020) (citing *Redfin Corp. v. iPayOne.com, Inc.*, 2018 WL 1397482, *2 (W.D. Wash. Mar. 20, 2018) (denying motion for protective order "where the plaintiff's trade secret allegations provided enough information 'to give Redfin notice of what issues may arise later in this litigation as well as the scope of appropriate discovery'"); and *InteliClear*, 978 F.3d at 662 ("Federal cases analyzing whether a plaintiff's trade secrets are described with 'sufficient particularity' typically arise in the battleground of discovery.  In such cases, discovery provides an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification….  Refining trade secret identifications

Page 7 -    JOINT STATUS REPORT

through discovery makes good sense.")); [7] *see also Opal Labs, Inc. v. Sprinklr, Inc.*, 2019 WL 6528589, at *1 (D. Or. Dec. 4, 2019) ("Reasonable particularity is 'a description of the trade secrets at issue that is sufficient to (a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets.'") (*citing Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1155 (D. Or. 2015)).

Trustwell identified the trade secrets at issue here, in response to Cronometer's Interrogatory No. 2, in relevant part as follows:

> [T]he data contained in Trustwell's master food and nutrition database that Cronometer licensed from Trustwell . . . and that Trustwell originally provided to Cronometer … on approximately February 13, 2015, with subsequent, periodic updates provided to Cronometer on the [*fifteen*] dates below.

In subsequent correspondence between counsel, Trustwell confirmed that "the entirety of the dataset that Trustwell provided to Cronometer on the identified dates constitutes the trade secrets at issue." (Trustwell's Exhibit A.) As Trustwell's counsel explained:

> That provides more than sufficient specificity for Cronometer to understand precisely what data is at issue, and to pull those precise files from its records (the only files that were transmitted from Trustwell to Cronometer on the identified dates). We are unable to further define in writing a dataset that contains tens of thousands of entries with countless data fields for each entry and that changes over time.

---

[7] Cronometer should have ready access to the datasets provided by Trustwell over the years, particularly given that Trustwell has identified the sixteen dates on which the datasets were provided. In fact, Cronometer specifically references above one of the datasets provided in 2022. In other words, Cronometer *can* identify the datasets. Moreover, once the temporary stay is lifted, and once the parties proceed with discovery, Trustwell will re-produce the datasets that it previously provided to Cronometer, and it will update its interrogatory response to include the Bates numbers of those productions, thereby further refining its trade secret identification, as contemplated by the Ninth Circuit.

(*Id.*)

Although Cronometer now professes confusion about the dataset, they had no trouble identifying that dataset several months ago. In July 2024, just three days after receiving Trustwell's initial cease-and-desist letter, Cronometer's counsel represented as follows: "In response to your demands, Cronometer reports that it has segregated and isolated Trustwell's dataset from its system." (Trustwell's Exhibit B.) That representation certainly calls into question the veracity of Cronometer's current position above that it "does not know what the complete compilation of data is."

Ultimately, Trustwell's trade secret identification plainly puts Cronometer on notice of the nature of Trustwell's claims and enables Cronometer to determine the relevance of any requested discovery. That is all that is required at this stage. *Sennco Solutions, Inc.*, 2020 WL 8836070, at *3; *Opal Labs, Inc.*, 2019 WL 6528589, at *1. The inquiry should end there.

In its position statement, however, Cronometer goes on to take issue with *whether* the identified dataset constitutes a trade secret. That obviously misses the point of the inquiry at this stage. Nevertheless, Trustwell feels compelled to point out the law as it relates to compilation trade secrets: "Unlike a patent, novelty is not required for information to be protected as a trade secret, and independent discovery by another does not preclude protection." *Amvac Chem. Corp. v. Termilind, Ltd.*, 1999 WL 1279664, at *4 (D. Or. Aug. 3, 1999) (citing *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974); and *Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972)). "It does not matter if a portion of the trade secret is generally known, or even that every individual portion of the trade secret is generally known, so long as the combination of all such information is not generally known." *O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 420

F. Supp. 2d 1070, 1089-90 (N.D. Cal. 2006); *see also Mattel, Inc. v. MGA Entm't, Inc*., 782 F. Supp. 2d 911, 962-63 (C.D. Cal. 2011) (same).

Given that Cronometer purports to challenge the protectability of Trustwell's trade secrets, which it was able to "segregate[] and isolate[]" more than seven months ago, its current position that it somehow does not understand what those trade secrets are rings hollow. And the fact that Cronometer paid Trustwell licensing fees every year for a decade, for access to Trustwell's trade secrets—albeit while representing that it would use the trade secrets solely for its "own internal nutritional analyses"—demonstrates that even Cronometer recognizes the significant value of those trade secrets.

Trustwell has identified the trade secrets at issue with sufficient particularity. The Court should lift the temporary stay and allow discovery to proceed.


Respectfully submitted,

Dated: February    , 2025            **SCHWABE, WILLIAMSON & WYATT, P.C.**


                                     *s/*
                                     _____
                                     Nika Aldrich, OSB #160306
                                     Email: naldrich@schwabe.com

                                     *Attorney for Defendant Cronometer Software, Inc.*


Dated: February    , 2025            **DUNN CARNEY LLP**


                                     *s/*
                                     _____
                                     Brian R. Talcott, OSB 965371
                                     Email:  btalcott@dunncarney.com

**JONES DAY**
Cary D. Sullivan (*admitted Pro Hac Vice*)
Email: carysullivan@jonesday.com

*Attorneys for Plaintiff Trustwell*

# Trustwell's Exhibit D

Brian R. Talcott, OSB No. 965371
DUNN CARNEY LLP
851 SW Sixth Avenue, Suite 1500
Portland, OR 97204
Telephone: (503) 224-6440
Facsimile: (503) 224-7324
E-mail:  btalcott@dunncarney.com

