**Nika Aldrich**, OSB #160306
Email: naldrich@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Facsimile: 206-292-0460

    *Attorney for Defendant*
    *Cronometer Software, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ESHA RESEARCH, INC.**, now known as **TRUSTWELL**,<br><br>    Plaintiff,<br><br>    vs.<br><br>**CRONOMETER SOFTWARE, INC.**, formerly known as **BIGCRUNCH CONSULTING, LTD.,** and **DOES 1-20**,<br><br>    Defendants. | No. 3:24-cv-01586-AB<br><br>**CRONOMETER SOFTWARE, INC.'S MOTION TO COMPEL**<br><br>**ORAL ARGUMENT REQUESTED** |

Page 1 -    CRONOMETER SOFTWARE, INC.'S MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

<u>**LOCAL RULE 7-1 CERTIFICATION**</u>

Counsel for Defendant Cronometer Software, Inc. ("Cronometer") hereby certifies that he conferred with counsel for Trustwell ("Plaintiff") regarding the substance of this motion and due to the parties' impasse, the Court has directed Cronometer to file this Motion. (ECF 18).

<u>**MOTION**</u>

The Court should compel Trustwell to specifically identify the information it alleges constitutes its trade secret(s). To the extent Trustwell relies on specific data in a database, it should so identify that specific information. To the extent Trustwell relies on a compilation of data as its trade secret, it should produce the compilation(s).

This Motion is supported by the declarations of Aaron Davidson and Nika Aldrich and the exhibits attached thereto.

**I.    PRELIMINARY STATEMENT**

This is a nonsensical trade secrets case. To constitute a trade secret, the owner must make "reasonable measures to keep such information secret." 18 U.S.C. § 1839(3). Here, Trustwell, previously known as ESHA, knowingly did the opposite, making two databases of nutritional information for popular food items available for millions to access through Cronometer's widely-available food/nutrition tracking app.

Specifically, in 2014 Cronometer asked ESHA for a license to two databases of information found on FDA-required nutrition labels. ESHA knew that Cronometer intended to make the nutritional information publicly available to Cronometer's customers on the Internet because the parties discussed this at length. (Davidson Decl. ¶ 3.) For example, when ESHA asked what Cronometer was going to use the data for, Cronometer responded: "**Website & Mobile Apps**" for "**End-user / Consumers – Personal Diet / Nutrition / Fitness Tracker**."

Page 2 -    CRONOMETER SOFTWARE, INC.'S MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

(*Id.* ¶ 4, Ex. 1.) Upon posting both databases on its website, Cronometer sent ESHA screen shots so ESHA could comment on how the data was presented to Cronometer's customers. (*Id.* ¶ 5, Ex. 1.) ESHA confirmed that "will work just fine with us." (*Id.*) As Cronometer's customers started accessing the ESHA data, Cronometer let ESHA know of the top foods that "our customers are finding when searching" within the app. (*Id.* ¶ 11, Ex. 4.)

ESHA appreciated Cronometer's public use of the database. Cronometer in fact helped advertise ESHA, because anytime a customer selected a food item that was in the ESHA database, Cronometer made the customer aware the nutritional information had come from ESHA. Seeing the benefits of their collaboration, ESHA wanted to "write a press release about our partnership" (*id.* ¶ 10, Ex. 3); and its marketing department sought information about Cronometer so it could advertise their relationship. (*Id.* ¶ 12, Ex. 5.) All of this took place more than a decade ago, and ESHA sent updated databases to Cronometer every year since, knowing precisely how they were being used on Cronometer's website to support its app. Cronometer estimates that, over the past 10 years, more than 2 million customers have accessed an ESHA-listed food item and its nutritional content through its app, and that nutritional content for at least 62,000 ESHA-database foods were accessed through Cronometer's website. (*Id.* ¶ 13.)

In fact, in 2019, ESHA's own cofounder downloaded a copy of the Cronometer app for his own, personal needs and, upon realizing it had ESHA's data in it, checked to confirm that Cronometer had a license for the data and then complimented Cronometer on the app and thanked it for "playing by the rules." (*Id.* ¶ 14, Ex. 6.)

