**Nika Aldrich**, OSB #160306
Email: naldrich@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Facsimile: 206-292-0460

*Attorney for Defendant
Cronometer Software, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ESHA RESEARCH, INC.**, now known as **TRUSTWELL**,<br><br>Plaintiff,<br><br>vs.<br><br>**CRONOMETER SOFTWARE, INC.**, formerly known as **BIGCRUNCH CONSULTING, LTD.**, and **DOES 1-20**,<br><br>Defendants. | No. 3:24-cv-01586-AB<br><br>**CRONOMETER SOFTWARE, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL** |

Page 1 -   CRONOMETER SOFTWARE, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

Throughout its Response brief, Trustwell studiously avoids clarifying what the alleged trade secrets are with any more specificity than it did in its Complaint, which the Court already found insufficient. As explained in the Opening Brief, Cronometer does not know whether Trustwell claims only the compilations as trade secrets or claims individual data items or subsets of data items within the compilations. The Court should order Trustwell to so clarify and, for the reasons below, to produce the alleged trade secret information.

### A.   Trustwell's Argument About The Legal Standard Is Misplaced

Trustwell relies largely on *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653 (9th Cir. 2020) for the proposition that it had the burden to identify only one trade secret. (ECF 30, p. 3.) But *InteliClear* sets forth the standard for whether a trade secret has been sufficiently identified to withstand a motion for summary judgment—indeed, the party need only identify one trade secret to pass that hurdle. *Id.*, at 659. *InteliClear* is otherwise entirely unhelpful to Trustwell. The Ninth Circuit in fact reinforced in that case that "[t]he plaintiff should describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons... skilled in the trade." *Id.*, at 658 (emphasis in original; quoting *Imax Corp. v. Cinema Techs.,* Inc., 152 F.3d 1161, 1164 (9th Cir. 1998)). It reinforced that, "[l]ong lists of general areas of information containing unidentified trade secrets are not substitutes for particularized and concrete trade secrets," and "Plaintiffs may not simply rely upon 'catchall' phrases or identify categories of trade secrets they intend to pursue at trial." *Id.* (quoting *IDX Sys. Corp. v. Epic Sys. Corp.*, 165 F. Supp. 2d 812, 819 (W.D. Wis. 2001)).

In *InteliClear*, the accused trade secrets were identified with far more specificity than Trustwell has asserted here. There, the Plaintiff identified "specific features of the InteliClear

Page 2 -   CRONOMETER SOFTWARE, INC.'S REPLY IN
           SUPPORT OF MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax: 206-292-0460

System as trade secrets." They were "specific tables, table columns, account identifiers, codes, and methodologies" 978 F.3d at 658-59. Although the Ninth Circuit described them only "in general terms" in its opinion, that is because the declaration that provided the descriptions of the elements that constituted "trade secrets were filed under seal." *Id.* at n.2. That declaration "specified the program processes, tables, columns, and account identifiers from its SQL database that it considered trade secrets." *Id.* at 658-59.

Trustwell's identification of "the data" and "the entirety of the dataset" fails to meet the standard of its own lead case. It is instead the very kind of "general areas of information containing unidentified trade secrets" that the Ninth Circuit held are insufficient. *Id.*

*Sennco Sols., Inc. v. Mobile Techs., Inc*., 2020 WL 8836070, at *3 (D. Or. Dec. 21, 2020) is also inapposite because it concerns a Rule 12 motion and whether the allegations in a complaint are "sufficient . . . to proceed past the pleadings stage." That is a low threshold. In any event, we are past the Rule 12 stage. The present dispute instead concerns a separate procedural hurdle often invoked in trade secrets cases—the requirement that "a party alleging a claim for misappropriation of trade secrets . . . identify its alleged trade secrets with reasonable particularity before it will be allowed to compel discovery of its adversary's trade secrets." *Vesta Corp v. Amdocs Mgmt. Ltd*., 147 F. Supp. 3d 1147, 1152, n.2 (D. Or. 2015). This avoids the well-recognized problem of a party "mold[ing] its cause of action around the discovery it receives." *BioD, LLC v. Amnio Tech., LLC*, 2014 WL 3864658, at *5 (D. Ariz. Aug. 6, 2014). "Experience has shown that it is easy to allege theft of trade secrets with vagueness, then take discovery into the defendants' files, and then cleverly specify what ever happens to be there as having been trade secrets stolen from plaintiff. A true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery."

Page 3 -   CRONOMETER SOFTWARE, INC.'S REPLY IN
            SUPPORT OF MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

*Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014) (requiring a numbered list of trade secrets provided as a patent claim, along with the background of each secret and why it allegedly meets the definition of a trade secret).

This Court determined that Trustwell's vague descriptions of its alleged trade secrets in its complaint as "data" were insufficient. (ECF 15, pp. 10, 14, 15.)