Cary D. Sullivan (*admitted Pro Hac Vice*)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA  92612
Telephone: (949) 851-3939
Facsimile:  (949) 553-7539
E-mail:  carysullivan@jonesday.com

*Attorneys for Plaintiff*

**Nika Aldrich**, OSB #160306
Email: naldrich@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Facsimile: 206-292-0460

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON – PORTLAND DIVISION

| | |
|---|---|
| ESHA RESEARCH, INC., now known as TRUSTWELL,<br><br>                     Plaintiff,<br><br>v.<br><br>CRONOMETER SOFTWARE, INC., formerly known as BIGCRUNCH CONSULTING, LTD., and DOES 1-20.<br><br>                     Defendants. | Civil No. 3:24-cv-01586-AB<br><br><br>**JOINT STATUS REPORT** |

JOINT STATUS REPORT

**Error! Unknown document property name.**

## I.    INTRODUCTION

The parties provide this Joint Status Report in response to the Court's Order at the February 3, 2025 Scheduling Conference that the parties "file a status report on the trade secret identification."

On February 24, 2025, Trustwell answered Cronometer's Interrogatory No. 2, which asked Trustwell to "Describe with specificity the information that comprises each asserted trade secret that You allege Cronometer misappropriated." Trustwell's objections and response are attached as Exhibit 1. Cronometer objects that Trustwell has sufficiently answered the Interrogatory pursuant to the Court's Order. The parties have been unable to resolve the dispute. The parties' positions are provided below.

## II.    CRONOMETER'S POSITION

This case involves food and nutrition databases that Trustwell provided to Cronometer starting in 2015 to support its food tracking app. For each food item in the database, there is corresponding nutrition content, much of which is found on the federally-required labels for those products: calories, carbohydrates, fat, sodium, protein, etc. Some foods are restaurant items, and the nutritional content is included on federally-mandated menu labels.[1] As Trustwell admits, its data comes "from multiple sources," including the food and menu labels themselves. (Ex. 1, p. 4.) Cronometer understands that much of Trustwell's data comes from the U.S. Food and Drug Administration, which itself has a widely-used food and nutrition database, and other publicly-available sources.

Trustwell alleges that *some* of the data in its databases was "data that Trustwell itself

---

[1] *See generally* https://www.fda.gov/food/nutrition-food-labeling-and-critical-foods/menu-labeling-requirements

**Error! Unknown document property name.**

created, supplemented, and/or augmented" from the otherwise-publicly-available food and menu labels. Cronometer does not know which fields Trustwell claims to have "created, supplemented, and/or augmented," but believes Trustwell may have performed certain unit conversions, and that it may claim propriety over the results.[2]

Trustwell now alleges that Cronometer committed trade secret misappropriation when it used the food/nutrition data in Cronometer's publicly-available app, as intended when the parties first collaborated ten years ago. But Trustwell's Complaint is vague as to which information, exactly, it claims constitutes its trade secrets. Trustwell's databases are borne from publicly available sources (ketchup bottles, McDonalds' menus, FDA databases, and the like). Additionally, there is a dispute about which information Trustwell alleges it supplied to Cronometer. In its Complaint, Trustwell alleged that it supplied Cronometer with a database that included "comprehensive nutritional breakdowns for up to 172 separate data fields . . . for more than 90,000 brand name and generic foods and ingredients." (ECF 1 ¶ 4.) Cronometer disputes that and alleges instead that the information it received from Trustwell was two much smaller databases, limited to branded foods and restaurant items. (*Id.* ¶¶ 102-104.) Trustwell has since admitted that it provided only "portions of" its database to Cronometer (ECF 9 ¶ 33), but has failed to correct the false allegations in its Complaint that overstate by nearly an order of magnitude how much information it actually provided. (*Compare* ECF 6 ¶ 104 *with* ECF 9 ¶

---

[2] For example, in Canada, some foods are required to include Vitamin D content in micrograms (μg) on their nutrition labels. Elsewhere, Vitamin D is often displayed in International Units (IU). 1 microgram of vitamin D is equal to 40 IU. Trustwell may be claiming that it "created, supplemented, and/or augmented" the Vitamin D data for some foods in its databases by converting publicly-available quantities measured in μg into IU or vice versa. However, Cronometer does not actually know—nor has Trustwell ever disclosed—which data in the databases was allegedly "created, supplemented, and/or augmented" by Trustwell.

104[3].)

In the Rule 26(f) Report, Cronometer asked the Court to order Trustwell to identify its trade secrets with "reasonable particularity," as required by well-established case law. (ECF 12, pp. 6-10.) Trustwell responded that the alleged trade secrets were sufficiently defined in paragraphs 3, 4, 13, and 20 of its Complaint. (*Id.*, p. 5.) But those are the paragraphs from which Trustwell has since been backpedaling. (*See* ECF 9 ¶ 33 (only "portions of that database," not the fully panoply of data in "the Database").) And the Court expressed doubts that those paragraphs sufficiently identified any trade secrets. The Court Ordered Trustwell to answer Cronometer's Interrogatory No. 2 and identify its alleged trade secrets "with particularity," preferably "in the form of a numbered list." (Feb. 3, 2025 Hrg. Tr. pp. 10, 14.)

On February 24, Trustwell provided its respond to Interrogatory No. 2. Unfortunately, there is no numbered list. Instead, the Interrogatory response states:

> The trade secret information that Trustwell alleges Cronometer misappropriated in this action is the data contained in Trustwell's master food and nutrition database that Cronometer licensed from Trustwell . . . and that Trustwell . . . provided to Cronometer [on a list of dates].