Accordingly, whether through the doctrines of waiver, consent, acquiescence, estoppel, laches, or the mere fact that Trustwell took no measures whatsoever to maintain its databases as a secret, instead allowing the data to be placed on the Internet for millions of Cronometer users

Page 3 -   CRONOMETER SOFTWARE, INC.'S MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

to access, any suggestion that any of that data constitutes a trade secret is frivolous.

Nonetheless, that is exactly what Trustwell has pleaded, and these are the claims that Cronometer must defend against.

In light of that background, Cronometer sent an interrogatory asking the fundamental question asked in every trade secrets case—and a particularly perplexing one in this case: what, exactly, are the alleged trade secrets? The Court agreed that Trustwell's articulation of the alleged trade secrets in the Complaint (a "Database" with various "data fields," "other nutritional data" and "related data" (ECF 1 ¶¶ 4, 20)) was insufficient, and ordered Trustwell to answer the Interrogatory, identifying the alleged trade secrets "with particularity." (ECF 15, pp. 10, 14.) Trustwell's subsequent answer merely identifies "the data" as its alleged trade secret information. (Aldrich Decl. Ex. 10, p. 4.) But that is just as vague as references to "the data" cited in the Complaint. Pressed to be any more specific—even to identify simply whether the alleged trade secret(s) include individual data fields within the database, subsets of that data, or only the compilation of all of the data—Trustwell would neither commit nor clarify. Because Cronometer still does not know what alleged trade secret(s) it is litigating against, this Motion follows.

## II.     STATEMENT OF FACTS

### A.     The ESHA Food/Nutrition Databases

In 2014, Cronometer saw a compilation of ESHA-compiled nutrition data for free access on a publicly-available website. (Davidson Decl. ¶ 2.) Cronometer already had a large collection of data that it had obtained from various sources, including the United States Department of Agriculture ("USDA"). (*Id.* ¶ 5.) To supplement those databases, it contacted ESHA to inquire about obtaining a copy of ESHA's data. (*Id.*) ESHA had three databases to

Page 4 -    CRONOMETER SOFTWARE, INC.'S MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

license: one of branded foods (e.g., Heinz® ketchup), one of restaurant foods (e.g., McDonald's® cheeseburger), and one of "common foods" (e.g., broccoli and baking soda). Those three separate databases are explained on ESHA's current website:[1]

  

By way of example, Trustwell's "branded foods" database includes the following nutritional content for a pack of Nature Valley Crunchy Maple Brown Sugar granola bars, shown on the left. On the right is the exact same information found on Nature Valley's website and on the granola bars' wrapper[2]:

---

[1] Available at https://www.trustwell.com/products/food-nutrition-database/ (last accessed March 10, 2025); (*see also* Davidson Decl. ¶ 6.)

[2] *See* Maple Brown Sugar Crunchy Granola Bars, available at https://www.naturevalley.com/products/maple-brown-sugar-crunchy-granola-bars (last accessed Feb. 26, 2025).

Page 5 -   CRONOMETER SOFTWARE, INC.'S MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

| | |
|---|---|
| "GramWgt" | 42.00000 |
| "Cals" | 190.0000 |
| "Fat" | 7.00000 |
| "SatFat" | 0.50000 |
| "Transfa" | 0.00000 |
| "Choles" | 0.00000 |
| "Sodium" | 150.000 |
| "Carb" | 29.0000 |
| "Fib" | 2.00000 |
| "TotSug" | 12.0000 |
| "AddSug" | 12.0000 |
| "Prot" | 3.00000 |
| "Iron" | 1.00000 |

**NUTRITION FACTS**

Serving size: 2 bars (42g)

Amount per serving
**Calories** — 190 As Packaged

| Food component / Nutrient | Amount As Packaged |
|---|---|
| **Total Fat** | 7g |
| Saturated Fat | 0.5g |
| Trans Fat | 0g |
| **Cholesterol** | 0mg |
| **Sodium** | 150mg |
| **Total Carbohydrate** | 29g |
| Dietary Fiber | 2g |
| Total Sugars | 12g |
| Incl. Added Sugars | 12g |
| **Protein** | 3g |
| **Iron** | 1mg |

Through lengthy negotiations, Trustwell agreed to send solely the branded foods restaurant databases, both of which contained publicly-available nutrition content found on federally-required labels and menus. At the time, those two databases collectively included nutritional information for "35,000 restaurant and brand name grocery item foods." (Davidson Decl. ¶ 7, Ex. 2.)