### B. Trustwell's Answers Fail To Comply With Rule 34

Having found Trustwell's descriptions insufficient, the Court Ordered Trustwell to answer Interrogatory No. 2, which required Trustwell to "Describe with specificity the information that comprises each asserted trade secret" before it may take discovery of Cronometer. (ECF 15, pp. 10, 14, 15.) Rule 34 requires complete answers within 30 days, and this Court ordered Trustwell to comply. (*Id*.) Trustwell's verified answer of "the data" and its email supplement of "the entirety of the dataset" fare no better than the Complaint, and do not provide the required level of specificity.

Trustwell tacitly concedes that its answers fall short. Trustwell instead suggests without any legal authority, and contrary to this Court's express Order, that it need not answer the Interrogatory with any more specificity *at this time*. (*See* ECF 30, pp. 5-6.) Against a number of cases granting motions to compel and requiring plaintiffs to identify their trade secrets with specificity, Trustwell argues that those cases are distinguishable because those interrogatories were answered "in the midst of discovery," or "in standard interrogatory responses." (*Id.*, *see e.g.*, n. 2.) But that attempts to create a fictional distinction in Rule 34 requirements that does not exist in the law, and that the Court did not recognize when Ordering an answer. Interrogatory No. 2 is a standard interrogatory, subject to Rule 34.

Moreover, Trustwell's efforts to create a false distinction in the standard for interrogatory

Page 4 -  CRONOMETER SOFTWARE, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax: 206-292-0460

answers only highlights the problem—Trustwell wants to wait to see what data Cronometer has—including data from a variety of other sources—before it identifies which data it wants to claim as its own trade secrets, so it can "mold its cause of action around the discovery it receives." *BioD*, 2014 WL 3864658, at *5. Trustwell has cited no authority for the proposition that it need not provide a complete, non-evasive answer to an interrogatory with ***information contained entirely in its own possession*** until after it gets a peek behind the curtain at its adversary's files. Indeed, "A true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery." *Jobscience*, 2014 WL 852477, at *5. Trustwell has given no reason why it must wait until "the midst of discovery" to provide its complete complete answer.[1]

### C. Cronometer Still Does Not Know What the Alleged Trade Secrets Are

Trustwell's response otherwise suggests that Cronometer must know what the trade secrets are because it acknowledges receiving certain data compilations from Trustwell. That rhetorical argument misses the mark for the reasons stated in the Opening Brief and the Joint Status Report. First, Cronometer (ECF 17) still does not know whether Trustwell claims that *individual pieces* of that data—or even *subsets* of that data—are trade secrets, or if Trustwell intends to claim only the compilations as its trade secrets. For months now, Trustwell has

---

[1] Cronometer asserts without evidence that "there is simply no other way to identify a dataset containing tens of thousands of entries . . ." (ECF 30, p. 5.) But again, to the extent all Cronometer intends to claim is the complete compilation, it should just say so, and should disclaim that any individual piece of data—or subset of data—is a trade secret. We are now two months into briefing on this issue, and Trustwell has steadfastly avoided stating as much. To the extent Trustwell intends to rely on individual pieces or subsets of data within the dataset as trade secrets, it needs to identify those. Given that the database can be viewed as an Excel spreadsheet it is easy to identify individual cells, rows, or columns. (*See, e.g.*, ECF 20, p. 6, l. 2; *see also* p. 6, *infra*.)

Page 5 -    CRONOMETER SOFTWARE, INC.'S REPLY IN
            SUPPORT OF MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax: 206-292-0460

conspicuously avoided answering that question—as it does again in its response brief. At present, Cronometer has no idea what data within the databases Trustwell claims constitutes a trade secret, because Trustwell has left that deliberately vague.

### D. Trustwell Should Be Ordered to Produce Its Databases Pursuant to Rule 34(d)

Trustwell argues that its trade secrets are sufficient because it identified the dates on which the data was sent, and Cronometer does not dispute that it received *some* data on or about those dates. But the fact that Cronometer acknowledges it received *some* data from Trustwell on certain dates is insufficient because the parties fundamentally disagree about *what* data was sent. Trustwell pleaded pursuant to Rule 11 that it sent *ten times* as much information as Cronometer ever received. Trustwell has steadfastly refused to amend its Complaint to correct its false allegations that it sent Cronometer "comprehensive nutritional breakdowns for up to 172 separate data fields . . . for more than 90,000 brand name and generic foods and ingredients." (ECF 1 ¶ 4.) In subsequent filings it has started to concede this may have been false. (*Compare* ECF 9 ¶ 33 (only "portions of that Database," not the full "Database"). However, as long as Trustwell maintains its false allegations in its operative pleadings about a database that Cronometer never received, Cronometer is entitled to a copy of that database as part of the trade secrets disclosure. *Vesta Corp.*, 147 F. Supp. 3d at 1155 (disclosures must be "sufficient . . . to determine the relevancy of any requested discovery); *Sennco Sols.*, 2020 WL 8836070, at *3 (trade secrets disclosures must include enough information to "give . . . notice of what issues may arise . . . as well as the scope of appropriate discovery.)

Trustwell's refusal to produce *that* database as an under-oath response to Interrogatory No. 2 is telling.