There are two significant problems with this answer. First, this answer states in essence that the trade secret is, vaguely, "the data" in the supplied databases. That is insufficient and provides no meaningful information beyond what was already stated in Trustwell's Complaint. (*See* ECF 1 ¶ 20.) Trustwell must identify *which* data. "The data" could mean any or all of "each and every individual piece of data in the database," "some of the data in the database," or rather only "the compilation of all of the data."

---

[3] For reference, a 2022 copy of the Data file sent from Trustwell contains only 43 nutritional fields for approximately 51,000 food items. More than half of the fields are blank.

Clearly Trustwell cannot in good faith contend that each and every piece of data in the

database is a trade secret, given that it readily admits it obtained at least some of that information

from "multiple sources." For example, Trustwell's database includes the following nutritional

content for a pack of two Nature Valley Crunchy Maple Brown Sugar granola bars, shown on the

left.[4] On the right is the exact same information found on Nature Valley's website[5]:

| | |
|---|---|
| "GramWgt" | 42.00000 |
| "Cals" | 190.0000 |
| "Fat" | 7.00000 |
| "SatFat" | 0.50000 |
| "Transfa" | 0.00000 |
| "Carb" | 29.0000 |
| "Fib" | 2.00000 |
| "TotSug" | 12.0000 |
| "AddSug" | 12.0000 |
| "Prot" | 3.00000 |
| "Iron" | 1.00000 |

## NUTRITION FACTS

**Serving size: 2 bars (42g)**

Amount per serving
**Calories**  **190**
As Packaged

| Food component / Nutrient | Amount As Packaged |
|---|---|
| **Total Fat** | 7g |
| Saturated Fat | 0.5g |
| Trans Fat | 0g |
| **Cholesterol** | 0mg |
| **Sodium** | 150mg |
| **Total Carbohydrate** | 29g |
| Dietary Fiber | 2g |
| Total Sugars | 12g |
| Incl. Added Sugars | 12g |
| **Protein** | 3g |
| **Iron** | 1mg |

---

[4] "RefNum" 90780 in the file "Data" dated March 7, 2022.

[5] *See* Maple Brown Sugar Crunchy Granola Bars, available at
https://www.naturevalley.com/products/maple-brown-sugar-crunchy-granola-bars (last accessed
Feb. 26, 2025).

**Error! Unknown document property name.**

The fact that a pack of Nature Valley granola bars has 190 Calories or 2g of Dietary Fiber cannot in any universe constitute a trade secret.

To the extent Trustwell instead contends that only *some* of the data in the database is a trade secret—*e.g.*, perhaps the "data that Trustwell itself created, supplemented, and/or augmented"—it must identify *which specific data* in the database it so created, supplemented, and/or augmented.

To the extent Trustwell asserts only that *the complete compilation* of data is a trade secret, it must so state, and disclaim that any individual piece of data within that database constitutes a trade secret.

Either way, simply claiming "the data" does nothing to provide the requisite level of particularity or to put Cronometer on notice of what Trustwell claims in this case.

Moreover, the possibility that Trustwell may claim that the trade secret is only a *compilation* of the complete data it produced raises a second significant problem. Cronometer does not know what the complete compilation of data is, because Trustwell alleges it sent significantly more data than Cronometer asserts it ever received, and Cronometer does not have the original transmission of data it received from Trustwell's predecessor more than ten years ago. For this reason, Cronometer invited Trustwell to produce the complete compilation(s) of data that it alleges it sent to Cronometer, along with the transmission correspondence, and identify those productions in its response to Interrogatory No. 2 pursuant to Rule 34(d). Trustwell declined.[6]

---

[6] In its response below, Trustwell notes that Cronometer was able to sequester the Trustwell data *that remained in its system* as of 2024. That does not change the fact that Cronometer no longer has the original data files sent in, e.g., 2015. This is critical, given Trustwell's sworn representation to the Court that it sent Cronometer nearly ten times as much data as Cronometer

**Error! Unknown document property name.**

In providing its response below, Trustwell misstates the law and further compounds the concerns.  First, it cites *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 659 (9th Cir. 2020) for the proposition that "[a]t this stage, particularly where no discovery whatsoever had occurred … [the plaintiff's] burden is only to identify at least one trade secret with sufficient particularity to create a triable issue."  But that is the standard to survive a motion for summary judgment, not the standard this Court invoked when ordering Trustwell to identify its trade secrets with particularity before it could obtain discovery in this case.  *That* standard derives from judicial concerns about discovery, prejudice, and the particularities of trade secret cases, as articulated in the Parties' Rule 26(f) report.

Second, Trustwell states that "the entirety of the dataset" is the "trade secrets" (plural) at issue.  That is unfortunately as vague as "the data."  To the extent Trustwell will limit its trade secrets claim to only *the compilation of data* it provided, and does not and will not assert that any individual piece of data—or even any subset of data—within the compilation is a trade secret, it should so state and produce that data.  Such clarity will dramatically ~~a~~effect the discovery that will be needed in this case.

At the end, Cronometer still does not know what alleged trade secret(s) it is accused of misappropriating.  Cronometer has a right to have clarity on ~~this issue~~exactly what Trustwell claims is a trade secret so it can (i) engage in discovery concerning whether such information meets the statutory definition of a trade secret and/or (ii) demonstrate that it did not misappropriate the information.

---

says it ever received.  Given the significant disconnect, Trustwell should clearly identify the datasets on which its claims are premised pursuant to Rule 34(d).

**Error! Unknown document property name.**

Finally, contrary to Trustwell's representations below, Cronometer has no interest in obstruction or delay.  It responded immediately to Trustwell upon receiving the deficient interrogatory responses, and offered to get this joint status report on file days early to avoid any undue delay.

## III.    TRUSTWELL'S POSITION

Cronometer's position above misrepresents both the facts and the law.  As Trustwell noted during the recent Rule 16 Conference, Cronometer seems intent on creating only obstruction and delay here.  This latest dispute unfortunately supports that.