ESHA sent those two databases to Cronometer in early February, 2015, and each year thereafter, ESHA sent updated databases as new foods were released. (*Id.* ¶¶ 8-9.) Although Cronometer no longer has the early databases, it still has the copy sent in 2022 (by then, the database had grown to about 50,000 food items), and has attached that data in its original form

Page 6 -   CRONOMETER SOFTWARE, INC.'S MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

and in the form of an Excel spreadsheet as Exhibits 11 and 12, respectively, to the Aldrich Decl.[3] For example, the information shown above for the Nature Valley Maple Brown Sugar granola bar can be found in the Excel spreadsheet in row 24299, in close proximity to Metamucil, Folgers coffee, Taco Bell chips, and Mountain Dew. The Court can observe that there are 42 fields for each food item, most of which are blank—in general, the foods have only the dozen or so common nutritional facts found on FDA-mandated labels, like those shown above.

It should be noted that, when Trustwell first sent it a cease-and-desist letter last summer, Cronometer immediately withdrew the ability for its users to choose foods in the ESHA databases, and it has since deleted the ESHA databases from its system entirely. (Davidson Decl. ¶ 15.) But, as with many foods in the Trustwell databases, Cronometer has the exact same information about Nature Valley Granola Bars in three other databases that it obtained from different sources. (*Id.* ¶ 16.)

### B. Trustwell's Vague Trade Secrets Allegations

In September 2024, Trustwell filed its Complaint alleging trade secrets misappropriation. But Trustwell's Complaint is vague as to which information, exactly, it alleges constitutes its trade secrets. For example, Trustwell alleged that it supplied Cronometer with a database that included "comprehensive nutritional breakdowns for up to 172 separate data fields . . . for more than 90,000 brand name and generic foods and ingredients." (ECF 1 ¶ 4.) That was false. Trustwell has since admitted that it provided only "portions of" this information to Cronometer (ECF 9 ¶ 33), but has failed to correct the allegations in its Complaint that overstate by nearly an

---

[3] A USB drive containing these Exhibits is being provided to the Court.

Page 7 -    CRONOMETER SOFTWARE, INC.'S MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

order of magnitude how much information it actually provided.  (*Compare* ECF 6 ¶ 104 *with* ECF 9 ¶ 104.)

On January 15, 2025, Cronometer served its first interrogatories, including Interrogatory No. 2, which asks:

> **INTERROGATORY NO. 2**:  Describe with specificity the information that comprises each asserted trade secret that You allege Cronometer misappropriated.

(Aldrich Decl. Ex. 10, p. 3.)

In the Rule 26(f) Report, Cronometer asked the Court to order Trustwell to answer this Interrogatory before other discovery commences.  (ECF 12, pp. 6-10.)  Trustwell responded that the alleged trade secrets were sufficiently defined in paragraphs 3, 4, 13, and 20 of its Complaint.  (*Id.*, p. 5.)  But those are the paragraphs from which Trustwell has since been backpedaling.  (*See* ECF 9 ¶ 33 (only "portions of that database," not the full panoply of data in "the Database").)  And the Court expressed doubts that those paragraphs sufficiently identify any trade secrets.  The Court ordered Trustwell to answer Interrogatory No. 2 and identify its alleged trade secrets "with particularity," preferably "in the form of a numbered list."  (ECF 15, pp. 10, 14.)

On February 24, Trustwell provided its response to Interrogatory No. 2.  Unfortunately, there is no numbered list.  Instead, Trustwell commenced its Interrogatory response by stating that it has a "food and nutrition database that contains a proprietary compilation and particular selection of data from multiple sources, including a substantial volume of data that Trustwell itself created, supplemented, and/or augmented."  (Ex. 10, p. 4.)  It then goes on to identify the alleged trade secret(s) as follows:

> The trade secret … is the data contained in Trustwell's master food and nutrition database that Cronometer licensed from Trustwell . . . and that Trustwell … provided to Cronometer [on a list of dates].