But Trustwell's Response Brief unveils another reason why the Court should Order it to

Page 6 -   CRONOMETER SOFTWARE, INC.'S REPLY IN
SUPPORT OF MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

produce the databases with its Interrogatory response.  In its Response Brief, Trustwell weaves a new yarn that "Cronometer was secretly leveraging Trustwell's data to create a competing product through which it *repackaged* Trustwell's confidential and proprietary data" and "***then turned around and sold Trustwell's data as Cronometer's own***."  (ECF 30, p. 3.)  Trustwell has proffered zero facts to support this fanciful tale because that never happened.  Cronometer only ever used the data in support of its food tracking apps—it never "repackaged" or "sold" that data to anyone.

 But, Cronometer actually has a database of nearly two million food items collated from numerous sources including its own users.  Many of those food items are redundant across the various databases.  (ECF 21 ¶ 16.)  For instance, nutritional data for the Nature Valley Granola bars used as an example in the Opening Brief is found in three different datasets within Cronometer's larger database.  (*Id*.)  Trustwell's new allegations about "repackaging" and selling "Trustwell's data as Cronometer's own" raises concerns that Trustwell will survey Cronometer's larger database, pick out food items, and then assert that they are "repackagings" that derive from Trustwell's undisclosed database (they are not).  The Court should guard against that by requiring a complete disclosure of the dataset(s) now.  This is not a case where the "databases are distinct among the other categories of asserted secrets" because it includes "underlying transactions [that] are inherently party-specific."  Cf. *Quintara Biosciences, Inc. v. Ruifeng Biztech Inc.*, 2021 WL 965349, at *2 (N.D. Cal. Mar. 13, 2021).  That is, it could be very difficult "to distinguish between plaintiff's [] data and defendants' [] data, or indeed public [] data, in discovery and summary judgment."  Indeed, given that the same data is available from multiple sources even within Cronometer's own files, there is little "distinctiveness of the underlying data itself" that would "prevent plaintiff from improperly claiming whatever it

Page 7 -    CRONOMETER SOFTWARE, INC.'S REPLY IN
             SUPPORT OF MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

happens to find in discovery into defendants' files" as its own. *Id.* Given Trustwell's new "repackaging" allegation, a heightened level of specificity is required—in this case, the production of the underlying databases that constitute the alleged trade secrets, which Cronometer does not have.

Given these case-specific concerns, the Court should Order Trustwell to produce the complete "entire . . . datasets" it alleges are its trade secrets as part of its Interrogatory response, pursuant to Rule 34(d).

### E. This Is A Frivolous Trade Secrets Case

Setting aside materially false allegations, and regardless of any license terms the parties may have agreed to in the winter of 2015, Trustwell thereafter allowed Cronometer to put the data on its website to be available to millions of users through Cronometer's app, helped Cronometer do so, had screen shots showing how the data was displayed, approved of how Cronometer was attributing the data to Trustwell, received lists of which Trustwell data was being accessed by the public the most, asked to commence a joint marketing effort to laud the effort, actually downloaded and used the app as a regular consumer and accessed the Trustwell data just as any consumer would, and then thanked Cronometer for "playing by the rules." Information "is not entitled to protection if it is easily or readily obtained, without great difficulty" including by being "available on the internet." *Del. Cty. Chamber of Commerce v. USI Ins. Svcs., LLC*, 2013 WL 6847001, at *11 (E.D. Pa. Dec. 30, 2013). All of the data Trustwell provided to Cronometer has been on the Internet, accessible to millions of Cronometer's users—*with Trustwell's full knowledge, acquiescence, consent and blessing*—for as long as nine years. Whether any cause of action may lie on these facts, it is not a trade secrets claim. Nonetheless, so long as Trustwell persists on alleging such a cause of action, Cronometer

Page 8 -   CRONOMETER SOFTWARE, INC.'S REPLY IN
           SUPPORT OF MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax: 206-292-0460

must defend against that claim, and is entitled to the rights and protections of any trade secrets defendant.

## CONCLUSION

The Court should again order Trustwell to answer Interrogatory No. 2, completely, by specifically identifying all information Trustwell alleges constitutes a trade secret, including, if asserted, specific individual pieces of data or subsets of data (i.e., in a numbered list, as the Court originally requested). Reference can be made to fields, columns, or rows in the respective databases. To the extent Trustwell instead asserts that only compilations of data are trade secrets, it should be ordered to so state, and to disclaim that any individual pieces of data or subsets of data are trade secrets. Trustwell should also be ordered to produce all data that it asserts constitutes a trade secret pursuant to Rule 34(d).

Dated this 10th day of April, 2025.

            Respectfully submitted,

            SCHWABE, WILLIAMSON & WYATT, P.C.

            *s/ Nika Aldrich*
            Nika Aldrich, OSB #160306
            Email: naldrich@schwabe.com

            *Attorney for Defendant Cronometer Software, Inc.*

Page 9 - CRONOMETER SOFTWARE, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax: 206-292-0460