To begin, as the Ninth Circuit observed, "[a]t this stage, particularly where no discovery whatsoever had occurred … [the plaintiff's] burden is only to identify at least one trade secret with sufficient particularity to create a triable issue."  *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 659 (9th Cir. 2020).[7]  The District of Oregon has made clear that this requires merely that the description is "sufficient to put defendant on notice of the nature of plaintiff's claim and enable defendant to determine the relevancy of any requested discovery, at least to allow this case to proceed past the pleadings stage."  *Sennco Solutions, Inc. v. Mobile Techs., Inc.*, 2020 WL 8836070, at *3 (D. Or. Dec. 21, 2020) (citing *Redfin Corp. v. iPayOne.com, Inc.*, 2018 WL 1397482, *2 (W.D. Wash. Mar. 20, 2018) (denying motion for protective order "where the plaintiff's trade secret allegations provided enough information 'to give Redfin notice of what

---

[7] Cronometer takes issue above with Trustwell's citation to *InteliClear*.  Notably, Cronometer fails to address all of the other cases cited in Trustwell's position.  Regardless, *InteliClear* presents a similar procedural posture.  In *InteliClear*, as here, no discovery had been conducted and the defendant was challenging the sufficiency of the trade secret identification.  *Id*. at 655.  The Ninth Circuit made clear that trade secret identification at the outset of a case is a low bar to clear, and that "[r]efining trade secret identifications through discovery makes good sense."  *Id*. at 662.

**Error! Unknown document property name.**

issues may arise later in this litigation as well as the scope of appropriate discovery'"); and

*InteliClear*, 978 F.3d at 662 ("Federal cases analyzing whether a plaintiff's trade secrets are described with 'sufficient particularity' typically arise in the battleground of discovery.  In such cases, discovery provides an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification….  Refining trade secret identifications through discovery makes good sense."));[8] *see also Opal Labs, Inc. v. Sprinklr, Inc*., 2019 WL 6528589, at *1 (D. Or. Dec. 4, 2019) ("Reasonable particularity is 'a description of the trade secrets at issue that is sufficient to (a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets.'") (*citing Vesta Corp. v. Amdocs Mgmt. Ltd*., 147 F. Supp. 3d 1147, 1155 (D. Or. 2015)).

Trustwell identified the trade secrets at issue here, in response to Cronometer's Interrogatory No. 2, in relevant part as follows:

> [T]he data contained in Trustwell's master food and nutrition database that Cronometer licensed from Trustwell . . . and that Trustwell originally provided to Cronometer … on approximately February 13, 2015, with subsequent, periodic updates provided to Cronometer on the [*fifteen*] dates below.

In subsequent correspondence between counsel, Trustwell confirmed that "the entirety of the dataset that Trustwell provided to Cronometer on the identified dates constitutes the trade

---

[8] Cronometer should have ready access to the datasets provided by Trustwell over the years, particularly given that Trustwell has identified the sixteen dates on which the datasets were provided.  In fact, Cronometer specifically references above one of the datasets provided in 2022.  In other words, Cronometer *can* identify the datasets.  Moreover, once the temporary stay is lifted, and once the parties proceed with discovery, Trustwell will re-produce the datasets that it previously provided to Cronometer, and it will update its interrogatory response to include the Bates numbers of those productions, thereby further refining its trade secret identification, as contemplated by the Ninth Circuit.

**Error! Unknown document property name.**

secrets at issue." (Trustwell's Exhibit A.) As Trustwell's counsel explained:

> That provides more than sufficient specificity for Cronometer to understand precisely what data is at issue, and to pull those precise files from its records (the only files that were transmitted from Trustwell to Cronometer on the identified dates). We are unable to further define in writing a dataset that contains tens of thousands of entries with countless data fields for each entry and that changes over time.[9]

(*Id.*)

Although Cronometer now professes confusion about the dataset, they had no trouble identifying that dataset several months ago. In July 2024, just three days after receiving Trustwell's initial cease-and-desist letter, Cronometer's counsel represented as follows: "In response to your demands, Cronometer reports that it has segregated and isolated Trustwell's dataset from its system." (Trustwell's Exhibit B.) That representation certainly calls into question the veracity of Cronometer's current position above that it "does not know what the complete compilation of data is."[10]

Ultimately, Trustwell's trade secret identification plainly puts Cronometer on notice of the nature of Trustwell's claims and enables Cronometer to determine the relevance of any requested discovery. That is all that is required at this stage. *Sennco Solutions, Inc.*, 2020 WL 8836070, at *3; *Opal Labs, Inc.*, 2019 WL 6528589, at *1. The inquiry should end there.

---

[9] For example, Cronometer describes above a dataset from 2022 as containing "43 nutritional fields for approximately 51,000 food items." That means approximately 2.2 million individual data fields. And that is just one dataset. There is simply no way to define in writing such a voluminous dataset, particularly one that changes over time, other than by date of transmission.

[10] Cronometer claims above that it "no longer has the original data files sent in, e.g., 2015." Yet, in its answer in this case, Cronometer was somehow able to cite and quote many of its own emails from February 2015. (ECF No. 6, ¶¶ 36-37, 42-44, 48.)

**Error! Unknown document property name.**

In its position statement, however, Cronometer goes on to take issue with *whether* the identified dataset constitutes a trade secret. That obviously misses the point of the inquiry at this stage. Nevertheless, Trustwell feels compelled to point out the law as it relates to compilation trade secrets: "Unlike a patent, novelty is not required for information to be protected as a trade secret, and independent discovery by another does not preclude protection." *Amvac Chem. Corp. v. Termilind, Ltd*., 1999 WL 1279664, at *4 (D. Or. Aug. 3, 1999) (citing *Kewanee Oil Co. v. Bicron Corp*., 416 U.S. 470, 476 (1974); and *Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972)). "It does not matter if a portion of the trade secret is generally known, or even that every individual portion of the trade secret is generally known, so long as the combination of all such information is not generally known." *O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc*., 420 F. Supp. 2d 1070, 1089-90 (N.D. Cal. 2006); *see also Mattel, Inc. v. MGA Entm't, Inc*., 782 F. Supp. 2d 911, 962-63 (C.D. Cal. 2011) (same).