(*Id.*)

Page 8 -   CRONOMETER SOFTWARE, INC.'S MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Cronometer identified two significant problems with this answer. First, this answer states in essence that the trade secret is, vaguely, "the data" in the supplied databases. That fails to provide any meaningful information beyond what was already stated in Trustwell's Complaint. (*See* ECF 1 ¶ 20.) Second, to the extent Trustwell alleges that a *compilation* of the complete data is a trade secret, Cronometer does not know what the complete compilation of data is, because Trustwell alleges it sent significantly more data than Cronometer ever received. For this reason, Cronometer invited Trustwell to produce the complete compilation(s) of data that it alleges it sent to Cronometer, along with the transmission correspondence, and identify those productions in its response to Interrogatory No. 2 pursuant to Rule 34(d). Trustwell declined.

Through multiple rounds of editing on a subsequent Joint Status Report, Cronometer repeatedly pressed Trustwell to identify with particularity what its trade secrets are—whether they were individual pieces of data within the databases, whether they were specific subsets of that data, or whether it was just the complete compilation of data—and to produce any compilation of data that it asserts is a trade secret. Trustwell still refuses to identify its alleged trade secret(s) with any greater specificity than just "the entirety of the dataset."

### III.    LEGAL STANDARD

In general, a trade secret is information that "the owner . . . has taken reasonable measures to keep . . . secret" and that "derives independent economic value . . . from not being generally known." 18 U.S.C. § 1839(3). "Compilations of non-secret" information may constitute trade secrets "so long as the combination affords a competitive advantage and is not readily ascertainable." *WHIC LLC v. NextGen Labs., Inc.*, 341 F. Supp. 3d 1147, 1163 (D. Haw. 2018) (quoting *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 972 (8th Cir. 2011). It goes without saying that information that the plaintiff allows to be posted on the

Page 9 -    CRONOMETER SOFTWARE, INC.'S MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

Internet loses any protection as a trade secret. *Arkeyo, LLC v. Cummins Allison Corp.*, 342 F. Supp. 3d 622, 630-632 (E.D. Pa. 2017) (collecting cases).

Interrogatories are an appropriate discovery mechanism to seek a party's contentions, including with respect to identifying its alleged trade secrets. See Fed. R. Civ. P. 33(a)(2). Where "a party fails to answer an interrogatory submitted under Rule 33," the Court may compel a response. Fed. R. Civ. P. 37(a)(3)(B). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). "The requirement is that [a party] needs to be exhaustive." *Remy Inc. v. Tecnomatic, S.P.A.*, 2013 WL 1331002, at *2 (S.D. Ind. Mar. 28, 2013). The plaintiff in a trade secrets has an "obligation to identify alleged trade secrets with specificity." *Agency Solutions.Com v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011).

Where a party provides a vague answer to an interrogatory asking it to identify its alleged trade secrets, courts routinely grant motions to compel. *See ED&F Cap. Markets Ltd. v. JVMC Holdings Corp.*, 2020 WL 3469128, at *6 (N.D. Ill. June 25, 2020) (pursuant to Rule 37(a)(4), compelling specific identification of trade secrets in narrative form in response to an interrogatory); *Climax Portable Mach. Tools, Inc. v. Trawema, GmbH*, 2020 WL 7406540 (D. Or. Dec. 17, 2020) (same).

Courts also order parties to answer interrogatories by identifying specific data at issue in databases. In *Regents of Univ. of California v. Aisen*, 2016 WL 11783768 (S.D. Cal. Oct. 14, 2016), the plaintiff alleged theft of certain data. The plaintiff served an interrogatory seeking identification of "all ADCS Data and Systems" that Defendants had in their possession as of a particular date. Defendants' answer: "*various* repositories within the ADCS Bitbucket account"—was "vague and non-specific." The Court issued an order to compel "a supplemental

Page 10 -   CRONOMETER SOFTWARE, INC.'S MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

answer that identifies, with specificity, which ADCS Data and Systems Defendant has or has had in its possession" as of the relevant date. *Id.* at *5-7.