Given that Cronometer purports to challenge the protectability of Trustwell's trade secrets, which it was able to "segregate[] and isolate[]" more than seven months ago, its current position that it somehow does not understand what those trade secrets are rings hollow. And the fact that Cronometer paid Trustwell licensing fees every year for a decade, for access to Trustwell's trade secrets—albeit while representing that it would use the trade secrets solely for its "own internal nutritional analyses"—demonstrates that even Cronometer recognizes the significant value of those trade secrets.

In revising its position above after receiving Trustwell's position, Cronometer deleted the following statement: "Cronometer still does not know what alleged trade secret(s) it is accused of misappropriating." (Trustwell's Exhibit C, at 6.) That deletion demonstrates the sufficiency of Trustwell's trade secret identification. Cronometer now requests "clarity on exactly what

**Error! Unknown document property name.**

Trustwell claims is a trade secret."  Apparently, Cronometer wants Trustwell to designate each piece of data—individual data field by individual data field, over millions of data fields.  There is simply no authority, anywhere, that supports such an extreme result.  Trustwell has identified the trade secrets at issue with sufficient particularity.  Nothing more is required.  The Court should lift the temporary stay and allow discovery to proceed.


    Respectfully submitted,


Dated:  February    , 2025                    **SCHWABE, WILLIAMSON & WYATT, P.C.**


                                              *s/*_____
                                              Nika Aldrich, OSB #160306
                                              Email: naldrich@schwabe.com

                                              *Attorney for Defendant Cronometer Software, Inc.*


Dated:  February    , 2025                    **DUNN CARNEY LLP**

                                              ___*s/*_____
                                              Brian R. Talcott, OSB 965371
                                              Email:  btalcott@dunncarney.com

                                              **JONES DAY**
                                              Cary D. Sullivan (*admitted Pro Hac Vice*)
                                              Email: carysullivan@jonesday.com

                                              *Attorneys for Plaintiff Trustwell*

**Error! Unknown document property name.**

**Trustwell's Exhibit E**

Brian R. Talcott, OSB No. 965371
DUNN CARNEY LLP
851 SW Sixth Avenue, Suite 1500
Portland, OR 97204
Telephone: (503) 224-6440
Facsimile: (503) 224-7324
E-mail:  btalcott@dunncarney.com

Cary D. Sullivan (*admitted Pro Hac Vice*)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA  92612
Telephone: (949) 851-3939
Facsimile:  (949) 553-7539
E-mail:  carysullivan@jonesday.com

*Attorneys for Plaintiff*

**Nika Aldrich**, OSB #160306
Email: naldrich@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Facsimile: 206-292-0460

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON – PORTLAND DIVISION

| | |
|---|---|
| ESHA RESEARCH, INC., now known as TRUSTWELL, | Civil No. 3:24-cv-01586-AB |
| Plaintiff, | |
| v. | **JOINT STATUS REPORT** |
| CRONOMETER SOFTWARE, INC., formerly known as BIGCRUNCH CONSULTING, LTD., and DOES 1-20. | |
| Defendants. | |

JOINT STATUS REPORT

## I.    INTRODUCTION

The parties provide this Joint Status Report in response to the Court's Order at the February 3, 2025 Scheduling Conference that the parties "file a status report on the trade secret identification."

On February 24, 2025, Trustwell answered Cronometer's Interrogatory No. 2, which asked Trustwell to "Describe with specificity the information that comprises each asserted trade secret that You allege Cronometer misappropriated."  Trustwell's objections and response are attached as Exhibit 1.  Cronometer objects that Trustwell has sufficiently answered the Interrogatory pursuant to the Court's Order.  The parties have been unable to resolve the dispute.  The parties' positions are provided below.

## II.    CRONOMETER'S POSITION

This case involves food and nutrition databases that Trustwell provided to Cronometer starting in 2015 to support its food tracking app.  For each food item in the database, there is corresponding nutrition content, much of which is found on the federally-required labels for those products: calories, carbohydrates, fat, sodium, protein, etc.  Some foods are restaurant items, and the nutritional content is included on federally-mandated menu labels.[1]  As Trustwell admits, its data comes "from multiple sources," including the food and menu labels themselves.  (Ex. 1, p. 4.)  Cronometer understands that much of Trustwell's data comes from the U.S. Food and Drug Administration, which itself has a widely-used food and nutrition database, and other publicly-available sources.

Trustwell alleges that *some* of the data in its databases was "data that Trustwell itself

---

[1] *See generally* https://www.fda.gov/food/nutrition-food-labeling-and-critical-foods/menu-labeling-requirements

created, supplemented, and/or augmented" from the otherwise-publicly-available food and menu labels. Cronometer does not know which fields Trustwell claims to have "created, supplemented, and/or augmented," but believes Trustwell may have performed certain unit conversions, and that it may claim propriety over the results.[2]