## IV.    ARGUMENT

The Court should order Trustwell to identify its trade secret(s) with specificity. Its interrogatory answer of "the data" is vague, evasive, and insufficient. "The data" could mean any or all of "each and every individual piece of data in the database," "some of the data in the database," or rather only "the compilation of all of the data." To answer the interrogatory with specificity, as required, Trustwell must identify *which* data.

The answer is important. For example, if Trustwell asserts that each piece of data in its database is a trade secret, it will have the burden of proving the secrecy of all of that information. Discovery will revolve around that burden. But, to be clear, the fact that a pack of Nature Valley granola bars has 190 Calories or 2g of Dietary Fiber cannot in any universe constitute a trade secret. Any suggestion otherwise would be frivolous and would warrant a claim for attorney fees spent defending against it. *See* Fed. R. Civ. P. 37; 28 U.S.C. § 1927.

To the extent Trustwell instead contends that only *some* of the data in the database is a trade secret, it must identify *which specific data* in the database is allegedly secret. For example, Trustwell's answer to Interrogatory No. 2 states that some of the data "Trustwell itself created, supplemented, and/or augmented." (Ex. 10, p. 4.) To the extent it claims *that* data as a trade secret, it must state as much, and identify which of the information it allegedly "created, supplemented, and/or augmented." It can readily identify entire subsets of data by reference to the database provided as Exhibit 12, for example. By way of illustration, to the extent it "created, supplemented, and/or augmented" all of the information on publicly-available food labels with an additional nutrient, it can identify that nutrient by column name. Or, to the extent

Page 11 -    CRONOMETER SOFTWARE, INC.'S MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

it "created, supplemented and/or augmented" information for foods for which there was no FDA-required label, it can identify that information with specificity by food name or row number. But the database, particularly as imported into an Excel spreadsheet, makes it easy to identify individual pieces of data or broad swaths of data alike. To the extent Trustwell identifies such subsets of data as its trade secret(s), discovery will revolve around whether any of *that* data was actually kept secret and misappropriated.

On the other hand, to the extent Trustwell asserts only that *the complete compilation* of data is a trade secret, it must so state, and disclaim that all of the individual pieces of data are trade secrets. Discovery will then revolve around whether the complete compilation was ever misappropriated, and whether the complete compilation properly constitutes a trade secret—*i.e.*, whether that compilation was maintained as a secret and "not readily ascertainable." *WHIC*, 341 F. Supp. 3d at 1163. But, given Trustwell's continued insistence in its pleadings that it sent compilations of data that Cronometer never received, Trustwell should also produce such data pursuant to Fed. R. Civ. P. 34(d).

Either way, simply claiming "the data" does nothing to provide the requisite level of particularity or to put Cronometer on notice of what Trustwell claims in this case. At the end, Cronometer still does not know what alleged trade secret(s) it is accused of misappropriating. Cronometer has a right to have clarity on exactly what Trustwell claims is trade secret information so it can (i) engage in discovery concerning whether such information meets the statutory definition of a trade secret and/or (ii) demonstrate that it did not misappropriate the information. And given that Cronometer has similar/duplicative data from numerous other sources (Davidson Decl. ¶ 16), Trustwell should provide its answers and databases before any further discovery. (*See* ECF 12, pp. 6-10.)

Page 12 -    CRONOMETER SOFTWARE, INC.'S MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

## V. CONCLUSION

The Court should compel Trustwell to supplement its response to Interrogatory No. 2 to specifically identify its alleged trade secret(s) and produce any alleged trade secret compilations.

Dated this 18th day of March, 2025.

Respectfully submitted,

SCHWABE, WILLIAMSON & WYATT, P.C.

*s/ Nika Aldrich*
Nika Aldrich, OSB #160306
Email: naldrich@schwabe.com

*Attorney for Defendant Cronometer Software, Inc.*

## CERTIFICATE OF COMPLIANCE

Counsel for Cronometer hereby certifies that this memorandum complies with the applicable word-count limitation under LR 26-3(b) because it contains 2,995 words, including headings, footnotes and quotations, but excluding the caption, signature block, and certificates of counsel.

*s/ Nika Aldrich*
Nika Aldrich, OSB #160306

Page 13 -   CRONOMETER SOFTWARE, INC.'S MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900