Trustwell now alleges that Cronometer committed trade secret misappropriation when it used the food/nutrition data in Cronometer's publicly-available app, as intended when the parties first collaborated ten years ago. But Trustwell's Complaint is vague as to which information, exactly, it claims constitutes its trade secrets. Trustwell's databases are borne from publicly available sources (ketchup bottles, McDonalds' menus, FDA databases, and the like). Additionally, there is a dispute about which information Trustwell alleges it supplied to Cronometer. In its Complaint, Trustwell alleged that it supplied Cronometer with a database that included "comprehensive nutritional breakdowns for up to 172 separate data fields . . . for more than 90,000 brand name and generic foods and ingredients." (ECF 1 ¶ 4.) Cronometer disputes that and alleges instead that the information it received from Trustwell was two much smaller databases, limited to branded foods and restaurant items. (*Id.* ¶¶ 102-104.) Trustwell has since admitted that it provided only "portions of" its database to Cronometer (ECF 9 ¶ 33), but has failed to correct the false allegations in its Complaint that overstate by nearly an order of magnitude how much information it actually provided. (*Compare* ECF 6 ¶ 104 *with* ECF 9 ¶

---

[2] For example, in Canada, some foods are required to include Vitamin D content in micrograms (µg) on their nutrition labels. Elsewhere, Vitamin D is often displayed in International Units (IU). 1 microgram of vitamin D is equal to 40 IU. Trustwell may be claiming that it "created, supplemented, and/or augmented" the Vitamin D data for some foods in its databases by converting publicly-available quantities measured in µg into IU or vice versa. However, Cronometer does not actually know—nor has Trustwell ever disclosed—which data in the databases was allegedly "created, supplemented, and/or augmented" by Trustwell.

104[3].)

In the Rule 26(f) Report, Cronometer asked the Court to order Trustwell to identify its trade secrets with "reasonable particularity," as required by well-established case law. (ECF 12, pp. 6-10.) Trustwell responded that the alleged trade secrets were sufficiently defined in paragraphs 3, 4, 13, and 20 of its Complaint. (*Id.*, p. 5.) But those are the paragraphs from which Trustwell has since been backpedaling. (*See* ECF 9 ¶ 33 (only "portions of that database," not the fully panoply of data in "the Database").) And the Court expressed doubts that those paragraphs sufficiently identified any trade secrets. The Court Ordered Trustwell to answer Cronometer's Interrogatory No. 2 and identify its alleged trade secrets "with particularity," preferably "in the form of a numbered list." (Feb. 3, 2025 Hrg. Tr. pp. 10, 14.)

On February 24, Trustwell provided its respond to Interrogatory No. 2. Unfortunately, there is no numbered list. Instead, the Interrogatory response states:

> The trade secret information that Trustwell alleges Cronometer misappropriated in this action is the data contained in Trustwell's master food and nutrition database that Cronometer licensed from Trustwell . . . and that Trustwell . . . provided to Cronometer [on a list of dates].

There are two significant problems with this answer. First, this answer states in essence that the trade secret is, vaguely, "the data" in the supplied databases. That is insufficient and provides no meaningful information beyond what was already stated in Trustwell's Complaint. (*See* ECF 1 ¶ 20.) Trustwell must identify *which* data. "The data" could mean any or all of "each and every individual piece of data in the database," "some of the data in the database," or rather only "the compilation of all of the data."

---

[3] For reference, a 2022 copy of the Data file sent from Trustwell contains only 43 nutritional fields for approximately 51,000 food items. More than half of the fields are blank.

Clearly Trustwell cannot in good faith contend that each and every piece of data in the database is a trade secret, given that it readily admits it obtained at least some of that information from "multiple sources."  For example, Trustwell's database includes the following nutritional content for a pack of two Nature Valley Crunchy Maple Brown Sugar granola bars, shown on the left.[4]  On the right is the exact same information found on Nature Valley's website[5]:

| | |
|---|---|
| "GramWgt" | 42.00000 |
| "Cals" | 190.0000 |
| "Fat" | 7.00000 |
| "SatFat" | 0.50000 |
| "Transfa" | 0.00000 |
| "Carb" | 29.0000 |
| "Fib" | 2.00000 |
| "TotSug" | 12.0000 |
| "AddSug" | 12.0000 |
| "Prot" | 3.00000 |
| "Iron" | 1.00000 |

## NUTRITION FACTS

**Serving size: 2 bars (42g)**

Amount per serving
**Calories**  **190**
As Packaged

| Food component / Nutrient | Amount As Packaged |
|---|---|
| **Total Fat** | 7g |
| Saturated Fat | 0.5g |
| Trans Fat | 0g |
| **Cholesterol** | 0mg |
| **Sodium** | 150mg |
| **Total Carbohydrate** | 29g |
| Dietary Fiber | 2g |
| Total Sugars | 12g |
| Incl. Added Sugars | 12g |
| **Protein** | 3g |
| **Iron** | 1mg |

---

[4] "RefNum" 90780 in the file "Data" dated March 7, 2022.

[5] *See* Maple Brown Sugar Crunchy Granola Bars, available at https://www.naturevalley.com/products/maple-brown-sugar-crunchy-granola-bars (last accessed Feb. 26, 2025).

The fact that a pack of Nature Valley granola bars has 190 Calories or 2g of Dietary Fiber cannot in any universe constitute a trade secret.

To the extent Trustwell instead contends that only *some* of the data in the database is a trade secret—*e.g.*, perhaps the "data that Trustwell itself created, supplemented, and/or augmented"—it must identify *which specific data* in the database it so created, supplemented, and/or augmented.

To the extent Trustwell asserts only that *the complete compilation* of data is a trade secret, it must so state, and disclaim that any individual piece of data within that database constitutes a trade secret.

Either way, simply claiming "the data" does nothing to provide the requisite level of particularity or to put Cronometer on notice of what Trustwell claims in this case.

Moreover, the possibility that Trustwell may claim that the trade secret is only a *compilation* of the complete data it produced raises a second significant problem. Cronometer does not know what the complete compilation of data is, because Trustwell alleges it sent significantly more data than Cronometer asserts it ever received, and Cronometer does not have the original transmission of data it received from Trustwell's predecessor more than ten years ago. For this reason, Cronometer invited Trustwell to produce the complete compilation(s) of data that it alleges it sent to Cronometer, along with the transmission correspondence, and identify those productions in its response to Interrogatory No. 2 pursuant to Rule 34(d). Trustwell declined.[6]

---

[6] In its response below, Trustwell notes that Cronometer was able to sequester the Trustwell data *that remained in its system* as of 2024. That does not change the fact that Cronometer no longer has the original data files sent in, e.g., 2015. This is critical, given Trustwell's sworn representation to the Court that it sent Cronometer nearly ten times as much data as Cronometer

In providing its response below, Trustwell misstates the law and further compounds the concerns.  First, it cites *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 659 (9th Cir. 2020) for the proposition that "[a]t this stage, particularly where no discovery whatsoever had occurred … [the plaintiff's] burden is only to identify at least one trade secret with sufficient particularity to create a triable issue."  But that is the standard to survive a motion for summary judgment, not the standard this Court invoked when ordering Trustwell to identify its trade secrets with particularity before it could obtain discovery in this case.  *That* standard derives from judicial concerns about discovery, prejudice, and the particularities of trade secret cases, as articulated in the Parties' Rule 26(f) report.

Second, Trustwell states that "the entirety of the dataset" is the "trade secrets" (plural) at issue.  That is unfortunately as vague as "the data."  To the extent Trustwell will limit its trade secrets claim to only *the compilation of data* it provided, and does not and will not assert that any individual piece of data—or even any subset of data—within the compilation is a trade secret, it should so state and produce that data.  Such clarity will dramatically affect the discovery that will be needed in this case.

Moreover, through multiple rounds of editing on this document over the past week, Trustwell still refuses to identify its alleged trade secret(s) with any greater specificity than just "the entirety of the dataset."  It defends that it should not need to identify any information within the dataset that constitutes a trade secret, arguing that it would be too burdensome to do so,[7]

---

says it ever received.  Given the significant disconnect, Trustwell should clearly identify the datasets on which its claims are premised pursuant to Rule 34(d).

[7] Contrary to Trustwell's representations, it would not be unduly burdensome for it to identify, for example, that all nutrition values for particular food items, or that all values under the column for a particular nutrient are trade secrets—to the extent such is true.  Trustwell refuses to do so.

while at the same time refusing to represent that only the complete compilation of the data is its alleged trade secret.

At the end, Cronometer still does not know what alleged trade secret(s) it is accused of misappropriating. Cronometer has a right to have clarity on exactly what Trustwell claims is a trade secret so it can (i) engage in discovery concerning whether such information meets the statutory definition of a trade secret and/or (ii) demonstrate that it did not misappropriate the information.

Finally, contrary to Trustwell's representations below, Cronometer has no interest in obstruction or delay. It responded immediately to Trustwell upon receiving the deficient interrogatory responses, and offered to get this joint status report on file days early to avoid any undue delay.

### III.     TRUSTWELL'S POSITION

Cronometer's position above misrepresents both the facts and the law. As Trustwell noted during the recent Rule 16 Conference, Cronometer seems intent on creating only obstruction and delay here. This latest dispute unfortunately supports that.[8]

To begin, as the Ninth Circuit observed, "[a]t this stage, particularly where no discovery whatsoever had occurred … [the plaintiff's] burden is only to identify at least one trade secret with sufficient particularity to create a triable issue." *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 659 (9th Cir. 2020).[9] The District of Oregon has made clear that this requires

---

[8] Each time Trustwell provided its portion of the Joint Status Report to Cronometer, to file, Cronometer revised its own portion in response—even going so far as to delete certain language in its first revision, and then adding that same language back in its second revision, after Trustwell pointed out the deletion, as discussed below. (Trustwell's Exhibits C & D). The Court should not countenance such gamesmanship.

[9] Cronometer takes issue above with Trustwell's citation to *InteliClear*. Notably, Cronometer

merely that the description is "sufficient to put defendant on notice of the nature of plaintiff's

claim and enable defendant to determine the relevancy of any requested discovery, at least to

allow this case to proceed past the pleadings stage." *Sennco Solutions, Inc. v. Mobile Techs.,

Inc.*, 2020 WL 8836070, at *3 (D. Or. Dec. 21, 2020) (citing *Redfin Corp. v. iPayOne.com, Inc.*,

2018 WL 1397482, *2 (W.D. Wash. Mar. 20, 2018) (denying motion for protective order "where

the plaintiff's trade secret allegations provided enough information 'to give Redfin notice of what

issues may arise later in this litigation as well as the scope of appropriate discovery'"); and

*InteliClear*, 978 F.3d at 662 ("Federal cases analyzing whether a plaintiff's trade secrets are

described with 'sufficient particularity' typically arise in the battleground of discovery.  In such

cases, discovery provides an iterative process where requests between parties lead to a refined

and sufficiently particularized trade secret identification…. Refining trade secret identifications

through discovery makes good sense."));[10] *see also Opal Labs, Inc. v. Sprinklr, Inc*., 2019 WL

6528589, at *1 (D. Or. Dec. 4, 2019) ("Reasonable particularity is 'a description of the trade

secrets at issue that is sufficient to (a) put a defendant on notice of the nature of the plaintiff's

---

fails to address all of the other cases cited in Trustwell's position.  Regardless, *InteliClear*
presents a similar procedural posture.  In *InteliClear*, as here, no discovery had been conducted
and the defendant was challenging the sufficiency of the trade secret identification.  *Id*. at 655.
The Ninth Circuit made clear that trade secret identification at the outset of a case is a low bar to
clear, and that "[r]efining trade secret identifications through discovery makes good sense."  *Id*.
at 662.

[10] Cronometer should have ready access to the datasets provided by Trustwell over the years,
particularly given that Trustwell has identified the sixteen dates on which the datasets were
provided.  In fact, Cronometer specifically references above one of the datasets provided in
2022.  In other words, Cronometer *can* identify the datasets.  Moreover, once the temporary stay
is lifted, and once the parties proceed with discovery, Trustwell will re-produce the datasets that
it previously provided to Cronometer, and it will update its interrogatory response to include the
Bates numbers of those productions, thereby further refining its trade secret identification, as
contemplated by the Ninth Circuit.

claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets.'") (*citing Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1155 (D. Or. 2015)).

Trustwell identified the trade secrets at issue here, in response to Cronometer's Interrogatory No. 2, in relevant part as follows:

> [T]he data contained in Trustwell's master food and nutrition database that Cronometer licensed from Trustwell . . . and that Trustwell originally provided to Cronometer … on approximately February 13, 2015, with subsequent, periodic updates provided to Cronometer on the [*fifteen*] dates below.

In subsequent correspondence between counsel, Trustwell confirmed that "the entirety of the dataset that Trustwell provided to Cronometer on the identified dates constitutes the trade secrets at issue." (Trustwell's Exhibit A.) As Trustwell's counsel explained:

> That provides more than sufficient specificity for Cronometer to understand precisely what data is at issue, and to pull those precise files from its records (the only files that were transmitted from Trustwell to Cronometer on the identified dates). We are unable to further define in writing a dataset that contains tens of thousands of entries with countless data fields for each entry and that changes over time.[11]

(*Id.*)

Although Cronometer now professes confusion about the dataset, they had no trouble identifying that dataset several months ago. In July 2024, just three days after receiving Trustwell's initial cease-and-desist letter, Cronometer's counsel represented as follows: "In response to your demands, Cronometer reports that it has segregated and isolated Trustwell's

---

[11] For example, Cronometer describes above a dataset from 2022 as containing "43 nutritional fields for approximately 51,000 food items." That means approximately 2.2 million individual data fields. And that is just one dataset. There is simply no way to define in writing such a voluminous dataset, particularly one that changes over time, other than by date of transmission.

dataset from its system." (Trustwell's Exhibit B.) That representation certainly calls into question the veracity of Cronometer's current position above that it "does not know what the complete compilation of data is."[12]

Ultimately, Trustwell's trade secret identification plainly puts Cronometer on notice of the nature of Trustwell's claims and enables Cronometer to determine the relevance of any requested discovery. That is all that is required at this stage. *Sennco Solutions, Inc.*, 2020 WL 8836070, at *3; *Opal Labs, Inc.*, 2019 WL 6528589, at *1. The inquiry should end there.

In its position statement, however, Cronometer goes on to take issue with *whether* the identified dataset constitutes a trade secret. That obviously misses the point of the inquiry at this stage. Nevertheless, Trustwell feels compelled to point out the law as it relates to compilation trade secrets: "Unlike a patent, novelty is not required for information to be protected as a trade secret, and independent discovery by another does not preclude protection." *Amvac Chem. Corp. v. Termilind, Ltd*., 1999 WL 1279664, at *4 (D. Or. Aug. 3, 1999) (citing *Kewanee Oil Co. v. Bicron Corp*., 416 U.S. 470, 476 (1974); and *Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972)). "It does not matter if a portion of the trade secret is generally known, or even that every individual portion of the trade secret is generally known, so long as the combination of all such information is not generally known." *O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc*., 420 F. Supp. 2d 1070, 1089-90 (N.D. Cal. 2006); *see also Mattel, Inc. v. MGA Entm't, Inc*., 782 F. Supp. 2d 911, 962-63 (C.D. Cal. 2011) (same).

Given that Cronometer purports to challenge the protectability of Trustwell's trade

---

[12] Cronometer claims above that it "no longer has the original data files sent in, e.g., 2015." Yet, in its answer in this case, Cronometer was somehow able to cite and quote many of its own emails from February 2015. (ECF No. 6, ¶¶ 36-37, 42-44, 48.)

secrets, which it was able to "segregate[] and isolate[]" more than seven months ago, its current position that it somehow does not understand what those trade secrets are rings hollow.  And the fact that Cronometer paid Trustwell licensing fees every year for a decade, for access to Trustwell's trade secrets—albeit while representing that it would use the trade secrets solely for its "own internal nutritional analyses"—demonstrates that even Cronometer recognizes the significant value of those trade secrets.

      In revising its position above—the first time—in response to Trustwell's position, Cronometer deleted the following statement: "Cronometer still does not know what alleged trade secret(s) it is accused of misappropriating."  (Trustwell's Exhibit C, at 6.)  That deletion alone demonstrates the sufficiency of Trustwell's trade secret identification.  Although Cronometer added that language back, in revising its position for the second time, in response to Trustwell's position in which it pointed out that deletion (Trustwell's Exhibit D, at 6), there can be no legitimate question that Cronometer understands the trade secrets at issue.  Cronometer now requests "clarity on exactly what Trustwell claims is a trade secret."  Apparently, Cronometer wants Trustwell to designate each piece of data—individual data field by individual data field, over millions of data fields.  There is simply no authority, anywhere, that supports such an extreme result.  Trustwell has identified the trade secrets at issue with sufficient particularity.  Nothing more is required.  The Court should lift the temporary stay and allow discovery to proceed.

Respectfully submitted,

Dated:  February   , 2025

**SCHWABE, WILLIAMSON & WYATT, P.C.**

*s/*
Nika Aldrich, OSB #160306
Email: naldrich@schwabe.com

*Attorney for Defendant Cronometer Software, Inc.*

Dated:  February   , 2025

**DUNN CARNEY LLP**

*s/*
Brian R. Talcott, OSB 965371
Email:  btalcott@dunncarney.com

**JONES DAY**
Cary D. Sullivan (*admitted Pro Hac Vice*)
Email: carysullivan@jonesday.com

*Attorneys for Plaintiff Trustwell*